William T. Payne (SBN 90988)
Ellen M. Doyle (Pa. Bar #21854)
(*pro hac vice* application forthcoming)
**STEMBER FEINSTEIN DOYLE PAYNE & KRAVEC, LLC**
429 Forbes Avenue, 17th floor
Pittsburgh, PA 15219
Telephone: (412) 281-8400
Fax:       (412) 281-1007
wpayne@stemberfeinstein.com
edoyle@stemberfeinstein.com

Mark A. Potashnick (Mo. Bar # 41315)
(*pro hac vice* application forthcoming)
**WEINHAUS & POTASHNICK**
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Telephone: (314) 997-9150
Fax:       (314) 997-9170
markp@wp-attorney.com

Ira Spiro (SBN 67641)
Jennifer Connor (SBN 241480)
**SPIRO MOORE LLP**
11377 W. Olympic Blvd., Fifth Floor
Los Angeles California 90064
Telephone: (310) 235-2468
Fax:       (310) 235-2456
ira@spiromoore.com
jennifer@spiromoore.com

ATTORNEYS FOR PLAINTIFF

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

C 12 5524

| | |
|---|---|
| CHRISTOPHER OTEY, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CROWDFLOWER, INC., LUKAS BIEWALD AND CHRIS VAN PELT,<br><br>Defendants. | CASE NO.:<br><br>**FLSA COLLECTIVE ACTION**<br><br>**COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT for Damages                                                1

1. CrowdFlower, Inc. ("CrowdFlower") describes itself as providing the "World's Largest Workforce." However, it pays its workforce wages well below the required federal minimum wage rate. In many instances, CrowdFlower fails to pay any cash wages at all for work performed. CrowdFlower's deliberate failure to pay its workers their earned minimum wages violates the Fair Labor Standards Act ("FLSA"). Plaintiff and all other similarly situated persons work or previously worked for CrowdFlower as online providers of simple repetitive tasks. As described herein, CrowdFlower substantially monitored, supervised and controlled their work. This lawsuit is brought as a collective action under the FLSA to recover unpaid minimum wages and liquidated damages owed to Plaintiff and all other similarly situated persons employed by CrowdFlower. Plaintiff alleges the following based upon information and belief and the investigation of his counsel:

## INTRODUCTION

2. This is a collective action brought under the FLSA, 29 U.S.C. § 201 *et seq.*, on behalf of Plaintiff Christopher Otey and a nationwide class of all people who, on or after the date three years before the filing of the complaint in this action, performed crowd-sourced work in the United States in response to any online request by CrowdFlower for crowd-sourced work, or any online notification by CrowdFlower that crowd-sourced work was available (hereinafter collectively "Workers"). The United States includes all 50 states, all territories of the United States and the District of Columbia, and all other places where the FLSA applies.

3. CrowdFlower is an internet based technology company that was established in late 2007. It now describes itself as providing the "World's Largest Workforce." Although the majority of the work that CrowdFlower performs is for corporations operating in the United States, particularly very large employers, and although approximately half of CrowdFlower's work force lives in the United States, CrowdFlower has failed to pay minimum wages required by federal law.

4. Plaintiff alleges that CrowdFlower's conduct gives rise to claims for relief for violations of the minimum wage requirement of the FLSA, 29 U.S.C. § 206(a).

///

///

## PARTIES

5. Plaintiff Otey is currently a resident of Astoria, Oregon. In 2012, and possibly also late 2011, Plaintiff was employed by CrowdFlower to perform simple repetitive crowd-sourced online tasks for the benefit of CrowdFlower while under CrowdFlower's supervision and control.

6. Plaintiff Otey's consent to be a party plaintiff in an FLSA claim is attached at Exhibit "1".

7. CrowdFlower is a Delaware corporation which maintains its principal place of business at 2111 Mission Street, Suite 302, San Francisco, California, 94110. From its inception, CrowdFlower has used technology to distribute to a large work force simple repetitive tasks which can be better performed by human labor than computers. CrowdFlower is and has been the employer of Plaintiff and the other similarly situated Workers and putative class members with respect to the work performed by them. CrowdFlower engages in interstate commerce and has more than $500,000.00 in annual dollar volume of business.

8. CrowdFlower was founded in 2007 by Lukas Biewald ("Biewald") and Chris Van Pelt ("Van Pelt").

9. Biewald is the current Chief Executive Officer ("CEO") of the company and Van Pelt is the current Chief Technology Officer ("CTO").

