1  Ira Spiro (SBN 67641)
   Jennifer Connor (SBN 241480)
2  Justin Marquez (SBN 262417)
   **SPIRO MOORE LLP**
3  11377 W. Olympic Blvd., Fifth Floor
   Los Angeles California 90064
4  Telephone: (310) 235-2468;
   Fax: (310) 235-2456
5  ira@spiromoore.com
   jennifer@spiromoore.com
6  justin@spiromoore.com

7  Attorneys for Plaintiff CHRISTOPHER OTEY

8
   JACQUELINE E. KALK (admitted *pro hac vice*)
9  **LITTLER MENDELSON, P.C.**
   80 South 8th Street, Suite 1300
10 Minneapolis, MN 55402.2136
   Telephone: 612-313-7645
11 Facsimile: 612.677.3139
   jkalk@littler.com
12
   Attorneys for Defendants
13 CROWDFLOWER, INC., LUKAS BIEWALD
   AND CHRIS VAN PELT
14
   [Additional counsel listed on the next page]
15

16            IN THE UNITED STATES DISTRICT COURT
17         FOR THE NORTHERN DISTRICT OF CALIFORNIA
                  SAN FRANCISCO DIVISION
18

19 CHRISTOPHER OTEY, on behalf of          CASE NO. 3:12-cv-05524-JST
   himself and all others similarly situated,
20                                          STIPULATION RE: LEAVE TO FILE
                                            SECOND AMENDED COMPLAINT TO
21                Plaintiff,                ADD OPT-IN PLAINTIFF MARY
                                            GRETH AS ADDITIONAL NAMED
22           v.                             PLAINTIFF; [PROPOSED] ORDER
                                            THEREON
23 CROWDFLOWER, INC., LUKAS
   BIEWALD AND CHRIS VAN PELT,
24
                  Defendants.
25

26

27

28

       STIPULATION RE: LEAVE TO FILE SECOND AMENDED COMPLAINT:
                    CASE NO. 3:12-cv-095524-JST

1   William T. Payne (SBN 90988)
    wpayne@fdpklaw.com
2   Ellen M. Doyle (*Pro Hac Vice*)
    edoyle@fdpklaw.com
3   **FEINSTEIN DOYLE**
    **PAYNE & KRAVEC, LLC**
4   429 Forbes Avenue, 17th floor
    Pittsburgh, PA 15219
5   Telephone:  (412) 281-8400
    Fax: (412) 281-1007
6
7   Mark A. Potashnick (*Pro Hac Vice*)
    markp@wp-attorney.com
8   **WEINHAUS & POTASHNICK**
    11500 Olive Blvd., Suite 133
9   St. Louis, Missouri 63141
    Telephone:  (314) 997-9150
10  Fax: (314) 997-9170

11  Attorney for Plaintiff CHRISTOPHER OTEY

12  ARTHUR M. EIDELHOCH, (Bar No. 168096)
    aeidelhoch@littler.com
13  GALEN M. LICHTENSTEIN, (Bar No. 251274)
    glichtenstein@littler.com
14  **LITTLER MENDELSON, P.C.**
    650 California Street, 20th Floor
15  San Francisco, California 94108.2693
    Telephone:  415.433.1940
16  Facsimile:  415.399.8490

17  KELLY D. REESE (admitted *pro hac vice*)
    kreese@littler.com
18  **LITTLER MENDELSON, P.C.**
    63 South Royal Street, Suite 901
19  Mobile, AL 36602.3218
    Telephone:   251-432-2477
20  Facsimile:   251-432-0427

21  Attorneys for Defendants
    CROWDFLOWER, INC., LUKAS BIEWALD
22  AND CHRIS VAN PELT

23

24

25

26

27

28

STIPULATION RE: LEAVE TO FILE SECOND AMENDED COMPLAINT;
CASE NO. 3:12-cv-095524-JST

Plaintiff CHRISTOPHER OTEY ("Plaintiff") and Defendants CROWDFLOWER, INC., LUKAS BIEWALD, and CHRIS VAN PELT ("Defendants"), by and through their respective counsel, hereby enter into the following Stipulation Re: Leave To File Second Amended Complaint. Specifically, by and through this Stipulation, the parties request that the Court grant Plaintiff leave to file a Second Amended Complaint, in the form attached hereto as Exhibit "1" and which seeks to add current opt-in plaintiff, MARY GRETH ("Ms. Greth"), as an additional named Plaintiff. On April 26, 2013, Ms. Greth filed her Notice of Consent to Join FLSA Collective Action [D.E. 91], and now Ms. Greth seeks to join the lawsuit in the capacity of a representative named Plaintiff. The proposed Second Amended Complaint with its added allegations regarding Ms. Greth reflects the same. The parties mutually request that the Court approve this Stipulation and enter an order in accordance thereon.

## STIPULATION

1. The original Complaint in this action was filed on October 26, 2012 against Defendants Crowdflower, Inc.; Lukas Biewald; and Chris Van Pelt. The operative First Amended Complaint ("FAC") was filed on December 20, 2012. [D.E. No. 27] Defendants' responded with the operative Defendants' Amended Answer and Defenses to First Amended Complaint filed on April 23, 2013 [D.E. No. 89].

2. Plaintiff Christopher Otey brings a Fair Labor Standards Act ("FLSA") collective action and state law class action asserting the alleged failure of Defendants to pay him and other individuals performing online crowdsourced work minimum wages pursuant to federal and Oregon state laws. The crux of the parties' dispute is whether Plaintiff and other persons performing crowdsourcing work for Defendants are governed by an employer/employee or an independent contractor relationship.

