ARTHUR M. EIDELHOCH, Bar No. 168096
aeidelhoch@littler.com
GALEN M. LICHTENSTEIN, Bar No. 251274
glichtenstein@littler.com
LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, California 94108.2693
Telephone:     415.433.1940
Facsimile:     415.399.8490

JACQUELINE E. KALK (*Pro Hac Vice*)
jkalk@littler.com
LITTLER MENDELSON, P.C.
80 South 8th Street, Suite 1300
Minneapolis, MN 55402-2136
Telephone:     612.313.7645
Facsimile:     612.677.3139

KELLY D. REESE (*Pro Hac Vice*)
kreese@littler.com
LITTLER MENDELSON, P.C.
63 South Royal Street, Suite 901
Mobile, AL 36602-3218
Telephone:     251.432.4540

Attorneys for Defendants
CROWDFLOWER, INC., LUKAS BIEWALD
AND CHRIS VAN PELT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHRISTOPHER OTEY, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CROWDFLOWER, INC., LUKAS BIEWALD and CHRIS VAN PELT,<br><br>Defendants. | Case No. 3:12-cv-05524-JST<br><br>**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION AND DISSEMINATION OF NOTICE PURSUANT TO 29 U.S.C. § 216(B)**<br><br>**DATE:   August 2, 2013**<br>**TIME:    2:00 PM**<br>**COURTROOM: 9** |

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

DEF'S OPPOS. TO PLAINTIFF'S MTN. FOR
COND'L COLLECTIVE ACTION CERT.

Case No. 3:12-cv-05524-JST

# TABLE OF CONTENTS

PAGE

I.    INTRODUCTION .................................................................................................. 1

II.   FACTUAL BACKGROUND.................................................................................. 2

      A.    CrowdFlower's General Business Model ................................................... 2

            1.    Overview................................................................................................ 2

            2.    Contributor Channels ......................................................................... 2

            3.    Amazon Mechanical Turk.................................................................. 3

            4.    DIY ....................................................................................................... 4

      B.    CrowdFlower Does Not Know the Identities, Physical or Email Addresses of
            over 97% of the Contributors................................................................... 5

      C.    CrowdFlower Lacks Any Meaningful Control Over the Time, Place, and
            Quantity of Work Performed by Contributors ......................................... 5

      D.    CrowdFlower Cannot Reliably Determine Time Spent Performing A Task .............. 7

      E.    CrowdFlower Has No Control Over How Contributors Are Compensated ............... 8

      F.    Plaintiffs' Performance of Tasks Posted by CrowdFlower Demonstrates that
            They Are Not Similarly Situated to the Putative Class............................ 10

            1.    Plaintiff Otey is not Similarly Situated to the Putative Class in terms of
                  Classification as an Independent Contractor................................... 10

            2.    Plaintiff Otey's Time Frame For and Quantity of Work .............................. 11

            3.    Plaintiff Greth's Time Frame For and Quantity of Work............................. 12

            4.    Plaintiffs' Work and Knowledge is Limited to AMT .................................. 13

            5.    Plaintiffs' Compensation ..................................................................... 13

            6.    Plaintiffs' DIY Work ............................................................................. 14

III.  ARGUMENTS AND AUTHORITIES................................................................. 14

      A.    Authorization Of Judicial Notice Under The FLSA Is Discretionary And
            Should Only Be Granted In "Appropriate" Cases ................................... 14

      B.    Plaintiffs Are Not Similarly Situated To The Putative Class ................... 16

            1.    Plaintiffs Are Not Similarly Situated to the Putative Class in Terms of
                  "Job Requirements." ............................................................................. 17

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

**TABLE OF CONTENTS**
(CONTINUED)

PAGE

2.   Plaintiffs Are Not Similarly Situated To The Putative Class Members With Respect To The Manner In Which Work was Performed.................... 18

3.   Plaintiffs Are Not Similarly Situated To The Putative Class With Respect To Pay Provisions............................................................ 20

4.   Plaintiffs' Wage Claims Require Individualized Proof which Inherently Conflicts with Collective Action Treatment............................... 23

5.   Plaintiffs are  Subject the De Minimis Defense............................. 23

6.   Plaintiffs Completed Tasks For Only One Of 226 Channels........................ 24

C.   The Legal Context Within Which Plaintiffs' Claim Must Be Adjudicated.............. 25

1.   Plaintiffs' "Bare Bones" Motion, Relying Upon "The Mere Classification Of A Group Of Employees" And Minimal Evidentiary Support, Should Be Denied............................ 26

D.   Plaintiffs Have Failed to Establish that Sufficient Interest Exists to Justify Conditional  Certification and Notice......................................... 28

E.   Plaintiffs Should Bear All Costs Associated With Providing Notice...................... 32

IV.   CONCLUSION......................................................................... 34

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

# TABLE OF AUTHORITIES

PAGE

**CASES**

*Adams v. Singh,*
242 F.R.D. 530 (N.D. Cal. April 6, 2007) .............................................................................30

*Amendola v. Bristol-Myers Squibb Co.,*
558 F. Supp. 2d 459 (S.D.N.Y. 2008)..................................................................................25

*Anderson v. Cagle's, Inc.,*
488 F.3d 945 (11th Cir. 2007) .............................................................................................22

*Anderson v. Perdue Farms, Inc.,*
2007 U.S. Dist. LEXIS 94166 (M.D. Ala. Dec. 20 2007)..............................................17, 23

*Beauperthuy v. 24 Hour Fitness,*
772 F. Supp. 2d 1111 (N.D. Cal. 2011) ....................................................................... passim

*Bernard v. Household Int'l, Inc.,*
231 F. Supp. 2d 433 (E.D. Va. 2002) ...................................................................................28

*Clausman v. Nortel Networks, Inc.,*
2003 U.S. Dist. LEXIS 11501 (S.D. Ind. 2003) ...................................................................14

*Colson v. Avnet, Inc.,*
687 F. Supp. 2d 914 (D. Ariz. 2010) ........................................................................14, 26, 27

*Comcast v. Behrend,*
133 S. Ct. 1426 (U.S. 2013)..................................................................................15, 16, 22

*Daniels v. Aeropostale W, Inc.,*
2013 U.S. Dist. LEXIS 59514 (N.D. Cal. April 24, 2013)...............................................33, 34

*DeKeyser v. ThyssenKrupp Waupaca, Inc.,*
2008 U.S. Dist. LEXIS 102318 (E.D. Wis. Dec. 17, 2008).................................................32

*Dybach v. Florida Dep't of Corr.,*
942 F.2d 1562 (11th Cir. 1991) ...........................................................................................16

*Eisen v. Carlisle & Jacqueline,*
417 U.S. 156 (1974)..............................................................................................................32

*Eng-Hatcher v. Sprint Nextel Corp.,*
2009 U.S. Dist. LEXIS 127262 (S.D.N.Y., Nov. 13, 2009).................................................15

*Espenscheid v. DirectStat USA,*
705 F.3d 770 (7th Cir. 2013) ..........................................................................................15, 19

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE

*Forrand v. Federal Express Corp.*,
2013 U.S. Dist. LEXIS 62252 (C.D. Cal. April 25, 2013) ...............................................19, 20

*Fox v. Tyson Foods, Inc.*,
519 F.3d 1298 (11th Cir. 2008) ............................................................................................22

*Gilmer v Alamed-Contra Cost Transit Dist.*,
2011 U.S. Dist. LEXIS 126845 (N.D. Cal. Nov. 2, 2011) .......................................................23

*Ginsburg v. Comcast Cable Commc'ns Mgmt. LLC*,
2013 U.S. Dist. LEXIS 55149 (W.D. Wash. April 17, 2013) ..................................................20

*Harris v. FFE Transp. Servs., Inc.*,
2006 U.S. Dist. LEXIS 51437 (N.D. Tex. May 15, 2006) ......................................................17

*Hinterberger v. Catholic Health Sys.*,
2009 U.S. Dist. LEXIS 97944 (W.D. N.Y. Oct. 21, 2009) .....................................................33

*Hoffmann-La Roche v. Sperling*,
493 U.S. 165 (1989) ..............................................................................................................14

*Horne v. United Servs. Auto. Ass'n.*,
279 F. Supp. 2d 1231 (M.D. Ala. 2003) .........................................................................14, 15

*Howard v. Securitas SecServs., USA Inc.*,
2009 U.S. Dist. LEXIS 3913 (N.D. Ill. Jan. 20, 2009) .....................................................33, 32

*Hunt v. Imperial Merchant Servs., Inc.*,
560 F. 3d 1137 (9th Cir. 2009) ..............................................................................................33

*In re Apple iPhone 4 Products LiabLitig*,
2012 U.S. Dist. LEXIS 113876 (N.D. Cal. Aug. 10, 2012) ....................................................31

*In re Domestic Air*,
141 F.R.D. 534 (N.D. Ga. 1992) ............................................................................................30

*In re Wells Fargo*,
571 F.3d (9th Cir. 2009) .........................................................................................................26

*In re: Netflix Privacy Litig*,
2012 U.S. Dist. LEXIS 93284 ................................................................................................31

*Lane v. Atlas Roofing Corp.*,
2012 U.S. Dist. LEXIS 95914 (C.D. Ill. July 11, 2012) ........................................................32

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE

*Lindow v. U.S.*,
738 F.2d 1057 (9th Cir. 1984) .........................................................................23, 24

*Loef v. First Am. Title Ins. Co.*,
281 F.R.D. 58 (D. Maine Feb. 28, 2012) ..........................................................31, 34

*Long v. BDP Int'l, Inc.*,
2013 U.S. Dist. LEXIS 17252 (S.D. Tex. Feb. 8, 2013) ........................................24

*Marsh v. Butler County School System*,
242 F.Supp.2d 1086 (M.D. Ala. 2003) ..................................................................26

*Martinez v. Cargill Meat Solutions*,
265 F.R.D. 490 (D. Neb. Dec. 11, 2009) ...............................................................31

*Martins v. 3PD, Inc.*,
2013 U.S. Dist. LEXIS 45753 (D. Mass. Mar. 28, 2013) ......................................22

*McElmurry v. U.S. Bank National Association*,
2004 U.S. Dist. LEXIS 15233 (D. Or., July 27, 2004).....................................21, 22

*McElmurry v. US Bank Nat'l Ass'n*,
2006 U.S. Dist LEXIS 89875 (D. Or Dec. 8, 2006) ........................................18, 21

*Mike v. Safeco Ins. Co. of Am.*,
274 F. Supp. 2d 216 (D. Conn. 2003) .....................................................................15

*Monger v. Cactus Salon & Spa's LLC*,
2009 U.S. Dist. LEXIS 60066 (E.D.N.Y., July 6, 2009) .......................................28

*Mowdy v. Beneto Bulk Transport*,
2008 U.S. Dist. LEXIS 26233 (N.D. Cal. March 31, 2008).....................................30

*Oppenheimer v. Sanders*,
437 U.S. 340 (1978).........................................................................................32, 33

*Pfohl v. Farmers Ins. Group*,
2004 U.S. Dist. LEXIS 6447 (C.D. Cal. Mar. 1, 2004)....................................21, 25

*Putnam v. Galaxy 1 Marketing, Inc.*,
276 F.R.D. 264 (S.D. Iowa Aug. 23, 2011) ..........................................................29

*Reed v. County of Orange*,
266 F.R.D. 446 (C.D. Cal. 2010) ..........................................................................24

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

TABLE OF AUTHORITIES                          iii.                          Case No. 3:12-cv-05524-JST

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE

*Robinson v. Dolgencorp, Inc.,*
   2006 U.S. Dist. LEXIS 85471 (M.D. Fla., Nov. 13, 2006) ...........................................28, 29

*Romero v. Producers Dairy Foods, Inc.,*
   235 F.R.D. 474 (E.D. Cal. 2006) ...........................................................................................30

*Ross v. RBS Citizens, N.A.,*
   667 F.3d 900 (7th Cir. 2012) ..................................................................................................16

*Scott v. Raudin McCormick, Inc.,*
   2010 U.S. Dist. LEXIS 130061 (D. Kan. Dec. 8, 2010)....................................................19, 23

*Sharer v. Tandberg, Inc.,*
   2006 U.S. Dist. LEXIS 75357 (E.D. Va. Oct. 17, 2006) ........................................................32

*Sheffield v. Orius Corp.,*
   211 F.R.D. 411 (D. Or. 2002) ...................................................................................21, 24, 25

*Silverman v. SmithKline Beecham Corp.,*
   2007 U.S. Dist. LEXIS 80030 (C.D. Cal. 2007)............................................................ passim

*Smith v. Family Video Movie Club, Inc.,*
   2013 U.S. Dist. LEXIS 54512 (N.D.. Ill. Apr. 15, 2013) ........................................................20

