# EXHIBIT B

## Declaration of Chris Van Pelt

## DECLARATION OF CHRIS VAN PELT

I, Chris Van Pelt, do hereby swear, affirm and declare as follows:

1. I am over 18 years of age.

2. I am the Chief Technical Officer of CrowdFlower, Inc. and have personal knowledge of the facts contained in this Declaration and, if called upon to testify in this regard, could do so both accurately and competently.

3. Based upon my preliminary review of the available data, I estimate that the total number of potential class members (as the putative class is defined in the lawsuit to which this declaration relates) could exceed 4,000,000 -- the number of ID numbers that have opened and completed a task during the relevant time period.

4. Because CrowdFlower does not possess names, addresses, or similar information regarding Contributors (with very rare exceptions), it would be a herculean, and in some cases impossible, task for CrowdFlower to identify the millions of persons who have performed tasks all over the world via various third-party internet sites.

5. CrowdFlower's business model can best be described as the creation and maintenance of an online marketplace of human intelligence tasks for the benefit of itself and its customers. For an agreed price, CrowdFlower's customers provide projects to CrowdFlower in the form of data sets which must be mined by human intelligence to extract or categorize the information sought by the customer (e.g., tagging photos, categorizing a product, identifying inappropriate content, taking a survey, conducting a web search, confirming a business location, etc.). CrowdFlower typically breaks down the project into discrete tasks which are then displayed and offered to persons as units (*i.e.*, small groupings of tasks) through the intermediation and platform integration of third party internet sites referred to as "Contributor

Channels." Thus, a task is any discrete work that is made available to be performed on one or more Contributor Channels through an integrated platform. In order to complete and be compensated for a task, Contributors must render "judgments" in response to a series of questions (tasks) which are presented in units of multiple tasks. An individual that chooses to complete a task must complete a unit before they are entitled to compensation for performing the multiple tasks within the unit. During the statutory period covered by alleged wage and hour violations in this case, over 10,000,000 individuals opened and considered an available task and over 4,000,000 Contributors completed at least one task on the CrowdFlower Platform. CrowdFlower cannot reliably determine how many of the Contributors are located outside the United States.

6. CrowdFlower enters into agreements with Contributor Channels which create and maintain their own web-based platforms. Contributor Channels then make the tasks available to the individuals who actually perform the tasks ("Contributors") which are offered, on a non-exclusive basis, through an integrated platform. CrowdFlower pays the Contributor Channels upon presentment of an invoice based upon tasks completed by that Channel's Contributors at the rate operative to that Channel based upon its agreement with CrowdFlower. In the vast majority of cases, CrowdFlower does not know the actual identities of the Contributors who complete the tasks. Contributor Channels assume all responsibility for compensating Contributors. CrowdFlower does not pay any Contributors. Indeed, with only one exception described in the following section, CrowdFlower has no control over the compensation rates or methods paid to Contributors by Contributor Channels. Contributor Channels frequently compensate Contributors only in "virtual currency" which can be redeemed for goods, real (*e.g.*, telephone minutes) and virtual (game credits or the like) rewards.

7. CrowdFlower exercises no control over the time, place, pace and/or manner of performance of tasks by its Contributors. Contributors pick and choose the tasks they wish to complete and are under absolutely no obligation even to finish a task once started. Indeed, Contributors often start tasks and fail to complete them without any adverse effect on their ability to continue to access work via the platform. Furthermore, CrowdFlower provides no training for the tasks performed other than a few sample questions to qualify the person for the task. Supervision of task performance by CrowdFlower is virtually non-existent. In most circumstances, CrowdFlower does not have any reliable method of directly communicating with particular Contributors unless a Contributor chooses to initiate communications via email or through an internet forum maintained by CrowdFlower.

8. Notwithstanding the foregoing, CrowdFlower does have ways of determining whether a Contributor (which is identified only by ID number or IP address to CrowdFlower) is scamming or "gaming" its system. It can do this by tracking the amount of time it takes a Contributor to complete a task or through unidentified test questions (questions to which the answer is already known). This is called Gold Standard Data which CrowdFlower refers to as "quality control technology." If a Contributor is completing the task much more quickly than others or fails too high a proportion of the interspersed test questions, an electronic "red flag" is raised, and to the extent a particular user ID or IP address is identifiable, that ID or IP address can be blocked from performing a particular task (*i.e.*, that Contributor simply will not be able to see the task on the platform using that user ID or IP address). The Contributor is generally not blocked from performing any other tasks on CrowdFlower's Platform and could even return to the task through a different ID or IP address or through a different Contributor Channel.

9.  Although CrowdFlower can determine when a task has been opened and the time at which the task was finished (*i.e.*, how long a Contributor was on the CrowdFlower Platform with a task open), CrowdFlower has no way of tracking the amount of actually time spent by a Contributor on a task because there is no "time out" feature on the system and Contributors may leave the task open for hours or even days before they make any judgment or complete a unit.