10. Biewald and Van Pelt have held significant ownership interests in CrowdFlower.

11. Biewald and Van Pelt have exercised control over the nature and structure of CrowdFlower's employment relationships, exercised economic control over those employment relationships, held the power to hire and fire Workers, supervised and controlled conditions of employment, determined the rate and method of payment, and maintained employment records.

## JURISDICTION AND VENUE

12. The FLSA authorizes court actions by private parties to recover damages for violation of the FLSA's wage and hour provisions. Jurisdiction over Plaintiff's FLSA claim is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

13. Venue is proper within this judicial district because Crowdflower maintains offices, has agents, transacts business and is found within this judicial district. Many other affected persons

can be found in this judicial district, and Crowdflower has received substantial compensation from such transactions and business activity in this judicial district. In addition, in a statement of written terms which CrowdFlower published on its website, CrowdFlower asserted that any action against it must be brought in the Northern District of California.

## FACTUAL ALLEGATIONS

**CrowdFlower's Business Model**

14. On its website at http://www.CrowdFlower.com/ Defendant CrowdFlower advertises that it has "The World's Largest Workforce" where one may "[i]nstantly hire millions of people to collect, filter, and enhance your data." CrowdFlower's business model is to maintain a large dispersed workforce with Workers working on their own computers to perform small and simple repetitive parts of larger tasks. Typically, the tasks involve large projects for large companies, such as identifying the content of photographs. CrowdFlower divides the large projects into small and simple repetitive tasks which it assigns to its workforce ("crowdsourcing"). CrowdFlower's business model depends on its proprietary computer systems, software, logic and algorithms, which allow CrowdFlower to instruct, guide, supervise and control the manner of performing the task and to provide significant quality control of the work performed by these Workers.

15. CrowdFlower summarized on its website, "CrowdFlower takes large, data-heavy projects and breaks them into small tasks that are distributed to more than a million on-demand contributors globally." See http://crowdflower.com/general/privacy.html.

16. CrowdFlower has a webpage which divides its "Community" into those who "provide work" and those who "do work." Those providing work are asked if they are "interested in displaying microtasks" to which they can respond "Yes, I want to provide work." CrowdFlower's website also asks persons if they are interested in "completing tasks in exchange for compensation," to which they can respond "Yes, I want to do work." See http://crowdflower.com/channel.

17. CrowdFlower assigns the Workers tasks to be done at CrowdFlower's specific request. Thus, CrowdFlower suffers and permits them to work for its benefit.

18. The Contributor's performance of the small repetitive tasks requested by CrowdFlower constitutes the core business of CrowdFlower and core service offered by CrowdFlower to its customers.

19. In an interview by Sramana Mitra posted online in Fall 2011, Biewald described CrowdFlower's business model as follows:[1]

> Our business model is pretty simple. We quote customers the price for completed tasks, and upon completing those tasks receive payment regardless of the cost we incur competing those tasks. We assume the price risk. Let's suppose a company has a large directory of businesses and they want to provide those addresses to their sales force. However, before sending salespeople to those addresses they want to validate that those are the correct addresses. Convenience stores are a good example because they close and open new ones all the time. You don't want to send a salesperson to a store that has been shut down.
>
> That company would then have a task of checking all of the addresses they have in their directory. A project that we work for them would then turn into us checking a million addresses for them at the cost of 1 million dollars. I am making those numbers up, but it conveys the concept. The first thing we will do when we receive the task is to break it up into pieces. The first step would be to find the website for the business. The second person would check the work conducted by the first person. If they can't find the business online then a third person could be tasked to call the business. If that does not work out then a fourth person could then be tasked to physically go see the business. Each task is increasingly expensive.
>
> Anyone can put jobs online. The CrowdFlower technology that actually makes this work for big companies is the quality control. We keep track of people. We recognize people that have done good work in the past and give them access to higher paying jobs, but we still watch and check up on you 10% of the time to make sure you are still doing a good job.

See http://www.sramanamitra.com/2011/10/01/crowdsourcing-repetitive-tasks-crowdflower-founder-lukas-biewald-part-3/.

---

[1] http://www.sramanamitra.com/2011/09/29/crowdsourcing-repetitive-tasks-crowdflower-founder-lukas-biewald-part-1; http://www.sramanamitra.com/2011/09/30/crowdsourcing-repetitive-tasks-crowdflower-founder-lukas-biewald-part-2/; http://www.sramanamitra.com/2011/10/01/crowdsourcing-repetitive-tasks-crowdflower-founder-lukas-biewald-part-3/; http://www.sramanamitra.com/2011/10/02/crowdsourcing-repetitive-tasks-crowdflower-founder-lukas-biewald-part-4; http://www,sramanamitra.com;2011/10/03/crowdsourcing-repetitive-tasks-crowdflower-founder-lukas-biewald-part-5; http://www.sramanamitra.com/2011/10/04/crowdsourcing-repetitive-tasks-crowdflower-founder-lukas-biewald-part-6/; and http://www.sramanamitra.com;2011/10/05/crowdsourcing-repetitive-tasks-crowdflower-founder-lukas-biewald-part-7/.