3. On April 26, 2013, current opt-in plaintiff Mary Greth filed her Notice of Consent to Join FLSA Collective Action. [D.E. 91] Further, the parties have been, and

1  continue to, exchange formal discovery as it pertains to both Christopher Otey and Mary

2  Greth.

3       5.    Plaintiff hereby moves the Court for leave to file a Second Amended

4  Complaint ("SAC") that would add current opt-in plaintiff Mary Greth as a newly-named

5  plaintiff and assert the same FLSA pending cause of action and allegations against

6  Defendants.

7       6.    Defendants, while denying all of Plaintiff's allegations, have no objection to

8  the filing of the proposed SAC seeking to add Mary Greth as a newly-named plaintiff

9  along with current named plaintiff Christopher Otey.

10       7.    The parties mutually request that the Court grant Plaintiff leave to file a

11  Second Amended Complaint in the form proposed herein within 5 days after entry of this

12  order. The parties further mutually agree that Defendants shall have thirty (30) day

13  after the filing of Plaintiff's Second Amended Complaint to file a responsive pleading.

14

15  Dated: June 17, 2013             Respectfully submitted,

16                                LITTLER MENDELSON, P.C.

17

18                                By:  /s/ Jacqueline E. Kalk
                                  JACQUELINE E. KALK

19                                    ARTHUR M. EIDELHOCH
                                  GALEN M. LICHTENSTEIN

20                                    KELLY D. REESE
                                  Attorneys for Defendants

21                                    CROWDFLOWER, INC., LUKAS
                                  BIEWALD AND CHRIS VAN PELT

22

23  Dated: June 17, 2013             SPIRO MOORE LLP

24

25                                By:   /s/ Jennifer L. Connor
                                    JENNIFER L. CONNOR

26                                      IRA SPIRO
                                  JUSTIN MARQUEZ

27                                    Attorneys for Plaintiffs CHRISTOPHER OTEY
                                  and MARY GRETH

28

1

## ~~[PROPOSED]~~ ORDER

2   Good cause appearing therefore, the foregoing Stipulation Re: Leave To File Second Amended

3   Complaint ("Stipulation") is hereby approved and it is hereby ordered that:

4   1.      Plaintiff is granted leave to file a Second Amended Complaint in the form attached as

5   "Exhibit 1" to the parties' Stipulation.  The Second Amended Complaint shall be filed and served on

6   Defendants' counsel of record within 5 days after entry of this Order.

7   2.      Upon the filing of the Second Amended Complaint, Defendants shall have 30 days

8   thereafter to file a responsive pleading.

9

10  PURSUANT TO STIPULATION, IT IS SO ORDERED

11

12  Dated: ___June 17, 2013_____

13

14  HONORABLE JON S. TIGAR
    UNITED STATES DISTRICT COURT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

William T. Payne (SBN 90988)
Ellen M. Doyle (Pro Hac Vice)
Edward J. Feinstein (Pro Hac Vice)
Feinstein Doyle Payne & Kravec, LLC
429 Forbes Avenue, 17th Floor
Pittsburgh, PA   15219
412-281-8400 (T), 412-281-1007 (F)
wpayne@fdpklaw.com
edoyle@fdpklaw.com
efeinstein@fdpklaw.com

Mark A. Potashnick (Admitted Pro Hac Vice)
Weinhaus & Potashnick
11500 Olive Boulevard, Suite 133
St. Louis, MO  63141
314-997-9150(T), 314-997-9170 (F)
markp@wp-attorney.com

Ira Spiro (SBN 67641)
Jennifer L. Connor (SBN 241480)
Justin F. Marquez (SBN 262417)
Spiro Moore LLP
11377 W. Olympic Blvd, 5th Floor
Los Angeles, CA  90064
310-235-2468 (T), 310-235-2456 (F)
ira@spiromoore.com
jennifer@spiromoore.com
justin@spiromoore.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CHRISTOPHER OTEY, MARY GRETH,** on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**CROWDFLOWER, INC., LUKAS BIEWALD AND CHRIS VAN PELT,**<br><br>Defendants. | **CASE NO.  C 12-5524 CRB**<br><br>Judge:  Hon. John S. Tigar<br><br>**SECOND AMENDED COMPLAINT FLSA COLLECTIVE ACTION AND STATE LAW CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

SECOND AMENDED COMPLAINT                                    1

1.      CrowdFlower, Inc. ("CrowdFlower") describes itself as providing the "World's Largest Workforce." However, it pays its workforce wages well below the required federal and state minimum wage rates. In many instances, CrowdFlower fails to pay any cash wages at all for work performed. CrowdFlower's deliberate failure to pay its workers their earned minimum wages violates the Fair Labor Standards Act ("FLSA") and Oregon law. Plaintiffs and all other similarly situated persons work or previously worked for CrowdFlower as online providers of simple repetitive tasks. As described herein, CrowdFlower substantially monitored, supervised and controlled their work. This lawsuit is brought as (a) a collective action under the FLSA to recover unpaid minimum wages and liquidated damages owed to Plaintiffs and all other similarly situated persons employed by CrowdFlower; and (b) a class action under Oregon law to recover unpaid minimum wages and penalty wages due to Plaintiff Christopher Otey and all other similarly situated workers employed by CrowdFlower in Oregon. Plaintiffs allege the following based upon information and belief and the investigation of their counsel:

## INTRODUCTION

2.      This is a collective action brought under the FLSA, 29 U.S.C. § 201 *et seq.*, on behalf of Plaintiff Christopher Otey, Plaintiff Mary Greth, and a nationwide class of all people who, on or after the date three years before the filing of the complaint in this action, performed crowd-sourced work in the United States online in response respond to any online request by CrowdFlower for crowd-sourced work, or any online notification by CrowdFlower that crowd-sourced work was available (hereinafter collectively "Workers"). The United States includes all 50 states, all territories of the United States and the District of Columbia, and all other places where the FLSA applies.