*Smith v. Tradesmen Int'l, Inc.,*
   289 F.Supp.2d 1369 (S.D. Fla. 2003) .....................................................................................27

*Stickle v. SCI W. Market Support Ctr., L.P.,*
   2009 U.S. Dist. LEXIS 97735 (D. Ariz. Sept. 30, 2009)....................................................30, 33

*Sullivan v. Kelly Servs., Inc.,*
   2011 U.S. Dist. LEXIS 2189 (N.D. Cal. Jan. 5, 2011) ..........................................................32

*Thompson v. Speedway SuperAmerica LLC,*
   2009 U.S. Dist. LEXIS 3816 (D. Minn., Jan. 20, 2009).........................................................15

*Trinh v. JP Morgan Chase & Co.,*
   2008 U.S. Dist. LEXIS 33016 (S.D. Cal. 2008).................................................14, 15, 16, 26

*Wal-Mart Stores, Inc. v. Dukes,*
   131 S. Ct. 2541 (U.S. 2011)....................................................................................................15

*Williams v. Accredited Home Lenders, Inc.,*
   2006 U.S. Dist. LEXIS 50653 (N.D. Ga., July 25, 2006).......................................................15

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

**TABLE OF AUTHORITIES**

**(CONTINUED)**

**PAGE**

*Wood v. TriVita, Inc.*,
   2009 U.S. Dist. LEXIS 64585 (D. Ariz. Jan. 22, 2009) ........................................................18

*Yaklin v. W-H Energy Servs., Inc.*,
   2008 U.S. Dist. LEXIS 36572 (S.D. Tex. May 2, 2008) ........................................................28


**STATUTES**

29 U.S.C. § 216(b) ...........................................................................................1, 14, 15, 26

Fair Labor Standards Act ("FLSA") ..................................................................... passim


**RULES**

Fed. R. Civ. P. 23 ...........................................................................................15, 16, 19, 20


**Other Authorities**

http://helpuschina.blogspot.com/?view=classic ...........................................................11

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

TABLE OF AUTHORITIES                              v.                              Case No. 3:12-cv-05524-JST

1   CrowdFlower, Inc. ("CrowdFlower") Lukas Biewald, and Chris Van Pelt (collectively

2   "Defendants") hereby respond to Plaintiffs' Motion for Conditional Collective Action Certification

3   And Dissemination of Notice Pursuant to 29 U.S.C. § 216(b).

4   **I.    INTRODUCTION**

5   Plaintiff Christopher Otey has asked this Court to certify a nationwide collective action under

6   the Fair Labor Standards Act ("FLSA") against Defendants CrowdFlower, Inc., Lukas Biewald, and

7   Chris Van Pelt ("CrowdFlower") on behalf of all people who performed crowd-sourced work in the

8   United States during the last three years in response to any online posting by CrowdFlower and to

9   authorize notice to those individuals via internet postings and email.   (Plaintiffs' Motion for

10  Conditional Collective Action Certification and Dissemination of Notice Pursuant to 29 U.S.C. §

11  216(b) ("Certification Motion") at p. 2 [Dkt. 46]).   Plaintiffs have failed to make the necessary

12  showing to justify conditional certification and have failed to show that their proposed methods of

13  notification are the best practicable under the unique circumstances presented in this matter.

14  Despite the fact that this case has been pending for over seven months and that Spiro Moore

15  LLP (Plaintiffs' counsel) has been advertising the existence of this lawsuit and soliciting inquiries

16  via its website and elsewhere for months (*See e.g.,* Spiro Moore LLP web page attached as Exhibit

17  A), only one person, now a named Plaintiff, Mary Greth, opted into this lawsuit. While Plaintiffs

18  have made no attempt to describe the approximate size of the putative class, CrowdFlower, estimates

19  the number to be approximately 4,000,000.   (*See* Declaration of Chris Van Pelt ("Van Pelt Decl.")

20  attached as Exhibit B, ¶ 3).   Plaintiffs thus comprise less than one-thousandth of one percent of the

21  putative class, an insufficient showing of interest to justify certification.

22  Even if Plaintiffs could demonstrate sufficient interest, which they cannot, they have not

23  made a sufficient showing that they are similarly situated to the approximately 4,000,000 putative

24  class members they seek to represent with respect to any of the issues that impact the independent

25  contractor classification, the manner and type of work performed, common pay provisions or the

26  third-party websites through which both Plaintiffs accessed tasks.   In fact, Plaintiffs' Certification

27  Motion is not supported by a single affidavit or declaration – not even that of Plaintiffs.   Further,

28  Plaintiffs' claim is subject to the *de minimis* doctrine defense – a defense which may not be

LITTLER MENDELSON,
P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

DEF'S OPPOS. TO PLAINTIFF'S MTN. FOR
COND'L COLLECTIVE ACTION CERT.

1.

Case No. 3:12-cv-05524-JST

1  applicable to a sizeable number of putative class members depending on each individual's particular

2  circumstances.  Consequently, the Court should deny Plaintiffs' Certification Motion.

3  **II.    FACTUAL BACKGROUND**

4    **A.    CrowdFlower's General Business Model.**

5        **1.    Overview**

6        CrowdFlower's business model can best be described as the creation and maintenance of a

7  platform for the presentation of small human intelligence tasks to a large population of online

8  contributors who voluntarily choose to perform these tasks for the benefit of CrowdFlower's

9  customers.  For a pre-agreed price, CrowdFlower's customers provide projects to CrowdFlower in

10  the form of data sets which must be mined or appended by human intelligence to extract, categorize

11  or identify the information sought by the customer (e.g., tagging photos, categorizing a product,

12  identifying inappropriate content, taking a survey, conducting a web search, confirming a business

13  location, etc.).  CrowdFlower typically breaks down each project into discrete tasks which are then

14  presented as units (*i.e.*, small groupings of tasks) on internet properties managed by various third

15  parties ("Channels") who wish to make these tasks available to their members.  CrowdFlower

16  provides an interface that allows the Channels to integrate with its platform and thereby to present

17  the tasks to their community members. Thus, a task is any discrete work that is made available to be

18  performed on one or more Channels through an integrated platform (the "Platform").  To complete a

19  task and to be compensated in some way by their chosen Channel, Contributors must first join a

20  Channel community, find and select a task that they wish to complete and then render "judgments"

21  in response to a series of questions (tasks) which are presented in units of multiple tasks.

22  Contributors must complete a unit before they are entitled to any compensation.  During the statutory

23  period covered by alleged wage and hour violations in this case, roughly 4,000,000 Contributors

24  have completed at least one task on the Platform.  (Van Pelt Declaration ¶ 5).

25        **2.    Contributor Channels**

26        As described above, CrowdFlower enters into agreements with Contributor Channels

27  ("Channels") which create and maintain their own web-based platforms that are integrated with the

28  CrowdFlower Platform.   Channels make the tasks available to people ("Contributors") who

LITTLER MENDELSON,
P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

DEF'S OPPOS. TO PLAINTIFF'S MTN. FOR
COND'L COLLECTIVE ACTION CERT.          2.          Case No. 3:12-cv-05524-JST

voluntarily log onto the Channel and then voluntarily identify, select and perform the tasks which are offered, on a non-exclusive basis, through the Platform.  (Van Pelt Declaration ¶ 6).  CrowdFlower currently has these agreements with 226 Channels.[1]  (Supplemental Declaration of Chris Van Pelt ("Van Pelt Decl. II") attached as Exhibit C, ¶ 3). CrowdFlower pays Channels upon presentment of an invoice based upon the tasks completed by members of each Channel's community and the applicable rate offered by CrowdFlower to the Channel for each task.  In the vast majority of cases, CrowdFlower does not know the actual identities of the Contributors who complete the tasks.  Indeed, Contributors are only known to CrowdFlower by an ID number provided by the Channel and one or more IP addresses captured at the time a device used by the Contributor accesses each task.  Each Channel assumes all responsibility for identifying the amount, type (virtual or monetary) and level of compensation to be offered to its community members and ultimately for compensating its Contributors. (Van Pelt Decl. II ¶ 6, Ex. 1, ¶ 3b; AMT Agreement, attached as Exhibit D, ¶ 4 attached as Exhibit D).  CrowdFlower has no control over the compensation rates paid to Contributors by Channels, with the sole exception of Amazon Mechanical Turk ("AMT").  Many Channels choose to compensate their Contributors only in "virtual currency" which can be redeemed for goods, real (*e.g.*, an appliance) or virtual (game credits or the like).  (Van Pelt Decl. ¶ 6).  Of the 226 current Channels, CrowdFlower understands that 166 channels (73.5%) compensate Contributors with some kind of virtual currency.  (Van Pelt Decl. II ¶ 6).

### 3.    Amazon Mechanical Turk

CrowdFlower has a different kind of relationship with Contributors who complete its customers' tasks via AMT website. Unlike CrowdFlower, AMT does not manage crowdsourcing solutions to business needs, but is essentially an online marketplace or venue for work which requires the application of human intelligence to discrete tasks. AMT's terminology therefore differs slightly from CrowdFlower. On AMT, "Customers" (CrowdFlower's term) are referred to as "Requesters" and "Contributors" (CrowdFlower's term) are referred to as "Providers." CrowdFlower posts some, but not all, of its customers' tasks on AMT and therefore is a Requester.

---

[1] CrowdFlower does not actively use every Channel with which it has an agreement.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

DEF'S OPPOS. TO PLAINTIFF'S MTN. FOR
COND'L COLLECTIVE ACTION CERT.          3.          Case No. 3:12-cv-05524-JST

In this regard, CrowdFlower pays AMT a fee for the use of its website and prefunds an account which is utilized by AMT to compensate Providers who perform tasks posted by CrowdFlower on AMT. (Van Pelt Decl. ¶ 10). In the vast majority of instances, CrowdFlower does not know the identity of the Providers. Indeed, AMT processes all payments to Providers from the account which is funded by CrowdFlower, but which is controlled in all other respects by AMT. For 2010 and 2011, for those few Providers that earned $600 or more from AMT for performing tasks offered through the CrowdFlower Platform, AMT provided CrowdFlower with contact and earnings information for that Provider so that CrowdFlower could issue an IRS Form 1099. For the year of 2012, AMT did not provide such information to CrowdFlower but instead issued any required Form 1099 itself directly to the related providers. For the years 2010 and 2011, CrowdFlower issued 26 and 33 Form 1099s, respectively, to AMT Providers. With the exception of these 53 individuals (six people reached the threshold in both years), Contributors, other than a small handful that contact CrowdFlower through a voluntary forum, are otherwise completely anonymous to CrowdFlower. (Van Pelt Decl. ¶ 10). Throughout the period covered by this lawsuit, CrowdFlower has made tasks available on numerous Channels other than AMT. In 2012, AMT represented only approximately 20 percent of the tasks completed by Contributors and the percentage is trending downward for 2013 with a year-to-date average of less than 10 percent. (Van Pelt Decl. II ¶ 10).

### 4. DIY

Separately from managing the execution of crowdsourcing solutions to its customers' business needs, CrowdFlower also makes its Platform available to businesses and individuals that choose to post their own tasks directly onto the CrowdFlower Platform. CrowdFlower calls this option "DIY." DIY customers design or build their own jobs without customization by or other direct assistance from CrowdFlower. CrowdFlower has no involvement in determining the task to be done, identifying the level of skill required, deciding how a Contributor might qualify to perform a task, determining how the task will be performed, determining quality control criteria or deciding the compensation offered to Channels for DIY tasks. (Van Pelt Decl. ¶ 11). The DIY Customer simply posts its tasks on the Platform which in turn makes the tasks available on the Channels. DIY

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

DEF'S OPPOS. TO PLAINTIFF'S MTN. FOR
COND'L COLLECTIVE ACTION CERT.       4.       Case No. 3:12-cv-05524-JST

1   Customers set the rate of compensation for task completion and they are responsible for any
2   compensation paid to the Channels for completed tasks.

3   **B.    CrowdFlower Does Not Know the Identities, Physical or Email Addresses of over 97% of the Contributors.**
4

5   Contrary to the assertions set forth in Section B of Plaintiffs' Supplemental Memorandum
6   (Doc No. 115), CrowdFlower does not have the ability to provide contact information for more than
7   a small fraction of persons who perform tasks from locations within the United States, (Van Pelt
8   Decl. II ¶ 11).  The ability to "target workers by location , i.e., country" promoted by CrowdFlower
9   reflects nothing more than having the platform technology to block persons with foreign IP
10  addresses which indicate the device being used by the Contributor is connected to the internet
11  through a server located in a non-qualifying location from opening particular tasks.  This ability
12  simply is not the same thing as having contact information for all individuals with such IP addresses.
13  IP addresses by themselves provide no contact information. (Van Pelt Decl. II ¶ 12.)  Furthermore,
14  CrowdFlower has never denied that contact information for a small fraction of the putative class can
15  be identified  – (1) those individuals to whom it has issued IRS Form 1099s in 2010 and 2011, and
16  (2) those who have voluntarily contacted CrowdFlower via email or participated in CrowdFlower's
17  Get Satisfaction forum.  This number is less than three percent of the putative class membership and
18  most of these relative few can only be identified with great effort.  (Van Pelt Decl. II ¶ 11).