10. CrowdFlower has a somewhat different kind of relationship with Contributors who complete its customers' tasks via Amazon Mechanical Turk's ("AMT") website. Unlike CrowdFlower, AMT does not manage crowdsourcing solutions to business needs, but is essentially an online marketplace or venue for work which requires the application of human intelligence to discrete tasks. AMT's terminology therefore differs slightly from CrowdFlower. On AMT, "Customers" (CrowdFlower's term) are referred to as "Requesters" and "Contributors" (CrowdFlower's term) are referred to as "Providers." CrowdFlower is effectively a Requester on AMT. CrowdFlower posts some of its customers' tasks on AMT. In this regard, CrowdFlower pays AMT a fee for the use of its website and prefunds an account which is utilized by AMT to compensate Providers who perform tasks posted by CrowdFlower on AMT. In the vast majority of instances, CrowdFlower does not know the identity of the Providers. Indeed, AMT processes all payments to Providers from the account funded by CrowdFlower, but controlled in all respects by AMT. On the rare occasion when an AMT Provider earns $600 or more from completing tasks originated by CrowdFlower during what AMT deems a calendar year AMT provides CrowdFlower with contact and earnings information for that Provider so that CrowdFlower can issue him or her an IRS Form 1099. For the years 2010 and 2011, CrowdFlower issued 26 and 33 Form 1099s, respectively, to AMT Providers. With the exception of these 59 persons, Contributors are otherwise anonymous to CrowdFlower.

11. Separately from managing the execution of crowdsourcing solutions to its Customers' business needs, CrowdFlower also makes its platform available to businesses and individuals that choose to post tasks directly onto the CrowdFlower Platform. CrowdFlower calls this option "DIY." DIY Customers design or build their own jobs without customization by or other direct assistance from CrowdFlower. The DIY Customer then posts those tasks on the CrowdFlower Platform which in turn makes the tasks available on the various Contributor Channels. DIY Customers set the rate of compensation for completion of those tasks and they are responsible for any compensation paid for tasks completed by Contributors. Both DIY Customers and the Contributors that choose to complete those tasks are essentially anonymous to CrowdFlower. Indeed, Contributors are typically only known by an ID number and IP address and DIY Customers are typically only known by an email address and a related PayPal account number.

12. When Plaintiff Christopher Otey filed this putative collective/class action against, CrowdFlower, Plaintiff was unknown to CrowdFlower, since as noted earlier CrowdFlower typically only knows its Contributors as an ID number and an IP address. With Plaintiff's name in hand following receipt of the lawsuit papers, CrowdFlower began the difficult, and often impossible, task of attempting to connect an actual name with an ID number. Fortunately, CrowdFlower was able through web-based research to connect Plaintiff with a specific email address, and then to his ID number only because, on a single occasion, January 8, 2012, Plaintiff chose to post a comment on an online forum maintained by CrowdFlower. Participation in that discussion forum is voluntary but does require participants to provide a name and email address. Through that information, CrowdFlower was able to locate one ID number for Plaintiff – ID number 789448.

13. By tracking that ID number, CrowdFlower was able to access the following information concerning Plaintiff's activity on the CrowdFlower Platform. From September 6, 2010 to October 14, 2012, Plaintiff opened or "visited" 102 tasks on the CrowdFlower Platform all of which he accessed as a Provider for AMT. However, Plaintiff contributed "judgments" only for 45 tasks. In other words, Plaintiff did not perform judgments in 57 of the 102 tasks he viewed. In four of the 45 tasks where he contributed judgments, Plaintiff did not finish the unit that he began.

14. CrowdFlower has determined that Plaintiff completed and was compensated for a total of 41 tasks over roughly a two-year period. Of these 41 tasks, 24 were tasks originated by DIY Customers and unrelated to CrowdFlower. Only 17 of the tasks Plaintiff performed were CrowdFlower tasks. During that roughly two-year period, Plaintiff went for weeks, sometimes months, and even once *an entire year*, without visiting and/or performing any tasks as shown below:

October 10, 2010 through November 29, 2011: Plaintiff did not visit or perform any tasks during this period, which exceeds a year.

January 10, 2012 through May 9, 2012: Plaintiff visited, but did not attempt to complete, any tasks during this four-month period.

May 9, 2012 through July 25, 2012. Plaintiff did not visit or perform any tasks during this roughly two-month period.

15. While CrowdFlower cannot determine how long any particular task took to complete in terms of actual time spent working, CrowdFlower can calculate how long a period of time elapsed between the point in time a task was opened and the time it was finished. These numbers do not accurately reflect the amount of time spent performing a task because there is no

way to determine whether the task was opened and left unattended on the web browser for a period of minutes, hours, or even days. During the roughly 109 weeks between September 6, 2010 (the first date on which Plaintiff completed a task) and October 14, 2012 (the last day on which he completed a task), Plaintiff had tasks originated by CrowdFlower open which he completed for a total of only approximately 16.5 hours. Even if one assumes, arguendo, that Plaintiff was actively engaged in performing tasks during all of those 16.5 hours (which is extremely unlikely), Plaintiff's average work time over 109 weeks can be broken down as follows:

    Daily Average: 1.3 minutes (approximate)

    Weekly Average: 9.1 minutes (approximate)

    Monthly Average: 39.3 minutes (approximate)

    16. To even attempt to collect and correlate information relative to roughly 4,000,000 Contributors' identity, geographical location, and platform activity over the statutory period likely would tax the financial and human resources of CrowdFlower to the breaking point.

PURSUANT TO 28 U.S.C. 1746, I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

    Executed on JANUARY 17, 2013.

Chris Van Pelt

Firmwide:117649539.1 073860.1001