**Skills Required**

20. Biewald admits that CrowdFlower does not have any requirements for its workers and no special skill is required. See http://www.youtube.com/watch?v=U4O8RYtcGc4.

**CrowdFlower's Supervision and Control**

21. In the same interview, Biewald also stated that CrowdFlower carefully monitors the quality and accuracy of the work performed by its workforce. He stated that one method of quality control used by Crowdflower is assigning the same task to more than one person to compare outcomes. CrowdFlower creates different levels and qualities of work depending on its level of "trust" of the person performing the work. Those less trusted workers received lower paying tasks. Work requiring more accuracy for which CrowdFlower charged its customers higher rates was distributed to those in its workforce with higher accuracy rates. See http://www.youtube.com/watch?v= U4O8RYtcGc4.

22. CrowdFlower provides its Workers step-by-step instructions to perform the work in accordance with CrowdFlower's methods and standards.

23. CrowdFlower's computer programs and interfaces guide its Workers through each step of each assigned tasks so that tasks must be performed in accordance with CrowdFlower's methods and instructions.

24. CrowdFlower's July 2012 "Contributor Channel Handbook (Frequently Asked Questions)" describes the "basic worker flow" as follows:
   1. View available CrowdFlower tasks (1 min)
      a. Again this is the list of all tasks available within your channel
   2. Select specific CrowdFlower task (1-2 min)
      a. This is when our Platform and your service start tracking worker efforts
   3. Enter Training Mode (10-15 min)
      a. Read task-specific instructions
      b. Submit answers to tasks until CrowdFlower establishes worker Trust (which means they have proved to us they are doing quality work)
   4. Enter Work Mode (duration controlled by worker)
      a. Worker Trust is established, and they begin to work in earnest on the task
   5. Convert
      a. The worker has submitted Trusted results that add up to the Unit Conversion Amount displayed in the task header.

http://publicassets.s3.amazonaws.com/channels/CrowdFlower_Contributor_Channel_Handbook_JULY2012.pdf

25. CrowdFlower provides its Workers online instructions for obtaining better results.

26. CrowdFlower provides its Workers online instructions for handling problems.

27. CrowdFlower informs its Workers of errors in their work.

28. CrowdFlowers uses algorithms to gauge its Workers' proficiency. See http://missionlocal.org/2010/11/crowdflower/.

29. CrowdFlower informs its Workers that it tracks their "accuracy as they work." 30. CrowdFlower further advises its Workers that "Our system will automatically accept responses when a participant submits a HIT or completes an entire offer, as long as that participant's contribution meets our accuracy requirements."

30. CrowdFlower may ban or flag Workers if they "have submitted more wrong answers than our accuracy threshold will allow multiple times."

31. CrowdFlower may ban or flag Workers from a single job or from jobs in general.

32. CrowdFlower charges its customers more for higher accuracy work, therefore CrowdFlower is incentivized to supervise, monitor and quality-check its Workers.

**CrowdFlower's Wage Rates**

33. CrowdFlower routinely pays its Workers far less than the minimum wage required by the FLSA, 29 U.S.C. § 206(a).

34. In the March 30, 2010 interview, Biewald admitted that people performing work for CrowdFlower were paid about $2-3 dollars per hour. See http://www.youtube.com/watch?v=U4O8RYtcGc4.

35. Plaintiff Otey believes that the actual hourly rate that he received for work performed for CrowdFlower in 2012 was less than the range admitted by Biewald in the March 30, 2010 interview.

36. CrowdFlower also frequently provides its Workers non-cash compensation in lieu of cash wages, including for example online game credits and points for various award programs.

37. In the same interview with Sramana Mitra, Biewald admitted that CrowdFlower earns a profit by charging large customers more than its costs. Of course, CrowdFlower can bid the work more cheaply, and provide more attractive pricing to its customers, because it does not pay the minimum wage required by federal. See http://www.sramanamitra.com/2011/10/01/crowdsourcing-repetitive-tasks-crowdflower-founderlukas-biewald-part-3/.