3.      This is also a class action brought by Plaintiff Otey under ORS §§ 653.055, 652.150 and 652.200 on behalf of all Workers in Oregon within the six years preceding the filing of this Complaint (collectively "Oregon Workers") who have not been paid Oregon's minimum wage.

4.      CrowdFlower is an internet based technology company that was established in late 2007. It now describes itself as providing the "World's Largest Workforce." Although the majority of the work that CrowdFlower performs is for corporations operating in the United States,

1  particularly very large employers, and although approximately half of CrowdFlower's work force

2  lives in the United States, CrowdFlower has failed to pay minimum wages required by federal and

3  state law.

4       5.     Plaintiffs allege that CrowdFlower's conduct gives rise to claims for relief for

5  violations of the minimum wage provisions of the FLSA, 29 U.S.C. § 206(a), and Oregon law, ORS

6  §§ 653.025 and 652.150.

7

8  **PARTIES**

9       6.     Plaintiff Otey is currently a resident of Astoria, Oregon. In 2012, and possibly also

10  late 2011, Plaintiff Otey was an employee of CrowdFlower, employed to perform simple repetitive

11  online tasks for the benefit of CrowdFlower while under CrowdFlower's supervision and control.

12  Plaintiff Otey's consent to be a party plaintiff in an FLSA claim is already filed with this Court as

13  "Exhibit 1" to the initial complaint.

14       7.     Plaintiff Greth is currently a resident of Milledgeville, Georgia. From approximately

15  2010 to 2012, Plaintiff Greth was an employee of CrowdFlower, employed to perform simple

16  repetitive online tasks for the benefit of CrowdFlower while under CrowdFlower's supervision and

17  control. Plaintiff Greth's consent to be a party plaintiff in an FLSA claim was already filed with this

18  Court on April 26, 2013, Docket Number 91.

19       8.     CrowdFlower is a Delaware corporation which maintains its principal place of

20  business at 2111 Mission Street, Suite 302, San Francisco, California, 94110. From its inception,

21  CrowdFlower has used technology to distribute to a large work force simple repetitive tasks which

22  can be better performed by human labor than computers. CrowdFlower is and has been the

23  employer of Plaintiffs and the other similarly situated Workers and putative class members with

24  respect to the work performed by them. CrowdFlower engages in interstate commerce and has more

25  than $500,000.00 in annual dollar volume of business.

26       9.     CrowdFlower was founded in 2007 by Lukas Biewald ("Biewald") and Chris Van

27  Pelt ("Van Pelt").

28

---

SECOND AMENDED COMPLAINT           3

1      10.    Biewald is the current Chief Executive Officer ("CEO") of the company and Van Pelt

2  is the current Chief Technology Officer ("CTO").

3      11.    Biewald and Van Pelt have held significant ownership interests in CrowdFlower.

4      12.    Biewald and Van Pelt have exercised control over the nature and structure of

5  CrowdFlower's employment relationships, exercised economic control over those employment

6  relationships, held the power to hire and fire Workers, supervised and controlled conditions of

7  employment, determined the rate and method of payment, and maintained employment records.

9                          **JURISDICTION AND VENUE**

10     13.    The FLSA authorizes court actions by private parties to recover damages for violation

11  of the FLSA's wage and hour provisions. Jurisdiction over Plaintiff's FLSA claim is based on 29

12  U.S.C. § 216(b) and 28 U.S.C. § 1331.

13     14.    Oregon law authorizes court actions by private parties to bring claims to recover

14  damages for violation of Oregon's minimum wage requirement (ORS § 653.055) and to recover

15  damages for Oregon's requirement to promptly pay wages due upon cessation of employment (ORS

16  § 652.150). This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. §

17  1367(a). This Court also has subject matter jurisdiction over this case under 28 U.S.C. § 1332(d)(2)

18  because the claim is brought as a class action between citizens of different states and the amount in

19  controversy exceeds $5,000,000, exclusive of interest and costs.

20     15.    Venue is proper within this judicial district because Crowdflower maintains offices,

21  has agents, transacts business and is found within this judicial district. Many other affected persons

22  can be found in this judicial district, and Crowdflower has received substantial compensation from

23  such transactions and business activity in this judicial district. In addition, in a statement of written

24  terms which CrowdFlower published on its website, CrowdFlower asserted that any action against it

25  must be brought in the Northern District of California.

---

SECOND AMENDED COMPLAINT         4

## FACTUAL ALLEGATIONS

**CrowdFlower's Business Model**

16.     On its website at http://www.CrowdFlower.com/ Defendant CrowdFlower advertises that it has "The World's Largest Workforce" where one may "[i]nstantly hire millions of people to collect, filter, and enhance your data." CrowdFlower's business model is to maintain a large dispersed workforce with Workers working on their own computers to perform small and simple repetitive parts of larger tasks. Typically, the tasks involve large projects for large companies, such as identifying the content of photographs. CrowdFlower divides the large projects into small and simple repetitive tasks which it assigns to its workforce ("crowdsourcing"). CrowdFlower's business model depends on its proprietary computer systems, software, logic and algorithms, which allow CrowdFlower to instruct, guide, supervise and control the manner of performing the task and to provide significant quality control of the work performed by these Workers.