19  **C.    CrowdFlower Lacks Any Meaningful Control Over the Time, Place, and Quantity of Work Performed by Contributors.**
20

21  CrowdFlower exercises no control over the time, place, pace, quantity and/or manner of
22  performance by Contributors.  (*See* Declaration of Kathryn Head ("Head Decl.") ¶ 5; Declaration of
23  Roz Henry ("Henry Decl.") ¶ 6; Deposition of Christopher Otey ("Pl. Dep.") pp. 56, 60-62, 71).[2]
24  Contributors pick and choose the tasks they wish to complete and are under absolutely no obligation
25  even to finish a task they have started.  *Id.*  Contributors also are under no obligation to choose a
26  CrowdFlower task versus those offered by other task requesters on any of the Channels.   Indeed,

27
28  [2] The Head Declaration is attached as Exhibit E, the Henry Declaration is attached as Exhibit F, and relevant excerpts of the Plaintiff's deposition are attached as Exhibit G.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

DEF'S OPPOS. TO PLAINTIFF'S MTN. FOR
COND'L COLLECTIVE ACTION CERT.        5.        Case No. 3:12-cv-05524-JST

both Plaintiffs here often chose to perform tasks offered by others.  (*See* Spreadsheet produced by AMT on June 24, 2013 ("Overlap Spreadsheet"), attached as Exhibit H).   Contributors often start tasks and fail to complete them without any adverse effect on their ability to continue to access work via the platform.  (*See* Head Decl. ¶ 5; Henry Decl. ¶ 6; Pl. Dep. pp. 60-62).  Plaintiff Otey alone decided which tasks he would select and perform based on his interests and the compensation offered by AMT; no one else was involved in the decision of which tasks he chose to complete.  (Pl. Dep. p. 56).  He was never instructed or forced to select or perform a particular CrowdFlower task.  (Pl. Dep. pp. 176-77).   Furthermore, CrowdFlower provides no training per se for the tasks performed other than a few sample questions to qualify the person for the task.  (Head Decl. ¶ 8).

Supervision of task performance by CrowdFlower is virtually non-existent.  (Henry Decl. ¶ 10; Head Decl. at ¶ 8).  Indeed, in most circumstances, CrowdFlower does not have any way of directly communicating with particular Contributors unless the Contributor first directly initiates communications via email or through an internet forum maintained by CrowdFlower.  (Van Pelt Decl. ¶ 7).  Plaintiffs make much of CrowdFlower's Gold Standard Data as a form of supervision and/or training, however this automated quality control technology is effectively used only to determine whether a Contributor is gaming the system and to measure how much trust CrowdFlower can place in the judgments made by any particular Contributor within a particular task.  In fact, even a Contributor who fails so many Gold Standard questions that CrowdFlower determines not to utilize their responses to other questions within the task is generally not blocked from the Platform but only from providing additional responses on the related task on a particular Channel.  As Contributors have unique ID numbers for each Channel, a Contributor could be blocked from a particular task on one Channel but continue to perform the task on another Channel. (Van Pelt Decl. II ¶ 19).

Plaintiff Otey completed all tasks through AMT in his home on his lap top computer.  (Pl. Dep. pp. 118-19).  He could have performed such tasks (including those for CrowdFlower), virtually anywhere that had an accessible Internet connection.  (Pl. Dep. p. 136; Plaintiff Christopher Otey's Responses to Defendant CrowdFlower, Inc.'s Request for Admission (Set One) ¶ 24, attached as Exhibit I).   Plaintiff Otey also decided when to do any given task.  (Pl. Dep. p. 154).  Subject only to the availability of tasks, Plaintiff Otey could complete a task at any time and on any

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

DEF'S OPPOS. TO PLAINTIFF'S MTN. FOR
COND'L COLLECTIVE ACTION CERT.

6.

Case No. 3:12-cv-05524-JST

day of the week (including holidays and weekends).  (Pl. Dep. pp. 154-55).  Plaintiff Otey was never given a schedule of any kind for performing work for CrowdFlower.  He also did not have his own set work schedule for performing tasks.  (Pl. Dep. pp. 194-195).  The times that he performed tasks for CrowdFlower varied based on his "sleep schedule," "so it's been different over these last several years, wake up at 8 a.m. every day for a month or at noon or 8 p.m. or something."  (Pl. Dep. p. 194).  He sometimes worked at night and on weekends, but always at a time of his choosing.  (Pl. Dep. p. 194).

### D.     CrowdFlower Cannot Reliably Determine Time Spent Performing A Task.

Although CrowdFlower can determine when a task has been opened and the time at which is submitted, if it is submitted at all (*i.e.*, how long a Contributor had a task open on the Contributor's computer), CrowdFlower has no way of tracking the amount of time actually spent by a Contributor performing any given task.  Because there is no "time out" feature on the system, Contributors may leave the task open for hours or even days before they make any judgment or complete a unit.  (Van Pelt Decl. ¶ 9).  Contributors may also open and accept a task and subsequently choose not to complete it.  This means that CrowdFlower has no record of the actual or even approximate time spent by any Contributor in performing a task.  (Van Pelt Decl. ¶¶ 7; 9).  Records produced by AMT demonstrate that Plaintiff Otey performed tasks offered by 490 task requesters.  (*See* Declaration of Andrea Effgen ("Effgen Decl.") dated February 19, 2013 attached as Exhibit J ¶¶ 3-4; Ex. A; Pl. Dep. pp. 21; 84)**.**  Plaintiff Otey, however, denies that he ever opened a task and then engaged in some other kind of activity before completing the task (Pl. Dep. pp. 63-64; 203-204).  This practice is not consistent with that of other Contributors.   For example, Contributors Roz Henry and Kathryn Head often do other tasks such as talk and the telephone and watch television and leave tasks open while they are not actively working on those tasks.  (Henry Decl. ¶ 11; Head Decl. ¶ 9).  Similarly, Plaintiff Otey testified that he never had multiple tasks open at the same time but completed the opened CrowdFlower task before moving on to any other task.   (Pl. Dep. p. 105).  CrowdFlower Contributors Head and Henry have both have testified that they open multiple tasks at the same time and perform work on particular tasks while the others are open.   (Head Decl. ¶ 9; Head Decl. ¶ 11).  Records recently produced by AMT demonstrate that, contrary to Plaintiff's sworn testimony, he

LITTLER MENDELSON,
P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

DEF'S OPPOS. TO PLAINTIFF'S MTN. FOR
COND'L COLLECTIVE ACTION CERT.                    7.                    Case No. 3:12-cv-05524-JST

1   frequently had multiple tasks opened at the same time from CrowdFlower and from different

2   Requesters. (*See* Overlap Spreadsheet (Ex. H) at lines 5366 & 5367, 5547 & 5548, 5549 & 5550,

3   5551 & 5552, 5554 & 5555, 5555 & 5556 7226 & 7227 showing that Plaintiff Otey had a task from

4   CrowdFlower and another AMT Requester opened at the same time). Indeed, Plaintiff Mary Greth

5   has stated in an email that she has "often had multiple tasks open." (*See* Email from Mary Greth

6   dated February 25, 2011 attached as Exhibit K). AMT records establish that Greth performed tasks

7   for 1012 task requesters. (*See* Declaration of Andrea Effgen dated May 22, 2013 attached as Exhibit

8   L, ¶¶ 3-4; Ex. A.). The Overlap Spreadsheet also shows that Plaintiff Greth had multiple tasks open

9   from different Requesters at the same time making it impossible to determine exactly the amount of

10  time attributable to CrowdFlower. (*See* Overlap Spreadsheet, lines 5215 & 5216, 7134 & 7135,

11  7408 & 7409, 9365-9366). Thus, determining the time that could be considered "working time"

12  attributable to CrowdFlower for any putative class member would necessarily require individualized

13  analysis of the contributor practices and overlap with other task requesters.

14      **E.      CrowdFlower Has No Control Over How Contributors Are Compensated.**

15      CrowdFlower currently has agreements with 226 Channels. Of the 226 current Channels,

16  166 channels (73.5%) compensate Contributors with some kind of virtual currency. (Van Pelt Decl.

17  II ¶ 3). The decision to compensate Contributors with virtual currency and the kind of virtual

18  currency utilized is made solely by the Channels. (Van Pelt Decl. II ¶ 6). Much of the virtual

19  currency is "closed loop" which means that it can only be utilized to purchase "virtual goods" in

20  online games or in other online virtual worlds. Determining the value of virtual currency at the time

21  acquired in terms of dollars and cents is extremely problematic because value is typically linked to

22  supply and demand and is not usually correlated to a real world currency. (Van Pelt Decl. II ¶ 6).

23  CrowdFlower exercises no control over whether Channels compensate Contributors with virtual

24  currency (MicroBitcoins, ClamShells, EZ Points, Tokens, Rewards Credits, Swag Bucks, YoLo

25  Points, etc.). as opposed to real currency. Further, CrowdFlower has no involvement whatsoever in

26  determining the type of virtual currency utilized or the valuation of that virtual currency. (Van Pelt

27  Decl. II ¶ 7). In addition, for non-DIY tasks, CrowdFlower determines the rate that it will pay the

28  Channels for completed tasks. This rate varies depending on the type of task and skill level required

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

DEF'S OPPOS. TO PLAINTIFF'S MTN. FOR
COND'L COLLECTIVE ACTION CERT.          8.          Case No. 3:12-cv-05524-JST

from as little as one penny to as high as $5.00. The individual Channel then decides not only on the type of currency, but also, particularly in the case of monetary currency, the level to be offered. (Van Pelt Decl. II ¶ 8).

In fact, Channels sometimes view themselves and actually operate as competitors of each other with respect to their relationships with CrowdFlower. This competitive environment partly drives the different compensation offered for completion of the same task by different Channels. During August 2012, for example, ClixSense.com (a Channel Provider) expressed to CrowdFlower its great displeasure with Neobux.com (another Channel Provider) for undercutting its business by first copying its commission and bonus structure and subsequently paying higher commissions and bonuses to Contributors who completed CrowdFlower tasks. In response CrowdFlower explained that task pricing by Channels was beyond its control:

> In the end, however, as you suggested in your mails, we concluded that it would not be either appropriate, nor even possible under our contractual agreements (or under relevant laws) for us to attempt to influence or control the margins or payouts that any channel chooses to run with as their members contribute to the completion of our tasks.
>
> It is a similar situation where a manufacturer sells product both through small independent retailers and through large chain stores. The big chain operates at paper thin margins and tries to capture customers away from the independent stores by offering lower prices, but the manufacturer is prevented (in most cases by the laws against price fixing) from dictating the markups that retailers must apply to the wholesale price. The kindest thing the manufacturer can do to protect the smaller retailer is to not sell the product at a lower WHOLESALE price to the big guys, even when the big guys argue that they deserve a lower wholesale price du rot the size of their orders.
>
> In a sense, we already do this "kindest thing" by pricing our tasks uniformly across all channels, so we don't favor any one of you against any other. But our investigation has confirmed what we already assumed, which is that there are very substantial differences among the business models of our various channels, and hence differences in the margins each of them earns on our payments to them. Since our contracts were quite specifically written to enable this exact variance, we really are not in any position that would enable us to step in now and try to dictate either margins or pricing to any participant in our ecosystem.

(*See* email correspondence attached as Exhibit M). Contributors can and do register on multiple Channels to view and perform CrowdFlower tasks. By doing so, they are able to effectively shop their services to the highest bidder and/or choose the form of compensation which they choose to accept. CrowdFlower provides no incentives to Contributors, financial or otherwise, to select a

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

DEF'S OPPOS. TO PLAINTIFF'S MTN. FOR
COND'L COLLECTIVE ACTION CERT.          9.          Case No. 3:12-cv-05524-JST

1   particular Channel.  Contributors make this choice completely on their own.  (Van Pelt Decl. II ¶

2   13).   During  the  relevant  time  period,  CrowdFlower  has  obtained  almost  a  billion  judgments

3   involving myriad task types (each requiring a particular skill set) from approximately 4,000,000

4   Contributors through its various Channels.  (Van Pelt Decl. II ¶ 14).  In each case, the Contributor

5   alone selected the task to be performed as well as the Channel.  Indeed, Plaintiff Otey testified that

6   he was not required to do any particular task and that he identified and chose the tasks he wanted to

7   open and complete.  (Pl. Dep. pp. 176-77).  In this way, Contributors are able to determine their own

8   profit and loss and cannot be seen as similarly situated in terms of pay.