**Willfulness**

38. CrowdFlower's online postings show that it is well aware of its failure to comply with the federal minimum wage law.

39. In the June 22, 2011 interview, Biewald was asked about paying minimum wages in a global economy. Biewald justified CrowdFlower's failure to pay minimum wages on the grounds that (a) there was no enslavement of CrowdFlower's work force; (b) there was no trickery used to obtain the workforce's services; (c) there were no threats made to CrowdFlower's work force; and (d) CrowdFlower was not operating a "digital sweat shop." Biewald had no explanation for why CrowdFlower did not pay minimum wages under federal law. See http://www.youtube.com/watch?v=hhqCVflxkAY.

40. In an interview with BBC News published October 21, 2010, Biewald stated, "I love it because we almost trick the game players into doing something useful for the world while playing these games. Just to do ten minutes of real work that a real company can use, and we'll give you a virtual tractor." See http://www.bbc.co.uk/news/business-11600902.

41. In the same June 22, 2011 interview, Biewald stated, "You know, I think there should be some minimum wage, but I don't think people should set the minimum wage based on what's a living wage or, like, what's fair. It should be like how do we get companies to stay in the business and employ the most people at the highest rate." *Id.*

42. In a November 5, 2010 article published by missionlocal.org, Biewald was quoted as saying, "In terms of regulatory issues, the law is not equipped to deal with what we are doing." See http://missionlocal.org/2010/11/crowdflower/.

43. CrowdFlower maintains data from millions of pieces of work performed by its Workers from which it determines the average length of time consumed by performing particular tasks. Therefore, it can easily determine and monitor hourly wage rates paid to its Workers.

**CrowdFlower's Size and Proliferation in the United States**

44. CrowdFlower has expanded exponentially since its founding in 2007.

45. In a March 30, 2010 interview, Biewald admitted that CrowdFlower had used more than 200,000 Workers in the United States in the preceding year and more than half of its work was performed in the United States. See http://www.youtube.com/watch?v=U4O8RYtcGc4.

46. In an August 18, 2010 interview, Biewald was quoted as describing CrowdFlower as providing "labor on demand" which means "that you can access tens of thousands, or hundreds of thousands, of people instantly." See Mac Slocum, "Thousands of workers are standing by", published online at http://radar.oreilly.com/2010/08/thousands-of-workers-are-stand.html.

47. In a June 22, 2011 interview on "This Week in Start Ups", Biewald stated that CrowdFlower can perform three human years' worth of work per day, that CrowdFlower had used more than one million people to perform tasks, and most of the work that CrowdFlower was performing was for large companies that wanted lots of work performed quickly for "big enterprise jobs" due to CrowdFlower's ability to scale up bigger than anyone else. See http://www.youtube.com/watch?v= hhqCVflxkAY.

48. In Sramana Mitra's article published in Fall 2011, Biewald described the work performed by CrowdFlower as approximately 50% workers in the U.S. and 50% workers from other countries, depending upon whether the requesting companies have crowdsourced tasks that have cultural components for which they want only workers in the U.S. See http://www.sramanamitra.com/2011/10/01/crowdsourcing-repetitive-tasks-crowdflower-founder-lukas-biewald-part-3/.

49. Thus, much of CrowdFlower's work is performed by Workers working in the United States, but CrowdFlower pays those Workers sub-minimum third world wages.

/ / /

**Collective Action Allegations**

50. Plaintiff brings Count I under the FLSA as an "opt-in" collective action on behalf of similarly situated Workers. 29 U.S.C. § 216(b).

51. The FLSA claim may be pursued by those who opt-in to this case pursuant to 29 U.S.C. § 216(b).

52. At all relevant times, Plaintiff Otey and the other Workers are and have been similarly situated, have had substantially similar job requirements and pay provisions, and have been subject to CrowdFlower's common uniform computerized practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them at the legally required minimum wage rates for similar work performed.

53. Plaintiff Otey, individually and on behalf of other similarly situated Workers, brings Count I seeking relief on a collective basis challenging CrowdFlower's practice of failing to pay Workers the federal minimum wage. The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined from CrowdFlower's records, and potential class members may easily and quickly be notified of the pendency of this action by electronic mail.

## VIOLATION OF THE FAIR LABOR STANDARDS ACT OF 1938

54. Plaintiff reasserts and re-alleges the allegations set forth above.

55. At all relevant times herein, Plaintiff Otey and all others similarly situated Workers have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

56. The FLSA regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. §206(a).

57. Defendants are subject to the minimum wage requirements of the FLSA because CrowdFlower has been an enterprise engaged in interstate commerce during times relevant and its Workers have been engaged in commerce during such times.

58. Defendants are "employers" within the FLSA's broad definition as they have suffered or permitted the Workers to work. 29 U.S.C. §§ 203(d) & (g).