17.     CrowdFlower summarized on its website, "CrowdFlower takes large, data-heavy projects and breaks them into small tasks that are distributed to more than a million on-demand contributors globally." See http://crowdflower.com/general/privacy.html.

18.     CrowdFlower has a webpage which divides its "Community" into those who "provide work" and those who "do work." Those providing work are asked if they are "interested in displaying microtasks" to which they can respond "Yes, I want to provide work." CrowdFlower's website also asks persons if they are interested in "completing tasks in exchange for compensation," to which they can respond "Yes, I want to do work." See http://crowdflower.com/channel.

19.     CrowdFlower assigns the Workers tasks to be done at CrowdFlower's specific request. Thus, CrowdFlower suffers and permits them to work for its benefit.

20.     The Contributor's performance of the small repetitive tasks requested by CrowdFlower constitutes the core business of CrowdFlower and core service offered by CrowdFlower to its customers.

21.     In an interview by Sramana Mitra posted online in Fall 2011, Biewald described CrowdFlower's business model as follows:[1]

> Our business model is pretty simple. We quote customers the price for completed tasks, and upon completing those tasks receive payment regardless of the cost we incur competing those tasks. We assume the price risk. Let's suppose a company has a large directory of businesses and they want to provide those addresses to their sales force. However, before sending salespeople to those addresses they want to validate that those are the correct addresses. Convenience stores are a good example because they close and open new ones all the time. You don't want to send a salesperson to a store that has been shut down.

> That company would then have a task of checking all of the addresses they have in their directory. A project that we work for them would then turn into us checking a million addresses for them at the cost of 1 million dollars. I am making those numbers up, but it conveys the concept. The first thing we will do when we receive the task is to break it up into pieces. The first step would be to find the website for the business. The second person would check the work conducted by the first person. If they can't find the business online then a third person could be tasked to call the business. If that does not work out then a fourth person could then be tasked to physically go see the business. Each task is increasingly expensive.

> Anyone can put jobs online. The CrowdFlower technology that actually makes this work for big companies is the quality control. We keep track of people. We recognize people that have done good work in the past and give them access to higher paying jobs, but we still watch and check up on you 10% of the time to make sure you are still doing a good job.

http://www.sramanamitra.com/2011/10/01/crowdsourcing-repetitive-tasks-crowdflower-founder-lukas-biewald-part-3/.

**Skills Required**

22.     Biewald admits that CrowdFlower does not have any requirements for its workers and no special skill is required. http://www.youtube.com/watch?v=U4O8RYtcGc4.

**CrowdFlower's Supervision and Control**

---

[1] http://www.sramanamitra.com/2011/09/29/crowdsourcing-repetitive-tasks-crowdflower-founder-lukas-biewald-part-1; http://www.sramanamitra.com/2011/09/30/crowdsourcing-repetitive-tasks-crowdflower-founder-lukas-biewald-part-2/; http://www.sramanamitra.com/2011/10/01/crowdsourcing-repetitive-tasks-crowdflower-founder-lukas-biewald-part-3/; http://www.sramanamitra.com/2011/10/02/crowdsourcing-repetitive-tasks-crowdflower-founder-lukas-biewald-part-4; http://www.sramanamitra.com/2011/10/03/crowdsourcing-repetitive-tasks-crowdflower-founder-lukas-biewald-part-5; http://www.sramanamitra.com/2011/10/04/crowdsourcing-repetitive-tasks-crowdflower-founder-lukas-biewald-part-6/; and http://www.sramanamitra.com;2011/10/05/crowdsourcing-repetitive-tasks-crowdflower-founder-lukas-biewald-part-7/.

23.     In the same interview, Biewald also stated that CrowdFlower carefully monitors the quality and accuracy of the work performed by its workforce.  He stated that one method of quality control used by Crowdflower is assigning the same task to more than one person to compare outcomes.  CrowdFlower creates different levels and qualities of work depending on its level of "trust" of the person performing the work.  Those less trusted workers received lower paying tasks.  Work requiring more accuracy for which CrowdFlower charged its customers higher rates was distributed to those in its workforce with higher accuracy rates.  http://www.youtube.com/watch?v=U4O8RYtcGc4.

24.     CrowdFlower provides its Workers step-by-step instructions to perform the work in accordance with CrowdFlower's methods and standards.

25.     CrowdFlower's computer programs and interfaces guide its Workers through each step of each assigned tasks so that tasks must be performed in accordance with CrowdFlower's methods and instructions.