9       F.    **Plaintiffs' Performance of Tasks Posted by CrowdFlower Demonstrates that**
            **They Are Not Similarly Situated to the Putative Class.**
10

11          1.    **Plaintiff Otey is not Similarly Situated to the Putative Class in terms of**
                **Classification as an Independent Contractor.**

12          Plaintiff Otey freely admits that he was not recruited, did not apply for and never interviewed

13   or received an offer of employment from CrowdFlower.  (Pl. Dep. pp. 88-89).  Instead, he decided

14   that he wanted the flexibility of working remotely and chose to try and meet his monetary needs by

15   working online.  (Pl. Dep. pp. 32-33).  To this end, he signed up as a Provider on AMTs website and

16   began performing tasks.  As of October 13, 2012, he had performed tasks for 490 different task

17   requesters.  (*See* Feb. 19, 2013 Effgen Decl. ¶ 3).  Otey testified that where, when, which tasks, how

18   many and the type of tasks that he chose to complete were all decisions that he made without any

19   input or consultation with CrowdFlower.  (Pl. Dep. p. 56).  Indeed, CrowdFlower had no ability to

20   determine when, where, the type or number of tasks that he chose to perform and whether or not he

21   performed any tasks whatsoever.  He also testified that he could accept a task and choose not to

22   complete it with no negative repercussions.  (Pl. Dep. p. 71).  Subject only to the availability of

23   tasks, Plaintiff Otey based his decisions on which tasks to perform on his interest in a particular type

24   of task and on the payment offered by AMT.  (Pl. Dep. pp. 56-59).  The only "control" alleged by

25   Plaintiff Otey over his task performance by CrowdFlower was that while completing a task he had to

26   utilize the available online format for the task's completion.  (Pl. Dep. pp.191-92).  CrowdFlower

27   had no authority to recruit, hire, train, discipline or discharge Plaintiff Otey and had no control over

28   his decision regarding whether or not to accept or complete a task that he identified.

LITTLER MENDELSON,
P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

DEF'S OPPOS. TO PLAINTIFF'S MTN. FOR      10.                    Case No. 3:12-cv-05524-JST
COND'L COLLECTIVE ACTION CERT.

At the same time he was performing tasks on AMT, Plaintiff Otey engaged in myriad other attempts to supplement his income such as seeking funding for a variety of pursuits and seeking financial assistance from China. (Pl. Dep. pp. 42-43; 122-24; http://helpuschina.blogspot.com/?view=classic (internet posting of Plaintiff Otey)). Plaintiff Otey also testified unequivocally that when he chose to discontinue performing CrowdFlower tasks he was not obligated to do anything. He simply just quit accepting the tasks made available on AMT. (Pl. Dep. pp. 45-46). He further admits that should he choose to resume performing CrowdFlower tasks in the future, he could do so at a time and place of his choosing. (Pl. Dep. pp. 45-47).

## 2. Plaintiff Otey's Time Frame For and Quantity of Work

From September 6, 2010 to October 14, 2012, Plaintiff Otey opened or "visited" 102 tasks on the CrowdFlower Platform all of which he accessed as an AMT Provider. However, he contributed "judgments" for only 45 tasks. In other words, Plaintiff Otey did not perform judgments in 57 of the 102 tasks he viewed. In four of the 45 tasks where he contributed judgments, he chose not to finish the unit that he began. (Van Pelt Decl. ¶ 13).

Plaintiff Otey completed and was compensated for a total of 41 tasks over roughly a two-year period. Of these 41 tasks, 24 were tasks originated by DIY Customers. Only 17 of the tasks he performed were CrowdFlower originated tasks. (Van Pelt Decl. ¶ 14). During that roughly two-year period, Plaintiff Otey went for weeks, sometimes months, and even once an entire year, without visiting and/or performing any tasks as shown below:

October 10, 2010 through November 29, 2011: Plaintiff Otey did not visit or perform any tasks during this period, which exceeds a year.

January 10, 2012 through May 9, 2012: Plaintiff Otey visited, but did not attempt to complete, any tasks during this four-month period.

May 9, 2012 through July 25, 2012: Plaintiff Otey did not visit or perform any tasks during this roughly two-month period.

(Van Pelt Decl. ¶ 14; *see also* Pl. Dep. pp. 84-85). Notably, Plaintiff Otey testified that when he chose to perform and to discontinue task performance was entirely up to him and that he did not have to do anything other than accept or not accept tasks made available. (Pl. Dep. pp. 45-46).

LITTLER MENDELSON,
P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

DEF'S OPPOS. TO PLAINTIFF'S MTN. FOR
COND'L COLLECTIVE ACTION CERT.          11.          Case No. 3:12-cv-05524-JST

While CrowdFlower cannot determine how long any particular task took to complete in terms of actual time spent working, CrowdFlower can calculate how long a period of time elapsed between the point in time a task was opened and the time it was submitted. These numbers do not accurately reflect the amount of time spent performing a task because there is no way to determine whether the task was opened and left unattended on the web browser for a period of minutes, hours, or even days. During the roughly 109 weeks between September 6, 2010 (the first date on which Plaintiff Otey completed a task) and October 14, 2012 (the last day on which he completed a task), Plaintiff Otey had tasks originated by CrowdFlower open which she completed for a total of only approximately 16.5 hours. (Van Pelt Decl. ¶ 15).  Even if one assumes, arguendo, that he was actively engaged in performing tasks during all of those 16.5 hours (which is extremely unlikely), Plaintiff Otey's average work time over 109 weeks can be broken down as follows:

Daily Average: 1.3 minutes (approximate)

Weekly Average: 9.1 minutes (approximate)

Monthly Average: 39.3 minutes (approximate)

(Van Pelt Decl. ¶ 15).

As stated above, Plaintiff Otey actually completed and was compensated for a total of 41 tasks over roughly a two-year period.   These 41 tasks were scattered over 20 days between September 2010 and October 2012.   (Van Pelt Decl. II ¶ 15).  On eight of those days, Plaintiff Otey spent less than 15 minutes performing tasks and on six of those eight days he spent less than 10 minutes performing tasks.  (Van Pelt Decl. II ¶ 15).  This time is *de minimis* for FLSA purposes.

### 3. Plaintiff Greth's Time Frame For and Quantity of Work.

From March 17, 2010, to March 25, 2012, Plaintiff Greth opened or "visited" 1177 tasks on the CrowdFlower Platform all of which she accessed as an AMT Provider. However, she contributed "judgments" only for 754 tasks. In other words, Plaintiff Greth did not perform judgments in 422 of the 1777 tasks she viewed.  In 62 of the 754 tasks where she contributed judgments, she chose not to finish the unit that she began.   (Van Pelt Decl. II ¶ 16).   Plaintiff Greth completed and was compensated for a total of 692 tasks over roughly two-year period. Of these 692 tasks, 501 were tasks originated by DIY Customers and unrelated to CrowdFlower.  (Van Pelt Decl. II ¶ 16).

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

DEF'S OPPOS. TO PLAINTIFF'S MTN. FOR
COND'L COLLECTIVE ACTION CERT.

12.

Case No. 3:12-cv-05524-JST

During the roughly 104 weeks between March 27, 2010 (the first date on which Plaintiff Greth completed a task) and March 27, 2012 (the last day on which she completed a CrowdFlower task), Plaintiff Greth had tasks originated by CrowdFlower open which she completed for a total of only approximately 316 hours. (Van Pelt Decl. II ¶ 17). Even if one assumes, arguendo, that she was actively engaged in performing tasks during all of those 316 hours (which is extremely unlikely), Plaintiff Greth's average work time over 105 weeks can be broken down to approximately 26 minutes per day. (Van Pelt Decl. II ¶ 17). However, on 39 of the days when Plaintiff Greth completed tasks, she spent less than ten minutes performing those tasks. This time is *de minimis* for FLSA purposes.

### 4.        Plaintiffs' Work and Knowledge is Limited to AMT.

Plaintiff Otey has only performed CrowdFlower tasks and those of 490 other task requesters on AMT and has never looked at any CrowdFlower task posted on any of the other hundreds of Channels. (Pl. Dep. p. 179). Indeed, Plaintiff Otey never visited CrowdFlower's website before he first visited AMT's website. (Pl. Dep. p. 115). Further, he has never had any communication with any other Contributors who performed tasks posted by CrowdFlower on AMT or any Channel Provider. (Pl. Dep. p. 82). Plaintiff Otey has never spoken with any manager, supervisor or direct employee of CrowdFlower. (Pl. Dep. pp. 79-80; 139). Similarly, Plaintiff Greth has only performed CrowdFlower tasks through AMT and has performed tasks for in excess of 1000 task requesters other than CrowdFlower on AMT. (*See* May 22, 2013 Effgen Decl. ¶ at Ex. A).

### 5.        Plaintiffs' Compensation

Plaintiff Otey has never been paid in virtual currency.        (Pl. Dep. pp. 57-58). In fact, Plaintiff Otey has never visited any Channel website that pays for tasks in virtual currency (Pl. Dep. p. 179). As Plaintiff Greth has also only performed tasks on AMT, she has presumably also never been paid in virtual currency. Many of the Channels compensate Contributors only in virtual currency. (Van Pelt Decl. ¶ 6). Further, as Contributors solely choose which tasks to perform and which Channels to utilize the type and level of compensation (and profit and loss for contractor classification purposes) is solely within the Contributors control and varies greatly.

LITTLER MENDELSON,
P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

DEF'S OPPOS. TO PLAINTIFF'S MTN. FOR
COND'L COLLECTIVE ACTION CERT.                    13.                    Case No. 3:12-cv-05524-JST

### 6.    Plaintiffs' DIY Work

As stated above, CrowdFlower cannot determine how long any particular task took to complete in terms of actual time spent working.  However, CrowdFlower can calculate how long a period of time elapsed between the point in time a task was opened and the time it was submitted (if the Contributor chose to complete and submit the task).  (Van Pelt Decl. ¶ 15).  Plaintiff Otey had completed tasks opened for a total of 18,662 minutes.  Sixty-eight percent of those minutes were for DIY tasks. Similarly, Plaintiff Greth spent 38.9 percent of her time on DIY tasks.  (Van Pelt Decl. II ¶ 18).

## III.    ARGUMENTS AND AUTHORITIES

### A.    Authorization Of Judicial Notice Under The FLSA Is Discretionary And Should Only Be Granted In "Appropriate" Cases.

The FLSA does not expressly (or even impliedly) allow judicial intervention through "authorized notice."  The Act simply permits an individual to bring an action for unpaid wages on behalf of himself "and other employees similarly situated."  29 U.S.C. § 216(b).  Whether the Court elects to intervene in these proceedings, therefore, is a matter committed to the Court's sound discretion.  In *Hoffman-LaRoche*, the Supreme Court held that district courts "have discretion, <u>in appropriate cases</u> . . . to implement" the collective action mechanism under Section 216(b) "by facilitating notice to potential plaintiffs."  493 U.S. at 169 (emphasis added); *Horne v. United Servs. Auto. Ass'n.*, 279 F. Supp. 2d 1231, 1233 (M.D. Ala. 2003) ("The power to authorize notice must, however, be exercised with discretion and only in appropriate cases").  "[C]onditional certification at the first stage is by no means automatic."  *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 925 (D. Ariz. 2010); *see also Trinh v. JP Morgan Chase & Co.*, 2008 U.S. Dist. LEXIS 33016, *9-10 (S.D. Cal. 2008); *Clausman v. Nortel Networks, Inc.*, 2003 U.S. Dist. LEXIS 11501, *8 (S.D. Ind. 2003).  The Supreme Court explained that the collective action mechanism is appropriate only if it will result in the systemic benefits derived from a process that permits the "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity."  *Hoffman-LaRoche*, 493 U.S. at 170.  "In other words, the court must be satisfied that there is a basis to conclude that questions common to a potential group of plaintiffs would predominate a determination of the merits

LITTLER MENDELSON,
P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

1    in this case." *Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 220 (D. Conn. 2003).  Absent

2    such commonality, "it is doubtful that § 216(b) would further the interests of judicial economy, and

3    it would undoubtedly present a ready opportunity for abuse." *Horne*, 279 F. Supp. 2d at 1234; *see*

4    *also Trinh*, 2008 U.S. Dist. LEXIS 33016 at *8 (to determine whether plaintiffs are "similarly

5    situated" for FLSA conditional certification purposes, the court should consider "the extent to which

6    members of the proposed action will rely on common evidence").[3]

7        Recent Supreme Court precedent decided under Federal Rule of Civil Procedure 23 is also

8    instructive for evaluating motions for conditional certification under Section 216(b).[4]  In *Wal-Mart*

9    *Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (U.S. 2011), the Supreme Court recently discussed the