59. Defendants Biewald and Van Pelt are "employers" within the FLSA's broad definition, and are thus jointly and severally liable with CrowdFlower, as Biewald and Van Pelt have held significant ownership interests in CrowdFlower and they have exercised control over the nature and structure of CrowdFlower's employment relationships, exercised economic control over those employment relationships, held the power to hire and fire Workers, supervised and controlled conditions of employment, determined the rate and method of payment, and maintained employment records.

60. Plaintiff Otey and the other similarly situated Workers are "employees" under the FLSA. 29 U.S.C. § 203(e).

61. Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of employees from minimum wage obligations; however, none of the FLSA exemptions apply to Plaintiff or other similarly situated Workers.

62. Pursuant to Section 6 of the FLSA, 29 U.S.C. § 206, employees have been entitled to compensation at a rate of at least $7.25 per hour since July 24, 2009.

63. On and after the date that is three years before the date the complaint in this action was filed, the Employees performed work for Defendants and Defendants failed to pay them at least the minimum wage required by the FLSA.

64. Defendants' conduct was willful because, among other things. they knew that they were paying their employees less than the minimum wage, they admitted failure to pay the minimum wage in public interviews, they possessed data which would have shown they were not complying the minimum wage laws, and because it was an essential component of their business model, competitiveness, and profit-making to violate the minimum wage laws and to pay their employees below the minimum wage.

65. Pursuant to their policy and practice, Defendants willfully violated the FLSA by refusing and failing to pay Plaintiff and other similarly situated Workers the federal minimum wage.

66. Plaintiff and all similarly situated Workers are victims of a uniform and employer-

based compensation policy. This uniform policy, in violation of the FLSA, has been applied, and continues to be applied, to all Workers in the United States and its territories.

67. Plaintiff and all similarly situated Employees are entitled to damages equal to the difference between the minimum wage and whatever actual cash wages they were paid by Defendants for work (a) on or after the date that his three years after the filing of the complaint in this action, and (b) for work performed before that date during periods of equitable tolling, which should apply because among other things, Defendants acted willfully as alleged herein.

68. Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result, Plaintiff and other similarly situated Workers are entitled to recover an award of liquidated damages in an amount equal to the unpaid minimum wages under Section 16(b) of the FLSA, 29 U.S.C. § 216(b). Alternatively, should the Court find that Defendants acted in good faith or with reasonable grounds to believe that they were not violating the FLSA, Plaintiff and all similarly situated Workers are entitled to an award of prejudgment interest at the applicable legal rate.

69. As a result of the aforesaid willful violations of the FLSA's minimum wage provisions, minimum wage compensation has been unlawfully withheld by Defendants from Plaintiff and all similarly situated Workers. Accordingly, Defendants are liable under 29 U.S.C. § 216(b), together with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE, on Count I of this Complaint, Plaintiff and all similarly situated Workers demand judgment against Defendants and request: (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs as allowed by 29 U.S.C. § 216(b); (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

///

///

///

///

///

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all causes of action and/or issues so triable.

Dated: October 25, 2012

By: *William T. Payne*
William T. Payne (SBN 90988)

Ellen M. Doyle, Pa. Bar #21854
**STEMBER FEINSTEIN DOYLE PAYNE & KRAVEC LLC**
Allegheny Building, 17th Floor
429 Forbes Avenue
Pittsburgh, PA  15219
Telephone:  (412) 281-8400
Fax:        (412) 281-1007
Email: wpayne@stemberfeinstein.com
Email: edoyle@stemberfeinstein.com

Mark A. Potashnick, Mo. Bar #41315
**WEINHAUS & POTASHNICK**
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Telephone: (314) 997-9150 ext. 2
Fax: (314) 997-9170
Email: markp@wp-attorneys.com

Ira Spiro (SBN 67641)
Jennifer Connor (SBN 241480)
**SPIRO MOORE LLP**
11377 W. Olympic Blvd.
5th Floor
Los Angeles, CA 90064
Telephone:  (310) 235-2468
Fax:        (310) 235-2456
Email: ira@spiromoore.com
Email: jennifer@spiromoore.com

ATTORNEYS FOR PLAINTIFF

COMPLAINT for Damages          13

EXHIBIT 1

## CONSENT TO BECOME A PARTY PLAINTIFF

Fair Labor Standards Act of 1938, 29 U.S.C. § 216(b)

**I hereby consent to be a party plaintiff** seeking unpaid wages against CrowdFlower, Inc.

Date: 10-25-2012

*Christopher M Otey*
Signature

Printed Name: Chris Otey