26.     CrowdFlower's July 2012 "Contributor Channel Handbook (Frequently Asked Questions)" describes the "basic worker flow" as follows:

    1. View available CrowdFlower tasks (1 min)
        a. Again this is the list of all tasks available within your channel
    2. Select specific CrowdFlower task (1-2 min)
        a. This is when our Platform and your service start tracking worker efforts
    3. Enter Training Mode (10-15 min)
        a. Read task-specific instructions
        b. Submit answers to tasks until CrowdFlower establishes worker Trust (which means they have proved to us they are doing quality work)
    4. Enter Work Mode (duration controlled by worker)
        a. Worker Trust is established, and they begin to work in earnest on the task
    5. Convert
        a. The worker has submitted Trusted results that add up to the Unit Conversion Amount displayed in the task header.

    http://publicassets.s3.amazonaws.com/channels/CrowdFlower_Contributor_Channel_Handbook_JULY2012.pdf

27.     CrowdFlower provides its Workers online instructions for obtaining better results.

28.     CrowdFlower provides its Workers online instructions for handling problems.

29. CrowdFlower informs its Workers of errors in their work.

30. CrowdFlowers uses algorithms to gauge its Workers' proficiency. See http://missionlocal.org/2010/11/crowdflower/.

31. CrowdFlower informs its Workers that it tracks their "accuracy as they work."

32. CrowdFlower further advises its Workers that "Our system will automatically accept responses when a participant submits a HIT or completes an entire offer, as long as that participant's contribution meets our accuracy requirements."

33. CrowdFlower may ban or flag Workers if they "have submitted more wrong answers than our accuracy threshold will allow multiple times."

34. CrowdFlower may ban or flag Workers from a single job or from jobs in general.

35. CrowdFlower charges its customers more for higher accuracy work, therefore CrowdFlower is incentivized to supervise, monitor and quality-check its Workers.

**CrowdFlower's Wage Rates**

36. CrowdFlower routinely pays its Workers far less than the minimum wage required by the FLSA, 29 U.S.C. § 206(a), and Oregon law, ORS § 653.025.

37. In the March 30, 2010 interview, Biewald admitted that people performing work for CrowdFlower were paid about $2-3 dollars per hour. See http://www.youtube.com/watch?v=U4O8RYtcGc4.

38. Plaintiffs Otey and Greth believe that the actual hourly rate that they received for work performed for CrowdFlower was less than the range admitted by Biewald in the March 30, 2010 interview.

39. CrowdFlower also frequently provides its Workers non-cash compensation in lieu of cash wages, including for example online game credits and points for various award programs.

40. In the same interview with Sramana Mitra, Biewald admitted that CrowdFlower earns a profit by charging large customers more than its costs. Of course, CrowdFlower can bid the work more cheaply, and provide more attractive pricing to its customers, because it does not pay the minimum wage required by federal and state law. http://www.sramanamitra. com/2011/10/01/crowdsourcing-repetitive-tasks-crowdflower-founderlukas-biewald-part-3/.

SECOND AMENDED COMPLAINT                                    8

**Willfulness**

41.     CrowdFlower's online postings show that it is well aware of its failure to comply with federal and state minimum wage laws.

42.     In the June 22, 2011 interview, Biewald was asked about paying minimum wages in a global economy.  Biewald justified CrowdFlower's failure to pay minimum wages on the grounds that (a) there was no enslavement of CrowdFlower's work force; (b) there was no trickery used to obtain the workforce's services; (c) there were no threats made to CrowdFlower's work force; and (d) CrowdFlower was not operating a "digital sweat shop."  Biewald had no explanation for why CrowdFlower did not pay minimum wages under federal or state law.  See http://www.youtube.com/watch?v=hhqCVflxkAY.

43.     In an interview with BBC News published October 21, 2010, Biewald stated, "I love it because we almost trick the game players into doing something useful for the world while playing these games.  Just to do ten minutes of real work that a real company can use, and we'll give you a virtual tractor."  See http://www.bbc.co.uk/news/business-11600902.

44.     In the same June 22, 2011 interview, Biewald stated, "You know, I think there should be some minimum wage, but I don't think people should set the minimum wage based on what's a living wage or, like, what's fair.  It should be like how do we get companies to stay in the business and employ the most people at the highest rate."  *Id.*

45.     In a November 5, 2010 article published by missionlocal.org, Biewald was quoted as saying, "In terms of regulatory issues, the law is not equipped to deal with what we are doing."  See http://missionlocal.org/2010/11/crowdflower/.

46.     CrowdFlower maintains data from millions of pieces of work performed by its Workers from which it determines the average length of time consumed by performing particular tasks.  Therefore, it can easily determine and monitor hourly wage rates paid to its Workers.

**CrowdFlower's Size and Proliferation in the United States**

47.     CrowdFlower has expanded exponentially since its founding in 2007.

48.     In a March 30, 2010 interview, Biewald admitted that CrowdFlower had used more than 200,000 United States Workers in the preceding year and more than half of its work was performed in the United States. See http://www.youtube.com/watch?v=U4O8RYtcGc4.

49.     In an August 18, 2010 interview, Biewald was quoted as describing CrowdFlower as providing "labor on demand" which means "that you can access tens of thousands, or hundreds of thousands, of people instantly."   *See* Mac Slocum, "Thousands of workers are standing by", published online at http://radar.oreilly.com/2010/08/thousands-of-workers-are-stand.html.

50.     In a June 22, 2011 interview on "This Week in Start Ups", Biewald stated that CrowdFlower can perform three human years' worth of work per day, that CrowdFlower had used more than one million people to perform tasks, and most of the work that CrowdFlower was performing was for large companies that wanted lots of work performed quickly for "big enterprise jobs" due to CrowdFlower's ability to scale up bigger than anyone else. See http://www.youtube.com/watch?v= hhqCVflxkAY.

51.     In Sramana Mitra's article published in Fall 2011, Biewald described the work performed by CrowdFlower as approximately 50% workers in the U.S. and 50% workers from other countries, depending upon whether the requesting companies have crowdsourced tasks that have cultural components for which they want only Workers in the U.S.   http://www.sramanamitra.com/2011/10/01/crowdsourcing-repetitive-tasks-crowdflower-founder-lukas-biewald-part-3/.