10   commonality requirement for class certification and held that "[c]ommonality requires the plaintiff

11   to demonstrate that the class members 'have suffered the same injury,' . . . [t]his does not mean

12   merely that they have all suffered a violation of the same provision of law."  What matters to class

13   certification is not the raising of common questions, even in droves, but rather the capacity of a

14   class-wide proceeding to generate common answers apt to drive the resolution of the litigation.  *Id.*

15       The Supreme Court's decision in *Comcast v. Behrend*, 133 S. Ct. 1426 (U.S. 2013) also

16   provides insight regarding whether plaintiffs seeking conditional certification are "similarly

17   situated." *Comcast* held that Rule 23's predominance requirement cannot be satisfied when damages

18   are not susceptible to measurement on a classwide basis, indicating that in such situations

19   "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the

20

---

21   [3] Certainly, in cases involving literally thousands of potential litigants, courts must carefully
     scrutinize a plaintiff's claim that notice would actually serve the interests that support judicial
22   intervention. *See Thompson v. Speedway SuperAmerica LLC*, 2009 U.S. Dist. LEXIS 3816, *10 (D.
     Minn., Jan. 20, 2009) (evidence that "tiny fraction of the 8,000 members of the putative class may
23   not have received some of the compensation that they were due" did not justify conditional
     certification); *Eng-Hatcher v. Sprint Nextel Corp.*, 2009 U.S. Dist. LEXIS 127262, *16-17
24   (S.D.N.Y., Nov. 13, 2009) (the size and scope of requested class certification impacts the factual
     showing that a plaintiff must make); *Williams v. Accredited Home Lenders, Inc.*, 2006 U.S. Dist.
25   LEXIS 50653 (N.D. Ga., July 25, 2006) (applying similarity requirement with "some rigor" in case
     involving "as many as 1,000 potential plaintiffs."
26   [4] In *Espenscheid v. DirectStat USA*, 705 F.3d 770, 771 (7th Cir. 2013), the Seventh Circuit indicates
     that aptly observed that "despite the difference between a collective action and a class action and the
27   absence from the collective-action section of the Fair Labor Standards Act of the kind of detailed
     procedural provisions found in Rule 23 . . . there isn't a good reason to have different standards for
28   the certification of the two different types of action, and the case law has largely merged the
     standards, though with some terminological differences."

LITTLER MENDELSON,
P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

DEF'S OPPOS. TO PLAINTIFF'S MTN. FOR
COND'L COLLECTIVE ACTION CERT.          15.          Case No. 3:12-cv-05524-JST

class." *See id.* at 1433.    Notably, shortly after deciding *Comcast*, the Supreme Court granted

certiorari and vacated the Seventh Circuit Court of Appeals decision in *Ross v. RBS Citizens, N.A.*,

667 F.3d 900 (7th Cir. 2012), remanding the case for further consideration in light of the *Comcast*

decision.  133 S. Ct. 1722, 1722 (U.S. 2013).  At issue in *Ross* was whether two certified classes –

one involving nonexempt employees who claimed an unofficial policy denied them overtime pay,

the other involving exempt assistant branch managers challenging their classification under state

wage and hour law – met Rule 23's commonality requirement.  *Ross*, 667 F.3d at 908-09.  The

Seventh Circuit concluded that they did.  *Id.* The Supreme Court's vacation suggests certification of

both classes was improper because individual damage calculations relating to both nonexempt and

exempt employee classes overpower Rule 23's predominance requirements.

Plaintiffs have not provided this Court with a plausible theory, let alone evidence, to find that

they are similarly situated to other employees with respect to an alleged illegal practice.  Instead,

Plaintiffs have relied upon general descriptions of CrowdFlower's business model pulled from the

internet. Given the Supreme Court's requirements and cautionary guidelines, Plaintiffs fall far from

establishing that conditional certification is warranted in this case.

### B.    Plaintiffs Are Not Similarly Situated To The Putative Class.

Plaintiffs ultimately bear the burden of presenting evidence that they are similarly situated to

the potentially four million other Contributors in the putative class.  *Silverman v. SmithKline*

*Beecham Corp.*, 2007 U.S. Dist. LEXIS 80030, *5 (C.D. Cal. 2007) (citing *Dybach v. Florida Dep't*

*of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991)); *Trinh v. JP Morgan Chase & Co.*, 2008 U.S. Dist.

LEXIS 33016, *8-10 (S.D. Cal. 2008).  When determining whether plaintiffs have met their burden

of proving the putative class members are similarly situated, courts consider the "degree of similarity

among plaintiffs' factual and employment settings."  *Beauperthuy v. 24 Hour Fitness*, 772 F. Supp.

2d 1111, 1122 (N.D. Cal. 2011).  The proof to establish similar status requires, at a minimum, a

"modest factual showing that Plaintiffs and the broad class they wish to represent are similarly

situated with respect to job requirements and pay provisions."  *Trinh*, 2008 U.S. Dist. LEXIS 33016,

*10.  Where the parties have conducted substantial discovery prior to completion of briefing on

conditional certification, Plaintiffs' factual showing in support of conditional certification should be

LITTLER MENDELSON,
P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

1   examined under a more rigorous standard.  *Anderson v. Perdue Farms, Inc.*, 2007 U.S. Dist. LEXIS

2   94166 (M.D. Ala. Dec. 20 2007).  *See also Harris v. FFE Transp. Servs., Inc.*, 2006 U.S. Dist.

3   LEXIS 51437 at *6 (N.D. Tex. May 15, 2006) (specifically stating, "where the parties have had the

4   opportunity to conduct discovery on the issue of certification, the similarly situated inquiry is more

5   stringent.") This case has been pending for over eight months.   Plaintiff Otey's deposition has been

6   taken and he has propounded and received responses to literally hundreds of written discovery

7   requests, 363 to be exact.  The Court then should apply a more rigorous analysis to the "similarly

8   situated" showing made by Plaintiffs in support of their Certification Motion.

9         Plaintiffs cannot make this showing for at least six independently sufficient reasons:  (1)

10   Plaintiffs are not similarly situated to the putative class with respect to "job requirements;" (2)

11   Plaintiffs are not similarly situated to each other, let alone the putative class, with respect to the

12   manner in which work was performed; (3) Plaintiffs are not similarly situated to the putative class

13   with respect to pay provisions; (4) Plaintiffs' wage claims, and the wage claims of the putative class,

14   require individualized forms of proof, which inherently conflicts with the collective action

15   mechanism; (5) Plaintiffs and a number of other putative class members are subject to the *de minimis*

16   defense, which requires an individualized inquiry; and (6) Plaintiffs are not similarly situated to the

17   putative class because they only completed tasks for one of over 200 Channels.

18
      **1.      Plaintiffs Are Not Similarly Situated to the Putative Class in Terms of
              "Job Requirements."**
19

20         Contributors individually choose where, when, the type of equipment, and the tasks they

21   wish to perform from multiple options based upon criteria which are unique to every individual.  As

22   discussed in section II.C, *supra,* CrowdFlower has no control over whether a Contributor performs a

23   task, completes a task following acceptance, where, when or how a task is completed, if at all.

24   CrowdFlower also has no control over Contributors performing a single task and never returning to a

25   CrowdFlower task again (which is true of a number of putative class members).  During the relevant

26   time period, CrowdFlower has obtained roughly 900,000,000 judgments involving myriad task types

27   (each requiring a particular skill set) from approximately 4,000,000 Contributors.  (Van Pelt Decl. II

28   ¶ 14).  Those tasks include, among a great many other things, tagging photos, categorizing a product,

LITTLER MENDELSON,
P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

DEF'S OPPOS. TO PLAINTIFF'S MTN. FOR
COND'L COLLECTIVE ACTION CERT.            17.            Case No. 3:12-cv-05524-JST

1  identifying inappropriate content, taking a survey, conducting a web search, confirming a business

2  location. The level of detail and skill involved varies with the task.  In each case, the Contributor

3  alone selected the task to be performed as well as the Channel to be utilized.  Furthermore, tasks

4  vary in complexity and difficulty and thus require different specialized skills and amounts of time to

5  complete.  This simply is not the typical independent contractor classification case where all of the

6  putative employees performed essentially the same duties for the putative employer (e.g., a cable

7  technician case).  The potential differences among individual putative class members in terms of the

8  level of autonomy and the actual work performed boggles the mind. If this case were to proceed to

9  trial, Plaintiffs and any opt-in plaintiffs would be required to testify individually regarding their

10  schedules, the kinds of tasks they chose to perform and how they went about performing those tasks

11  (*e.g.*, there are numerous ways to confirm whether a business is still located at a particular address).

12  The number of tasks selected, the periods of inactivity and the number of other task requesters for

13  whom work was done would also have to be individually analyzed for both control and permanence,

14  along with time calculations.  Under circumstances such as these, it is virtually impossible for the

15  various Contributors to be seen as similarly situated in terms of the economic realities test that is

16  applicable to the independent contractor determination.  *McElmurry v. US Bank Nat'l Ass'n*, 2006

17  U.S. Dist. LEXIS 89875, *16 (D. Or Dec. 8, 2006) (judicial efficiency of collective action not served

18  where individualized inquiry into each employee's job duties is necessary).  If the Court finds "[t]hat

19  the proposed class members are not similarly situated . . . then the interests of judicial economy

20  would not be advanced by allowing the suit to proceed as a collective action." *Wood v. TriVita, Inc.*,

21  2009 U.S. Dist. LEXIS 64585, *15 (D. Ariz. Jan. 22, 2009.)

22            **2.    Plaintiffs Are Not Similarly Situated To The Putative Class Members With Respect To The Manner In Which Work was Performed.**

23

24            Plaintiffs also fail to prove they are similarly situated to putative class members with respect

25  to the manner in which work was performed.  While Plaintiff Otey denies that he ever opened a task

26  and then engaged in some other kind of activity before completing the task, Plaintiff Greth and other

27  Contributors testified that they often engage in other activities, such as talking on the telephone and

28  watching television, after they opened one of CrowdFlower's tasks. Because CrowdFlower only has

LITTLER MENDELSON,
P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

DEF'S OPPOS. TO PLAINTIFF'S MTN. FOR
COND'L COLLECTIVE ACTION CERT.          18.          Case No. 3:12-cv-05524-JST

a record of the time each task was open, CrowdFlower has no record or other means of measuring the time each Contributor actually spent performing each task. Reviewing records such as the Overlap Spreadsheet (Ex. H) for each putative class member requires individualized analysis that is inconsistent with collective action certification. *See Scott v. Raudin McCormick, Inc.*, 2010 U.S. Dist. LEXIS 130061, *14-15 (D. Kan. Dec. 8, 2010) (Individualized fact intensive analysis weighs against maintaining a collective action).

Contributors are essentially compensated on something akin to a piece rate basis, although the per task rate varied greatly. In such cases, the Court must necessarily make individualized determinations as to the wages paid and those owed. The level of individualized proof does not fit within the collective action mechanism. The *Espenschield* court upheld decertification of a collective class, finding that the putative class members, who were paid on piece rate basis, were not similarly situated because the employer had no records of the amount of time actually spent performing their assigned tasks and each employee's hours spent on a particular tasks likely varied greatly. 705 F3d at 773-74. The *Espenschield* court further upheld the trial court's holding that 42 alleged "representative" class members could not testify on behalf of a putative class of 2,341 employees when each employee's hours must necessarily be calculated individually. *Id.* at 774. The same is true here on a much larger scale.

The facts of this case are also analogous to those in *Forrand v. Federal Express Corp.*, which denied hourly workers' motion for class certification under Fed. R. Civ. P. 23 of an off-the-clock claim. *See* 2013 U.S. Dist. LEXIS 62252 (C.D. Cal. April 25, 2013). In *Forrand*, the plaintiffs specifically claimed that they were paid from their scheduled start time to their scheduled shift end, rather than from the time they actually clocked-in which was often before their scheduled start time. *See id.* at *1. The *Forrand* court denied the plaintiffs' motion based on varying testimony from plaintiffs regarding their activities after they clocked-in early. *See id.* at *11-12. For example, employees at one facility indicated that they were free to use the time before their shift started for the own purposes as long as they did not leave the employer's premises, while others testified that they would clock-in and then workout at a nearby gym. *Id.* The *Forrand* court held that class certification was not appropriate when it would be forced to make an individualized inquiry into

LITTLER MENDELSON,
P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

1    whether each plaintiff was performing compensable work between the time they clocked-in and the

2    time their scheduled shift start time. *Id.; see also Ginsburg v. Comcast Cable Commc'ns Mgmt.*

3    *LLC*, 2013 U.S. Dist. LEXIS 55149, *20-21 (W.D. Wash. April 17, 2013) (class certification denied

4    in off-the-clock case when an individualized inquiry would be required to determine whether each

5    call center employee performed compensable work before logging into their computers); *Smith v.*

6    *Family Video Movie Club, Inc.*, 2013 U.S. Dist. LEXIS 54512, *17-19 (N.D.. Ill. Apr. 15, 2013)

7    (denying certification when off-the-clock requirements varied from store to store).