52.     Thus, much of CrowdFlower's work is performed by Workers working in the United States, but CrowdFlower pays those Workers sub-minimum third world wages.

**Failure to Pay Wages Upon Cessation of Employment**

53.     Plaintiff Otey and numerous other Oregon Workers are no longer employed by CrowdFlower.

54.     CrowdFlower has willfully failed to pay Plaintiff Otey and the other Oregon Workers all wages due at the time their employments ceased or since that time.

55.     More than 48 hours, excluding Saturdays, Sundays and holidays, have lapsed since the wages became due and payable to Plaintiff Otey and other Oregon Workers.

**Pre-Suit Notice**

56.     Prior to filing suit, Plaintiff Otey's counsel provided a pre-suit written notice of nonpayment pursuant to ORS §§ 652.150(2) and 652.200(2).  A true copy of that written notice is attached as "Exhibit 2."

57.     Defendants failed to pay all wages due within 12 days of receipt of Plaintiff's written notice.

### FIRST CLAIM FOR RELIEF

### VIOLATION OF THE FAIR LABOR STANDARDS ACT OF 1938

58.     Plaintiffs reassert and re-allege the allegations set forth above.

59.     At all relevant times herein, Plaintiffs and all others similarly situated Workers have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

60.     The FLSA regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. §206(a).

61.     Defendants are subject to the minimum wage requirements of the FLSA because CrowdFlower has been an enterprise engaged in interstate commerce during times relevant and its Workers have been engaged in commerce during such times.

62.     Defendants are "employers" within the FLSA's broad definition as they have suffered or permitted the Workers to work.  29 U.S.C. §§ 203(d) & (g).

63.     Defendants Biewald and Van Pelt are "employers" within the FLSA's broad definition, and are thus jointly and severally liable with CrowdFlower, as Biewald and Van Pelt have held significant ownership interests in CrowdFlower and they have exercised control over the nature and structure of CrowdFlower's employment relationships, exercised economic control over those employment relationships, held the power to hire and fire Workers, supervised and controlled

---

SECOND AMENDED COMPLAINT                    11

1    conditions of employment, determined the rate and method of payment, and maintained employment

2    records.

3          64.    Plaintiffs and the other similarly situated Workers are "employees" under the FLSA.

4    29 U.S.C. § 203(e).

5          65.    Pursuant to Section 6 of the FLSA, 29 U.S.C. § 206, employees have been entitled to

6    compensation at a rate of at least $7.25 per hour since July 24, 2009.

7          66.    On and after the date that is three years before the date the complaint in this action

8    was filed, the Employees performed work for Defendants, and Defendants failed to pay them at least

9    the minimum wage required by the FLSA.

10         67.    Defendants' conduct was willful because, among other things. they knew that they

11    were paying their employees less than the minimum wage, they admitted failure to pay the minimum

12    wage in public interviews, they possessed data which would have shown they were not complying

13    the minimum wage laws, and because it was an essential component of their business model,

14    competitiveness, and profit-making to violate the minimum wage laws and to pay their employees

15    below the minimum wage.

16         68.    Pursuant to their policy and practice, Defendants willfully violated the FLSA by

17    refusing and failing to pay Plaintiffs and other similarly situated Workers the federal minimum

18    wage.

19         69.    Plaintiffs and all similarly situated Workers are victims of a uniform and employer-

20    based compensation policy.  This uniform policy, in violation of the FLSA, has been applied, and

21    continues to be applied, to all Workers in the United States and its territories.

22         70.    Plaintiffs and all similarly situated Employees are entitled to damages equal to the

23    difference between the minimum wage and whatever actual cash wages they were paid by

24    Defendants for work (a) on or after the date that is three years after the filing of the complaint in this

25    action, and (b) for work performed before that date during periods of equitable tolling, which should

26    apply because among other things, Defendants acted willfully as alleged herein.

27         71.    Defendants have acted neither in good faith nor with reasonable grounds to believe

28    that their actions and omissions were not a violation of the FLSA, and as a result, Plaintiffs and other

similarly situated Workers are entitled to recover an award of liquidated damages in an amount equal to the unpaid minimum wages under Section 16(b) of the FLSA, 29 U.S.C. § 216(b). Alternatively, should the Court find that Defendants acted in good faith or with reasonable grounds to believe that they were not violating the FLSA, Plaintiffs and all similarly situated Workers are entitled to an award of prejudgment interest at the applicable legal rate.

72. As a result of the aforesaid willful violations of the FLSA's minimum wage provisions, minimum wage compensation has been unlawfully withheld by Defendants from Plaintiffs and all similarly situated Workers. Accordingly, Defendants are liable under 29 U.S.C. § 216(b), together with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

## COLLECTIVE ACTION ALLEGATIONS

73. Plaintiffs brings Count I under the FLSA as an "opt-in" collective action on behalf of similarly situated Workers. 29 U.S.C. § 216(b).

74. At all relevant times, Plaintiffs and the other Workers are and have been similarly situated, have had substantially similar job requirements and pay provisions, and have been subject to CrowdFlower's common uniform computerized practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them at the legally required minimum wage rates for similar work performed.

75. Plaintiffs, individually and on behalf of other similarly situated Workers, bring Count I seeking relief on a collective basis challenging CrowdFlower's practice of failing to pay Workers the federal minimum wage. The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined from CrowdFlower's records, and potential class members may easily and quickly be notified of the pendency of this action by electronic mail.