8         Conditional certification should be denied here when Plaintiff Otey testified he was working

9    the entire time he had a CrowdFlower task open and other putative class members have testified that

10   they were not working the entire time they had CrowdFlower tasks open or were working on more

11   than one task at a time. Even Plaintiff Greth, admits that she works with multiple tasks open at the

12   same time. (*See* Ex. K.) This varying testimony demonstrates that the Court would be forced to

13   make an individualized inquiry regarding whether each plaintiff was performing compensable work

14   during the time they had CrowdFlower tasks open. Such inquiries would be a monumental task for a

15   class of potentially millions of opt-in plaintiffs – particularly when as of now the putative class is not

16   even identifiable -- and is simply infeasible. *See Forrand*, 2013 U.S. Dist. LEXIS 62252 at *17-19;

17   *Ginsburg*, 2013 U.S. Dist. LEXIS 55149 at *20-21; *Smith*, 2013 U.S. Dist. LEXIS 54512 at *17-19

18         **3.    Plaintiffs Are Not Similarly Situated To The Putative Class With Respect
          To Pay Provisions.**

19

20         Plaintiffs have not presented proof that they are similarly situated to the other Contributors

21   with respect to pay provisions. Each of CrowdFlower's 226 Channels assumes all responsibility for

22   compensating Contributors and, with only one exception, exercises complete control over

23   compensation rates paid to Contributors, which varies based on the particular task at issue from one

24   penny to five dollars. (Van Pelt Decl. II ¶ 8). 66 of CrowdFlower's current Channels compensate

25   Contributors with some kind of "virtual currency." CrowdFlower, as discussed above, does not set

26   the compensation levels offered by Channels for its tasks. Instead, the compensation varies by the

27   type of task, skill level required and Channel utilized. (Van Pelt Decl. II ¶ 9). The compensation

28   level is determined by the Channel based upon the margins which work for their own business

LITTLER MENDELSON,
P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

DEF'S OPPOS. TO PLAINTIFF'S MTN. FOR
COND'L COLLECTIVE ACTION CERT.                    20.                    Case No. 3:12-cv-05524-JST

1    models.  While CrowdFlower offers to pay its Channels other than AMT at an even rate across the

2    board for any given task,[5] the Channels in turn offer those tasks to the crowd at rates which they set

3    themselves whether in real or virtual currency.  Plaintiffs only provided services through AMT and

4    each chose the type of task and applicable compensation level provided.  Other Contributors chose

5    differing tasks, differing skill levels and differing Channels.  Thus Plaintiffs not similarly situated to

6    the millions of others Contributors who have performed different tasks via different Channels.

7    This Court has denied collective class certification in a case involving far fewer pay

8    provision variances.  In *Beuaperthuy v. 24 Hour Fitness*, 772 F. Supp. 2d 1111 (N.D. Cal. 2011)

9    plaintiffs sought certification of a class of 772 personal fitness trainers claiming wage violations.  *Id.*

10   at 1121.  This Court denied collective certification when the plaintiffs were compensated under a

11   variety of different compensation plans and methods of overtime calculation over the course of the

12   class period.  *Id.* at 1125.  In granting decertification, the *Beuaperthuy* court observed that "a jury

13   would need to review the specific compensation plan that governed each employee's work period in

14   order to evaluate each class member's claims.  The need for such individualized inquiries militates in

15   favor of decertification."  *Id; see also Pfohl v. Farmers Ins. Group*, 2004 U.S. Dist. LEXIS 6447

16   (C.D. Cal. Mar. 1, 2004) (denying certification of putative class of independent contractor claim

17   adjusters when putative class members were paid in under a variety of compensation structures

18   including salary, fee rate, and hourly); *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D. Or. 2002)

19   (denying conditional certification when putative class members were compensated under several

20   different payment structures including piece rate, hourly and salary compensation plans).

21   Similarly, in *McElmurry v. U.S. Bank National Association*, the U.S. District Court for the

22   District of Oregon denied plaintiffs' motional for conditional certification of a nationwide putative

23   class of bank "Sales and Service Managers."  2004 U.S. Dist. LEXIS 15233, *1, 29-47 (D. Or.,

24   July 27, 2004).  The *McElmurry* court found that the plaintiffs were not similarly situated when

---

26   [5] Plaintiffs only support for their claim of "common pay" is that CrowdFlower has a benchmark
27   amount for what it pays for task completion.  This argument misses the mark.  While CrowdFlower
     may set the rate it will pay the various Channels for various types of completed tasks, that is not
     what or how Contributors are paid.  Each Channel decides what type (monetary, virtual, etc) and the
28   level of reward offered for task completion and this varies greatly.

LITTLER MENDELSON,
P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

putative class members in approximately twenty states used a variety of weekly time reports and rounding equations to determine their time worked, while putative class members in approximately fifteen states used an entirely different time reporting system. *Id.* at *35-42.

In *Anderson v. Cagle's, Inc.*, 488 F.3d 945 (11th Cir. 2007) a case relied on by the *Beuaperthuy* court, the Eleventh Circuit also affirmed the district court's refusal to certify a collective class of current and former employees of 3 of the defendant's 10 chicken processing plants. *Id.* at 949-50. The members of the proposed class were subject to differing pay structures for their work activities, including "line time" timekeeping (where a production line of workers was compensated for the time the line was operational), a guaranteed-hours compensation scheme, and time cards based on individual hours worked. *Id.*[6] The Eleventh Circuit affirmed the district court's conclusion that "[n]amed plaintiffs essentially employed by a single employer, based on the discovery before the Court, cannot fairly and adequately represent the variously assigned employees, the wide variety of work assignments and varied compensation structures affecting the purported class." *Id.* at 952 (citations omitted); *see also Fox v. Tyson Foods, Inc.*, 519 F.3d 1298, 1302 (11th Cir. 2008) (no error in conclusion that class was not similarly situated where payment practices varied by "plant, department, position, and shift."); *Martins v. 3PD, Inc.*, 2013 U.S. Dist. LEXIS 45753, *25-26 (D. Mass. Mar. 28, 2013) (citing *Comcast* and holding putative class members were not similarly situated when they were subject to a variety of deduction practices for which they alleged they were entitled to recoupment); *Silverman v. SmithKline Beecham Corp.*, 2007 U.S. Dist. LEXIS 80030, (C.D. Cal. 2007) (conditional certification denied where defendant pharmaceutical company consisted of eight separate business units, operating in different ways, and nine nearly identical declarations that plaintiff provided was a narrow and potentially unrepresentative sample insufficient to demonstrate that the members of the broad class proposed were similarly situated).

The wide variety of pay practices through which the Channels paid the millions of putative class members are far more varied than those at issue in any of the cited cases. Here, putative class members were compensated differently depending on the task selected and the Channel utilized

---

[6] The factual background of *Anderson v. Cagle's, Inc.* is available in Motion of Cagle Foods JV, LLC to Decertify Class, 1:00-CV-166-WLS, Dkt. 148 (M.D. Ga., Nov. 17, 2003).

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

DEF'S OPPOS. TO PLAINTIFF'S MTN. FOR
COND'L COLLECTIVE ACTION CERT.

22.

Case No. 3:12-cv-05524-JST

resulting in literally thousands or potentially hundreds of thousands of different compensation plans. The compensation (form and quantity) for performing *the same task* varies among the numerous Channels and Contributors do not all perform the same kinds of tasks.  Rather, they choose tasks based upon a variety of factors, including their own personal interests.  Those choices determine the pay practices applicable to a particular Contributor.  There is nothing even remotely approaching uniformity in pay practices connecting Plaintiffs with millions of the putative class members.   As the cases above demonstrate, collective action certification then should not issue.

Further, while Plaintiffs only completed tasks for AMT, many of the putative class members were compensated by multiple Channels under multiple different compensation plans.  (Van Pelt Decl. II ¶¶ 6-10).  In short, to evaluate each individual plaintiff's claim, this Court would be forced to determine the Channel for whom the plaintiff worked, the tasks selected by each plaintiff and the compensation plan(s) under which each Channel used to compensate that plaintiff for each such task. Such a burden is simply not manageable on a class-wide basis, particularly for a putative class of this size. *See Beuaperthuy*, 772 F. Supp. 2d at 1125; *Anderson*, 949-50.

### 4.     Plaintiffs' Wage Claims Require Individualized Proof which Inherently Conflicts with Collective Action Treatment

As described in sections 2 and 3, *supra*, to determine any damage claims in the unlikely event that Plaintiffs could establish that they are "employees" instead of independent contractors, would require highly individualized determinations regarding the time spent performing tasks and the applicable pay rate received for such time.  This level of individualized proof is not consistent with collective action treatment. *Scott*, 2010 U.S. Dist. LEXIS 130061, *14-15.

### 5.     Plaintiffs are  Subject the *De minimis* Defense

An employer may assert a defense against recovery for an FLSA violation where the claim is *de minimis.  Gilmer v Alamed-Contra Cost Transit Dist*., 2011 U.S. Dist. LEXIS 126845, *8 (N.D. Cal. Nov. 2, 2011).   CrowdFlower has asserted this defense.   (*See* Defendants' Answer and Defenses to First Amended Complaint at Sixteenth and Eighteenth Defenses (Dkt. 89).    Simply stated, the *de minimis* rule is this:  an employee cannot recover for otherwise compensable time if that time is *de minimis.   Lindow v. U.S.*, 738 F.2d 1057, 1062 (9th Cir. 1984). In determining

LITTLER MENDELSON,
P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

DEF'S OPPOS. TO PLAINTIFF'S MTN. FOR
COND'L COLLECTIVE ACTION CERT.

23.

Case No. 3:12-cv-05524-JST

1    whether a claim is *de minimis*, the court may consider the amount of daily time spent on the work

2    and/or an aggregate amount involved in the litigation.  *Id.* at 1062-63.  If the aggregate amount is

3    insubstantial, sporadic or irregular, a court may dismiss a claim as groundless and unreasonable.  *Id.*

4    at 1063.  Plaintiffs are not similarly situated to the putative class members' because both of them and

5    a number of the other putative class members are subject to the *de minimis* defense.  *See*

6    *Beauperthuy*, 772 F. Supp. 2d. at 1125-26 (citing *Reed v. County of Orange*, 266 F.R.D. 446, 460

7    (C.D. Cal. 2010)).    Under the *de minimis* rule or doctrine, employees are not entitled to

8    compensation for insubstantial periods of time spent working.  *See Reed*, 266 F.R.D. at 461.  The *de*

9    *minimis* defense, therefore, requires an individualized inquiry into whether time spent performing

10   compensable tasks was insubstantial.  *See id.* at 461.  Because the inquiry regarding each putative

11   class members compensable time is individualized, the determination regarding whether the time

12   each putative class member spent working was *de minimis* is inherently also highly individualized.

13   *See id.*

14           For a court to conditionally certify a collective action under the FLSA, the named plaintiff

15   must show that the persons he purports to represent are similarly situated to him with respect to

16   claims made and **defenses asserted**.  *Long v. BDP Int'l,, Inc.*, 2013 U.S. Dist. LEXIS 17252, *5

17   (S.D. Tex. Feb. 8, 2013).   Plaintiffs then are not similarly situated with respect to the putative class

18   and this case should not be conditionally certified.

19                      **6.     Plaintiffs Completed Tasks For Only One Of 226 Channels**

20           Plaintiffs have also failed to show that they are similarly situated to each of the putative class

21   members because they only performed tasks posted on AMT.  In this respect, Plaintiffs are, at best,

22   similarly situated only to the other Contributors who also performed tasks solely on AMT during the

23   statutory period.  The putative class members who did not provide work for AMT performed a wide

24   variety of different tasks for hundreds of CrowdFlower's other Channels and were each compensated

25   pursuant to the pay practices of the particular Channels for which they performed tasks.

26           The facts presented in this case are analogous to those in *Silverman v. SmithKline Beecham*

27   *Corp.*, 2007 U.S. Dist. LEXIS 80030 (C.D. Cal. 2007) and *Sheffield v. Orius Corp.*, 211 F.R.D. 411

28   (D. Or. 2002).   The *Silverman* court denied conditional certification of a putative class of

LITTLER MENDELSON,
P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

DEF'S OPPOS. TO PLAINTIFF'S MTN. FOR
COND'L COLLECTIVE ACTION CERT.

24.

Case No. 3:12-cv-05524-JST

1    pharmaceutical sales representatives alleging misclassification under the FLSA.  2007 U.S. Dist.