## CLASS ACTION ALLEGATIONS

76. Plaintiff Otey brings Counts II and III as a class action under Fed. R. Civ. P. 23, on behalf of himself and as Class Representative of the following persons (the "Oregon Class"):

SECOND AMENDED COMPLAINT                    13

All current and former Workers who worked by CrowdFlower in Oregon at any time from the date that is six years before the filing of this First Amended Complaint until the Date Class Notice is Sent to the class..

77.     Plaintiff Otey's state law claims satisfy the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

78.     The Oregon Class satisfies the numerosity standard of Fed. R. Civ. P. 23(a)(1) as, upon information and belief, the Oregon Class consists of hundreds, if not thousands, of persons who are geographically dispersed.   As a result, joinder of all Class members in a single action is impracticable.   Class members may be informed of the pendency of this class action through electronic mail.

79.     Questions of fact and law common to the Oregon Class predominate over any questions affecting only individual members.   The questions of law and fact common to the Oregon Class arising from CrowdFlower's actions include, without limitation, the following:

a.     Whether Plaintiff Otey and the members of the Oregon Class worked in Oregon for CrowdFlower performing repetitive online tasks.

b.     Whether CrowdFlower paid Plaintiff Otey and the Oregon Class less than Oregon's minimum wage.

c.     Whether CrowdFlower maintained accurate time records of the time spent by Plaintiff Otey and Oregon Class as required by Oregon law, ORS § 653.045.

d.     Whether CrowdFlower's failure to pay Oregon's state minimum wage entitles Oregon Workers to recover penalty wages pursuant to ORS § 652.150.

80.     Plaintiff Otey's claims are typical of those of the Oregon Class in that he is a member of the Oregon Class, the Oregon Class members have been employed in the same position as Plaintiff Otey, and the Oregon Class has been subjected to the same unlawful practices as Plaintiff Otey.

81.     Plaintiff Otey is an adequate representative of the Oregon Class because his interests do not conflict with the interests of the Oregon Class members he seeks to represent, and he has retained counsel competent and experienced in conducting complex class action litigation including

1   wage and hour claims. Plaintiff Otey and his counsel will adequately and vigorously protect the

2   interests of the Oregon Class. Plaintiff's counsel have agreed to advance him the costs of the

3   litigation contingent upon the outcome so that he can adequately pursue these claims.

4       82.   A class action is the appropriate method for the fair and efficient adjudication of this

5   controversy because CrowdFlower has acted or refused to act on grounds generally applicable to the

6   Oregon Class and the presentation of separate actions by individual class members creates a risk of

7   inconsistent and varying adjudications, establishing incompatible standards of conduct for

8   CrowdFlower, and/or will substantially impair or impede the ability of Oregon Class members to

9   protect their interests.

10      83.   A class action is superior to other available means for the fair and efficient

11  adjudication of this dispute because the damages suffered by each individual class member likely

12  will be relatively small especially given CrowdFlower's business model of distributing tasks

13  amongst numerous Workers. Thus, the claims cannot be efficiently litigated as individual actions

14  given the burden and expense of the complex litigation necessitated by CrowdFlower's business

15  model and practices. Moreover, even if the Oregon Class members could afford individual actions,

16  it would still not be preferable to class-wide litigation. Maintenance of separate actions would place

17  a substantial and unnecessary burden on the courts and could result in inconsistent adjudications,

18  while a single class action can determine, with judicial economy, the rights of all Class members.

19

20                           **SECOND CLAIM FOR RELIEF**

21                    **VIOLATION OF OREGON'S MINIMUM WAGE LAW**

22      84.   Plaintiff Otey reasserts and re-alleges paragraphs 1 through 57 and 76 through 83

23  above.

24      85.   The FLSA's "savings clause" allows states to provide greater protection to employees

25  working in their jurisdictions than those provided by the FLSA. 29 U.S.C. § 218(a).

26      86.   In accordance with the FLSA's "savings clause," Oregon has enacted a minimum

27  wage law more favorable to employees than the FLSA. ORS § 653.025.

28

SECOND AMENDED COMPLAINT                    15

87.     At all relevant times herein, Plaintiff Otey and all others similarly situated Oregon Workers have been entitled to the rights, protections, and benefits provided under Oregon's minimum wage law. *Id.*

88.     Oregon's minimum wage law regulates the payment of minimum wage by statutory "employers." *Id.*

89.     Defendants are "employers" within Oregon's broad definition as they have suffered or permitted Plaintiff Otey and the other Oregon Workers to work within the State of Oregon. ORS §§ 653.010(2) & (3).

90.     Defendants Biewald and Van Pelt are "employers" within Oregon's broad definition, and are thus jointly and severally liable with CrowdFlower, as Biewald and Van Pelt have held significant ownership interests in CrowdFlower and they have exercised control over the nature and structure of CrowdFlower's employment relationships, exercised economic control over those employment relationships, held the power to hire and fire Workers, supervised and controlled conditions of employment, determined the rate and method of payment, and maintained employment records.

91.     Plaintiff Otey and the other Oregon Workers are "employees" under Oregon law as Defendants suffered or permitted them to work within the State of Oregon. ORS § 653.010(2).

92.     Pursuant to ORS § 653.025, Oregon employees have been entitled to compensation at a rate of at least $7.80 per hour during 2007, at least $7.95 per hour during 2008, at least $8.40 per hour from 2009 through 2011, and at least $8.50 in 2012.