2    LEXIS 80030 at *2, 6-8.  The Court found that the plaintiff failed to show that he was similarly

3    situated to the putative class because putative class members were spread among eight separate

4    business units that operated differently and the nine boilerplate declarations submitted in support of

5    the plaintiff's motion did not identify the business unit in which the nine declarants worked.  *Id.* at

6    *7.  Similarly, the *Sheffield* court denied conditional certification when the putative class had been

7    employed by a number of the defendant's subsidiaries and had worked at different job sites.  211

8    F.R.D. at 413; *see also Beuaperthuy*, 772 F. Supp. 2d at 1124 (putative class was not similarly

9    situated when subject to varying time-keeping policies that varied by location); *Pfohl v. Farmers Ins.*

10   *Group*, 2004 U.S. Dist. LEXIS 6447, at *20 (C.D. Cal. Mar. 1, 2004) (adjuster assigned by

11   temporary agency was not similarly situated to adjusters assigned by other agencies).

12          As in *Silverman* and *Sheffield*, the putative class members in this case performed tasks

13   offered by a large number of completely separate Channels that maintain completely separate

14   operations and that compensate the putative class members under completely different compensation

15   plans.  Given the wide variation of operations and compensation practices among the Channels,

16   Plaintiffs simply have not provided evidence that they are similarly situated to Contributors who did

17   not complete tasks through AMT.  *See Silverman*, 2007 U.S. Dist. LEXIS 80030 at *6-8;

18   *Beuaperthuy*, 772 F. Supp. 2d at 1124; *Sheffield*, 211 F.R.D. at 413.

19          **C.      The Legal Context Within Which Plaintiffs' Claim Must Be Adjudicated.**

20          To evaluate Plaintiffs' request for judicial notice against the critical touchstones of economy

21   and efficiency, *see Hoffman-LaRoche*, the Court must look beyond Plaintiffs' allegations and

22   consider how this statutory violation actually will be proven.  *See Amendola v. Bristol-Myers Squibb*

23   *Co.*, 558 F. Supp. 2d 459, 467 n.9 (S.D.N.Y. 2008) (scrutinizing merits based on the record to the

24   extent necessary to address plaintiff's notice motion).

25

26

27

28

LITTLER MENDELSON,
P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

DEF'S OPPOS. TO PLAINTIFF'S MTN. FOR
COND'L COLLECTIVE ACTION CERT.                    25.                    Case No. 3:12-cv-05524-JST

1.   **Plaintiffs' "Bare Bones" Motion, Relying Upon "The Mere Classification Of A Group Of Employees" And Minimal Evidentiary Support, Should Be Denied.**

Plaintiffs' initial argument – that the independent contractor classification alone justifies certification of a collective action, has been soundly rejected, "[a]s a matter of both sound public policy and basic common sense":

> [T]he mere classification of a group of employees – even a large or nationwide group – as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as "similarly situated" for § 216(b) purposes.  If it were, in every instance where an employer is accused of misclassifying a large group of employees, the district court would then somehow be required to order collective action notification, irrespective of the quality or quantity of evidence that had been produced in the form of declarations and supporting exhibits.  Such a rule would run counter to the long established law governing § 216(b) actions, which states that whether an employee has been properly exempted under the FLSA necessitates a fact specific inquiry.

*Colson*, 687 F. Supp. 2d at 926 (citing *In re Wells Fargo*, 571 F.3d at 959 and *Vinole*, 571 F.3d at 947).  *In Re Wells Fargo Home Mortgage*, 571 F.3d 953, 959 (9th Cir. 2009); *Trinh*, 2008 U.S. Dist. LEXIS 33016 at *9-11 (denying FLSA conditional certification where plaintiffs' only allegation was that defendants uniformly classified plaintiffs and other loan officers as "exempt" and plaintiffs offered no evidence beyond their own speculative beliefs that all loan officers, regardless of location of experience, where similarly situated); *Marsh v. Butler County School System*, 242 F.Supp.2d 1086, 1094 (M.D. Ala. 2003) ("the mere fact that violations [of the FLSA] occurred cannot be enough to establish similarity").

The plaintiff in *Colson* "submitted only three declarations along with several exhibits."  687 F. Supp. 2d at 927.  The plaintiff's evidence of her employer's practices outside of her home state consisted of her opinions, discussions with unidentified co-workers, unspecified "company communications," and undocumented interactions with other employees.  *Id.*  While her declaration had "some value" with respect to her own experience, it was otherwise "filled with statements that lack personal knowledge."  *Id.*  Such evidence did "not come close to establishing a sufficient evidentiary basis" to conclude, even preliminarily, that the plaintiff was similarly situated to a nationwide class of employees.  *Id.*  Plaintiffs in this case have submitted even less evidence than the *Colson* plaintiff.  Indeed, neither Plaintiff has submitted a single declaration in support of the motion

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

1  – not even their own declarations.  This is even more telling in light of the fact that Plaintiff Otey has

2  now had two opportunities to do so – first when he originally filed his Certification Motion and

3  second when he flied a supplemental brief  in support of that motion. [Dkt. 115].  Plaintiffs instead

4  choose to rely solely on unauthenticated hearsay evidence consisting of generalized statements taken

5  out of context or misconstrued from industry advertising which are not proof of anything, let alone

6  evidence of the actual practices of CrowdFlower or his own experience performing tasks posted by

7  CrowdFlower on AMT.   (*See* Declaration of Lukas Biewald ("Biewald Declaration") ¶¶ 3-6,

8  attached as Exhibit N; Van Pelt Decl. II ¶ 21).

9          With even less evidence than in *Colson*, Plaintiffs' claim that they are similarly situated to a

10  nationwide class of independent contractors is simply "unsupportable."  See 687 F.Supp.2d at 929;

11  see also *Smith v. Tradesmen Int'l, Inc.*, 289 F.Supp.2d 1369, 1372 (S.D. Fla. 2003) (three identical

12  affidavits  insufficient  to  make  conditional  certification  appropriate).    This  is  not  the  typical

13  independent contractor case where all of the putative employees did essentially the same work, in

14  essentially the same manner, for the same putative employer, under the same payment provisions.

15  Contributors choose the tasks which they want to perform based upon factors which are peculiar to

16  themselves,  including  the  third  party  websites  through  which  they  access  the  task.    Further,

17  Contributors perform tasks in different ways and are solely responsible for choosing which or how

18  many tasks and task requesters for whom they will perform tasks.  Indeed, Plaintiffs have offered no

19  explanation as to how they are similarly situated with respect to the putative class members who,

20  unlike them, performed myriad different tasks on over 200 different Channels other than AMT.

21  Neither have Plaintiffs explained how they can bring this action on behalf of persons who, unlike

22  them, were compensated with virtual as opposed to real currency.  Neither have they shown how

23  they are similarly situated to persons who are not subject to the *de minimis* defense.   They have not

24  done this for a good reason:   these significant differences clearly require such individualized inquiry

25  as to completely undermine the judicial economy rationale supporting collective action certification.

26          Plaintiffs likewise attempt to justify nationwide notice based upon unsupported conjecture.

27  Plaintiff Otey concedes that he lacks actual knowledge as to the duties and responsibilities of other

28  Contributors, asserting only his "belief" that their duties and responsibilities were similar based upon

LITTLER MENDELSON,
P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

DEF'S OPPOS. TO PLAINTIFF'S MTN. FOR
COND'L COLLECTIVE ACTION CERT.

27.

Case No. 3:12-cv-05524-JST

what he has seen on the internet.  In fact, Plaintiff Otey has never (1) communicated with any other Contributor; (2) performed tasks on any website other than AMT; or (3) even visited any other website on which CrowdFlower tasks are posted.  (Pl. Dep. pp. 79-80, 82, 115, 139, 179).  His "beliefs" do not justify requiring the parties to attempt to identify roughly 4,000,000 individuals, determine which are in the U.S. and then issue nationwide notice.  *See Monger v. Cactus Salon & Spa's LLC*, 2009 U.S. Dist. LEXIS 60066, *5-6 (E.D.N.Y., July 6, 2009) (statements that plaintiffs' "believed" others were subject to the same policies were insufficient to expand class beyond plaintiffs' store); *Bernard v. Household Int'l, Inc*., 231 F. Supp. 2d 433, 436 (E.D. Va. 2002) (rejecting statements relating to practices where "prefaced with phrases such as, 'It is my understanding' and 'I believe that'"); *Yaklin v. W-H Energy Servs., Inc.*, 2008 U.S. Dist. LEXIS 36572, *9 (S.D. Tex. May 2, 2008) ("boilerplate paragraph" that affiant believed employees were similarly situated insufficient to establish nationwide class).

### D. Plaintiffs Have Failed to Establish that Sufficient Interest Exists to Justify Conditional Certification and Notice.

A plaintiff seeking conditional certification of a collective action must show both that he is similarly situated to the proposed class members "and that more than a minimal number of prospective class members are interested in in joining the suit." *Silverman v. SmithKline Beecham Corp.*, 2007 U.S. Dist. LEXIS 80030 (C.D. Cal. Oct. 15, 2007).  Despite the fact that (1) this case has been pending for over seven months, (2) Plaintiffs' counsel have been advertising the existence of this lawsuit and soliciting inquiries from prospective opt-in plaintiffs via its website and elsewhere for months (*See* Ex. A. ).and (3) the existence of this case has been well-publicized over the internet and in crowdsourcing discussion forums (*See* Declaration of Amy Oliver, attached as Exhibit O, stating that a Google Search reveals over 12,800 hits for "CrowdFlower lawsuit"),   only one person – Mary Greth –  opted into this lawsuit.  If Plaintiffs' statement that Contributors are accustomed to internet usage given the nature of the work performed (Certification Motion ( Dkt. 46 p. 15) is correct, the fact that only one person opted into this lawsuit speaks volumes to the lack of interest given its publicity.  Plaintiffs thus comprise less than one thousandth of one percent of the putative class. There clearly is not enough interest in this case to justify certification. *See Robinson*

LITTLER MENDELSON,
P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

DEF'S OPPOS. TO PLAINTIFF'S MTN. FOR
COND'L COLLECTIVE ACTION CERT.

28.

Case No. 3:12-cv-05524-JST

*v. Dolgencorp, Inc.,* 2006 U.S. Dist. LEXIS 85471, *19-21 (M.D. Fla., Nov. 13, 2006) (three employees out of a potential class of 26,000 did not meet the threshold of sufficient interest).

### E.    Form of Notice to the Putative Class[7]

Defendants agree with Plaintiff that "a conditionally certified class must receive 'the best notice practicable, including individual notice. . . .'" (Dkt. 46 pp. 14-15).  It appears, however, that Plaintiffs, in fact, seek to provide the *least expensive* form of notice rather than the *best* notice practicable.  Plaintiffs contends that "[e]mail and on-line posting are superior to U.S. mail because of the on-line nature of Defendants' business, because the Workers are accustomed to internet usage, and CrowdFlower is more likely to possess or obtain accurate email addresses than mailing addresses." (Dkt. 46 p. 15).  Plaintiffs' contention in this regard is misguided.  Initially, Plaintiffs' assertion that CrowdFlower is more likely to possess accurate email addresses is a red herring because for over 97 % of the putative class CrowdFlower possesses no contact information and only has a numeric ID number provided by the Channel and one or more IP addresses from which the Contributor has accessed the Platform.  Such information as to the remainder of the putative class, to the extent that it exists anywhere, is not retained in the regular course of business but may exist in some form as a result of Contributors incidentally revealing such information to CrowdFlower on-line.  Thus, the availability of email addresses is extremely limited and would have to be manually mined, primarily from third parties, in order to try to obtain it.  CrowdFlower does not know whether Channels maintain email addresses for Contributors.  If obtained, the parties would then have to identify whether the Contributor was in the United States as CrowdFlower does not have reliable information regarding Contributor locations but only has some information regarding the IP addresses used.  (Van Pelt Declaration ¶ 8; 11).  Further, Plaintiffs fail to explain how the on-line nature of CrowdFlower's business and the fact that workers may be accustomed to using the internet somehow makes U.S. Mail ineffective or inferior options for providing notice.  Courts generally have recognized U.S. Mail as the preferred or best form of notice in collective actions.  *See Putnam v. Galaxy 1 Marketing, Inc.*, 276 F.R.D. 264, *277 (S.D. Iowa Aug. 23, 2011) ("First class mail is

---

[7] If notice is allowed, Defendants request that this Court allow it to comment upon the proposed notice form at that time.

LITTLER MENDELSON,
P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

DEF'S OPPOS. TO PLAINTIFF'S MTN. FOR
COND'L COLLECTIVE ACTION CERT.                29.                Case No. 3:12-cv-05524-JST

1    generally considered to be the best form of notice. "); *Adams v. Singh*, 242 F.R.D. 530, *542 (N.D.