93.     During the period six years preceding filing of this Complaint, Defendants have violated Oregon's minimum wage requirement by paying their Workers cash wages less than Oregon's minimum wage on a workweek basis.

94.     Defendants conduct was willful because they knew or should have known that their compensation policy and practice failed to compensate the Workers at the lower federal minimum wage as they admitted failure to pay Oregon's minimum wage in public interviews, they have expressed a belief that minimum wages should not be based on a "living wage" or even "what's fair"

in a public interview, and they possessed data which could have been used to determine minimum wage compliance.

95.     Plaintiff Otey and all similarly situated Oregon Workers are victims of a uniform and employer-based compensation policy. This uniform policy, in violation of the Oregon minimum wage law, has been applied, and continues to be applied, to all Oregon Workers.

96.     As a result of the aforesaid violations of the Oregon's minimum wage provisions, minimum wage compensation has been unlawfully withheld by Defendants from Plaintiff Otey and all similarly situated Oregon Workers. Accordingly, Defendants are liable under ORS § 653.055 for the full amount of the unpaid minimum wages and reasonable attorney's fees.

**THIRD CLAIM FOR RELIEF**

**VIOLATION OF THE OREGON'S WAGE PAYMENT LAW**

97.     Plaintiff Otey reasserts and re-alleges 1 through 57 and 76 through 96 above.

98.     Plaintiff Otey and numerous other Oregon Workers are no longer employed by CrowdFlower.

99.     CrowdFlower has willfully failed to pay Plaintiff Otey and the other Oregon Workers minimum wages due at the time their employment with CrowdFlower ceased or since that time.

100.    More than 48 hours, excluding Saturdays, Sundays and holidays, have elapsed since the wages became due and payable to Plaintiff Otey and the other Oregon Workers.

101.    Prior to filing suit, Plaintiff Otey's counsel provided CrowdFlower a pre-suit written notice of nonpayment pursuant to ORS §§ 652.150(2) and 652.200(2). Ex. 1.

102.    Defendants failed to pay all wages due within 12 days of receipt of Plaintiff Otey's written notice.

103.    As a result, Plaintiff Otey and other former Oregon Workers are entitled to penalty wages pursuant to ORS § 652.150 equating to Oregon's minimum wage for eight hours per day until Defendants pay all such wages, up to a maximum 30 days' worth of penalty wages. *Id.*

104.    Pursuant to ORS § 652.200(2), Plaintiff Otey is further entitled to recover his costs, disbursements, and attorney's fees incurred in bringing this claim. *Id.*

SECOND AMENDED COMPLAINT                17

**PRAYER**

WHEREFORE PLAINTIFFS PRAY JUDGMENT for themselves and all collective action members and class members, against all defendants jointly and severally as follows:

    A.  On the First Claim for Relief, Plaintiffs and all similarly situated workers in the U.S. and its territories demand judgment and request (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs as allowed by 29 U.S.C. § 216(b); (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

    B.  On the Second Claim for Relief, Plaintiff Otey and all similar situated Oregon Workers demand judgment against Defendants and request: (1) compensatory damages; (2) attorneys' fees as allowed by ORS § 653.055 (3) costs of litigation; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

    C.  On the Third Claim for relief, Plaintiff Otey and all similarly situated Oregon Workers demand judgment against Defendants and request: (1) penalty wages as allowed under ORS § 652.150; (2) attorneys' fees as allowed by ORS § 652.200(2); (3) costs of litigation; (4) disbursements; (5) pre-judgment and post-judgment interest as provided by law; and (6) such other relief as the Court deems fair and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims, causes of action and issues so triable.

Dated: June 17, 2013           By:   s/Jennifer L. Connor
                                 Jennifer L. Connor (SBN 241480)

                                 Ira Spiro (SBN 67641)
                                 Justin F. Marquez (SBN 262417)
                                 Spiro Moore LLP
                                 11377 W. Olympic Blvd, 5th Floor
                                 Los Angeles, CA 90064
                                 310-235-2468 (T), 310-235-2456 (F)

                                 ***ATTORNEYS FOR PLAINTIFFS***

# EXHIBIT 1

# WEINHAUS & POTASHNICK       *ATTORNEYS AT LAW*

11500 Olive Blvd., Suite 133, St. Louis, Missouri 63141-7126
Phone 314.997.9150 • Fax 314.997.9170
www.fairwagelawyers.com

Sheldon Weinhaus
Licensed in MO & AZ
weidobi@igc.org

Mark Potashnick
Licensed in MO & IL
markp@wp-attorneys.com

October 23, 2012

**VIA CERTIFIED MAIL /
RETURN RECEIPT REQUESTED**

Mr. Lukas Biewald
Mr. Chris Van Pelt
CrowdFlower, Inc.
2111 Mission Street, Suite 302
San Francisco, California 94110

RE:    Chris Otey

Dear Mssrs. Biewald and Van Pelt,

This firm and its co-counsel represent Chris Otey in his claims for unpaid minimum wages.
Pursuant to ORS §§ 652.150 and 652.200, please pay Mr. Otey and all other persons who have
performed crowdsourced work in Oregon their minimum wages earned during the past 6 years.
Mr. Otey's minimum wages due are estimated at $280.00. The minimum wages of other persons
in Oregon who have performed crowdsourced work are estimated at $7.00 per hour worked.

Sincerely,

Mark Potashnick

cc:    Chris Otey