2    Cal. April 6, 2007) ("First class mail is ordinarily sufficient to notify class members who have been

3    identified.'") (citing *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 492-93 (E.D. Cal.

4    2006)); *Mowdy v. Beneto Bulk Transport*, 2008 U.S. Dist. LEXIS 26233, *29 (N.D. Cal. March 31,

5    2008) (same); *Stickle v. SCI W. Market Support Ctr., L.P.*, 2009 U.S. Dist. LEXIS 97735, *23 (D.

6    Ariz. Sept. 30, 2009) ("Here, the best practicable notice is first class mail.  The Court sees no reason

7    why such notice is inadequate, and as such, the Court will not require Defendants to provide notice

8    via email and publication in Defendants' employee newsletter, as was requested.").  Here,

9    CrowdFlower (with very minor exceptions) does not possess contact information for Contributors

10   and to the extent such information is available, it is possessed by third parties.   Consequently,

11   contact information (regardless of whether email, telephone numbers or mailing addresses), will

12   have to be obtained, presumably by subpoena, from the approximately 226 Channels with whom

13   CrowdFlower does business.[8]  At this juncture, it is uncertain what, if any, contact information may

14   be available from any particular Channel Provider.   While it is expected that such contact

15   information would be limited to email addresses, once an email address is obtained, there is certainly

16   no way of determining, without more, whether it actually belongs to a putative class member (*i.e.*, a

17   Contributor residing or working in the U.S.).  Thus, once available contact information is received

18   from Channels, Plaintiffs presumably will need to undertake an email campaign to request the

19   Contributors to provide name and address information.  Notably, this campaign would be necessary

20   to determine if the person is in the United States and should receive notice.  Indeed, notice of the

21   lawsuit should not be sent to these individuals until the parties are able to reliably determine if the

22   person is a member of the putative class.  *See In re Domestic Air*, 141 F.R.D. 534, 539-46 (N.D. Ga.

23   1992) (sending notice to large over inclusive group would most likely confuse the recipients and

24   encourage responses by non-class members).

25

26

27

28

---

[8] Some Channels may not have obtained contact information from Contributors or be able to access such information by correlation with an ID number from CrowdFlower.

LITTLER MENDELSON,
P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

DEF'S OPPOS. TO PLAINTIFF'S MTN. FOR      30.                              Case No. 3:12-cv-05524-JST
COND'L COLLECTIVE ACTION CERT.

Simply stated, there is no basis for Plaintiffs to summarily conclude that email and on-line postings (as opposed to U.S. Mail) will constitute the "best notice practicable."[9]  As explained above, (with very minor and limited exceptions), CrowdFlower neither possesses email addresses nor mailing addresses and it is uncertain what, if any, contact information for Contributors each Channel Provider may be able to provide.  Further, in the event that Contributors are only able to provide email addresses from Channels, due to the uncertainty associated with whether such email addresses belong to a potential class member, it will be necessary to request (via email) the individual's name and address.  Given the need to obtain such address information anyway in the event that email addresses are the predominant form of contact information provided, and to ensure that the Contributor is in the U.S., U.S. Mail is the best notice practicable.

Posting notice on CrowdFlower's website or the websites of Channels is even more problematic. Plaintiff Otey himself testified that he did not visit CrowdFlower's website before going to AMT's website to perform tasks.   (Pl. Dep. p. 115).  Ironically, Plaintiff Otey thus likely would not have received notice of this lawsuit by such posting had it been filed by another Contributor.  Equally problematic is the fact that the Court does not have jurisdiction over those Channels located outside of the United States and would be powerless to order them to provide contributor information, let along post any notice on their websites.

Further, since the extent to which *Plaintiffs* may be able to procure contact information for potential plaintiffs is unclear at this juncture, it also would be premature to allow notice by publication.[10]   Courts routinely have declined to require postings to supplement personal notice in the absence of evidence that notice by U.S. mail is insufficient. *Martinez v. Cargill Meat Solutions*,

---

[9]  The cases relied upon by Plaintiffs in support of their argument for notice via email are not controlling and provide no guidance with regard to this issue.  In *In re Apple iPhone 4 Products LiabLitig,* the court merely noted that "[f]ollowing preliminary approval [of the settlement agreement], the claims administrator sent e-mail notice to 15.7 million class members, the number of eligible iPhone 4 purchasers for whom Apple retained email addresses."  2012 U.S. Dist. LEXIS 113876, *5 (N.D. Cal. Aug. 10, 2012).  That decision did not address any dispute over the form of notice.  In *In re: Netflix Privacy Litig*, prior to court approval, the parties created and agreed to a notice plan that provided for email notification.  2012 U.S. Dist. LEXIS 93284, **11-12 (July 5, 2012).

[10]  Plaintiffs have not requested notice solely by publication, which would be wholly inappropriate. *See Loef v. First Am. Title Ins. Co.*, 281 F.R.D. 58, *61 (D. Maine Feb. 28, 2012) (rejecting plaintiff's argument that sufficient class notice could be provided solely through publication).

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

DEF'S OPPOS. TO PLAINTIFF'S MTN. FOR COND'L COLLECTIVE ACTION CERT.     31.     Case No. 3:12-cv-05524-JST

265 F.R.D. 490, *500-501 (D. Neb. Dec. 11, 2009) (collective action in which court denied the plaintiff's request to supplement notice by U.S. Mail with a workplace posting and radio and newspaper announcements; "There is no evidence personal mailing will be an unreliable means of delivering notice to the putative plaintiffs.  Unless and until such evidence and the court rules otherwise, notice by mailing is the only court-approved method for disseminating notice of plaintiffs' collective action. . . . "); *Sharer v. Tandberg, Inc.*, 2006 U.S. Dist. LEXIS 75357, *9 (E.D. Va. Oct. 17, 2006) ("Defendant will not be required to grant Plaintiffs access to their facilities to post notice of suit, as proper notice can be given by first-class mail."); *DeKeyser v. ThyssenKrupp Waupaca, Inc.*, 2008 U.S. Dist. LEXIS 102318, *18 (E.D. Wis. Dec. 17, 2008) (denying the plaintiffs' request to require the defendant to post notices in its plants where there was no indication that "transmitting the notice by first class mail and publishing it through newspapers would be insufficient"); *Lane v. Atlas Roofing Corp.*, 2012 U.S. Dist. LEXIS 95914, **9-10 (C.D. Ill. July 11, 2012) (finding that because supplemental notice through workplace posting can be overly intrusive, justification for such postings requires "some showing that mailing of the notice is not sufficient to provide prospective members with accurate and timely notice of their potential right to join the suit"); *Howard*, 2009 U.S. Dist. LEXIS 3913 at *32 (declining to order the defendant to post notices in its branches (absent evidence that mailing notice was ineffective) and reasoning that "such a method of notice is unnecessary and overly intrusive").

### E. Plaintiffs Should Bear All Costs Associated With Providing Notice.

Plaintiffs should bear the full cost of providing notice to potential class members and any tasks associated with obtaining class member contact information.   In *Eisen v. Carlisle & Jacqueline*, the Supreme Court rejected the plaintiff's attempt to dispense with individual notice based on the "prohibitively high cost of providing individual notice to 2,250,000 class members" and concluded that the plaintiff "must bear the cost of notice to the members of his class."  *See Eisen*, 417 U.S. 156, 175-78 (1974); *see also Sullivan v. Kelly Servs., Inc.*, 2011 U.S. Dist. LEXIS 2189, **2-3 (N.D. Cal. Jan. 5, 2011) (noting in wage-and-hour class action that the "usual rule is that a plaintiff must initially bear the cost of notice to the class") (quoting *Eisen*, *supra*).  Subsequently, in *Oppenheimer v. Sanders*, the Supreme Court addressed the related issue of which party must

LITTLER MENDELSON,
P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

DEF'S OPPOS. TO PLAINTIFF'S MTN. FOR
COND'L COLLECTIVE ACTION CERT.

32.

Case No. 3:12-cv-05524-JST

1    "perform particular tasks necessary to send the class notice" and set forth the "general rule" that "the

2    representative plaintiff should perform the tasks, for it is he who seeks to maintain the suit as a class

3    action and to represent other members of his class." *See Oppenheimer*, 437 U.S. 340, 356 (1978).

4    The Court further explained, however, that in some cases, where the defendant may be able to

5    perform such necessary tasks with less difficulty or expense than the plaintiff, the district court may

6    exercise its discretion to require the defendant to perform the task.[11] *See id.*   In exercising such

7    discretion, however, the Court also cautioned that a district court "should be considerably more

8    ready to place the cost of the defendant's performing an ordered task on the representative plaintiff,

9    who derives the benefits. . . ."   *See id.* at 358-59 (concluding that the district court abused its

10   discretion in requiring the defendants to shoulder the expense of identifying absent class members

11   where the records containing the necessary information were held by a third party).   Here, "Plaintiff

12   requests the Court order Defendants to produce a computer-readable data file containing the names,

13   addresses, phone numbers[12] and email addresses in a readable electronic format of the class . . .."

14   (Dkt. 46 p. 15).   As explained above, however, (with minor exceptions), CrowdFlower does not

15   possess names and contact information for the putative class.   To the extent such information is

16   available; it is in the possession of third parties.   Because CrowdFlower neither possesses this

17   information nor could obtain this information with less difficulty or expense than Plaintiffs, the

18   Court should deny Plaintiffs' request.   Instead, the cost and effort to procure the contact information

19   _____

20   [11] The Ninth Circuit also has recognized that district courts "may order a class action defendant to
     pay the cost of class notification after they determine that the defendant is liable on the merits."   *See*
21   *Hunt v. Imperial Merchant Servs., Inc.*, 560 F. 3d 1137, 1143 (9th Cir. 2009). This case clearly does
     not present such a situation.

22   [12] The Court should not allow Plaintiff to discover the telephone numbers of potential class members
     regardless of the source and as explained herein, should not permit Plaintiff to use their email
23   addresses to provide actual notice.   *Daniels v. Aeropostale W, Inc.*, 2013 U.S. Dist. LEXIS 59514,
     *10 (N.D. Cal. April 24, 2013) (rejecting plaintiff's request to provide telephone numbers and email
24   addresses in addition to names and last known mailing addresses); *Hinterberger v. Catholic Health*
     *Sys.*, 2009 U.S. Dist. LEXIS 97944, *36 (W.D. N.Y. Oct. 21, 2009) ("[I]n the interest of privacy,
25   [the defendant] need not produce phone numbers, social security numbers, dates of birth, and e-mail
     addresses" to facilitate notice; *Stickle*, 2009 U.S. Dist. LEXIS 97735at*23(finding that "supplying
26   the attorneys in this case with the phone numbers of thousands of Defendants' current and former
     employees seems like a needless intrusion in the privacy of these individuals and their
27   families");*Howard v. Securitas SecServs., USA Inc.*, 2009 U.S. Dist. LEXIS 3913, **31-32 (N.D. Ill.
     Jan. 20, 2009) ("[T]he court knows of no authority requiring phone numbers to be turned over and,
28   in consideration of the privacy rights of the putative class members, it declines to order [the
     defendant] to turn over any more information than is required by *Hoffman-La Roche*")

LITTLER MENDELSON,
P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

DEF'S OPPOS. TO PLAINTIFF'S MTN. FOR
COND'L COLLECTIVE ACTION CERT.

Case No. 3:12-cv-05524-JST

1    sought (as well as the expense of actually providing notice to potential class members) should be

2    fully borne by Plaintiffs.  *See Loef v. First Am. Title Ins. Co.*, 281 F.R.D. 58, *62 (D. Maine Feb. 28,

3    2012) (finding that no "special circumstances" existed that might warrant requiring the defendant to

4    bear the cost of implementing the court's notice plan); *Daniels v. Aeropostale West, Inc.*, 2013 U.S.

5    Dist. LEXIS 59514, *10 (N.D. Cal. April 24, 2013) ("Plaintiff shall bear the full cost of the

6    notice.").

7    **IV.    CONCLUSION**

8         Based on the foregoing, Plaintiffs' Motion for Conditional Certification should be denied and

9    all class and collective action allegations dismissed.

10

11   Dated: June 28, 2013

12                                              */s/ Kelly D. Reese*
                                                KELLY D. REESE
13                                              JACQUELINE E. KALK
                                                ARTHUR M. EIDELHOCH
14                                              GALEN M. LICHTENSTEIN
                                                LITTLER MENDELSON, P.C.
15                                              Attorneys for Defendants
                                                CROWDFLOWER, INC., LUKAS BIEWALD
16                                              AND CHRIS VAN PELT

17   Firmwide:120847095.3 073860.1001

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON,
P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

DEF'S OPPOS. TO PLAINTIFF'S MTN. FOR          34.                    Case No. 3:12-cv-05524-JST
COND'L COLLECTIVE ACTION CERT.