UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER OTEY, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>CROWDFLOWER, INC., et al.,,<br><br>　　　　Defendants. | Case No.  12-cv-05524-JST<br><br>**ORDER DENYING MOTION FOR APPROVAL OF SETTLEMENT WITHOUT PREJUDICE**<br><br>Re: ECF No. 187 |

　　　　In this conditionally certified collective action for violations of the Fair Labor Standards Act ("FLSA"), Plaintiffs move for approval of their stipulated settlement agreement, pursuant to which the parties seek the release of Plaintiffs' collective action claims, as well as their Rule 23 class action claims for violations of Oregon labor laws.  Defendants have filed a statement of non-opposition under Civil Local Rule 7-3.  For the reasons set forth below, the motion is DENIED WITHOUT PREJUDICE.

**I.　　BACKGROUND**

　　**A.　　The Parties and Claims**

　　　　Defendant CrowdFlower is an internet company that uses technology to distribute small and simple repetitive tasks to individuals in exchange for pay on a per-task basis.[1]  Second Am. Compl. ("SAC") ¶¶ 4, 8, 16-20, ECF No. 121. This outsourcing of small tasks to individuals is commonly referred to as "crowdsourcing."  CrowdFlower offers much of its work through a website called Amazon Mechanical Turk ("AMT").  ECF No. 46, Ex. 10.  Plaintiffs Christopher Otey, Mary Greth, and Nancy Miller performed tasks for CrowdFlower through AMT.[2]  Id. ¶¶ 6-7,

---

[1] Defendants Lukas Biewald and Chris Van Pelt are the CEO and CTO of CrowdFlower, respectively. SAC ¶¶ 9-10.

[2] Plaintiff Nancy Miller opted into the action on August 1, 2013.  ECF No. 156.  She designated

ECF No. 121; ECF No. 156.

CrowdFlower gets projects from various customers, breaks the projects into pieces, and assigns the pieces to "contributors." ECF No. 46, Ex. 1. The work that CrowdFlower assigns to contributors involves gathering, reviewing, and labeling of data and does not require any special skill. SAC ¶ 22; ECF No. 46, Ex. 5 at 2. CrowdFlower's only requirement is that contributors follow its instructions. ECF No. 46, Ex. 5 at 2. The most common type of task is verifying business listings. ECF No. 46, Ex. 3 at 11.

The gravamen of the complaint is that CrowdFlower pays contributors, which it classifies as independent contractors, less than the minimum wage under FLSA and Oregon law. SAC ¶ 36. Plaintiffs asserted the following claims in the complaint: (1) failure to pay minimum wage in violation of the FLSA; (2) failure to pay minimum wage in violation of Oregon law; (3) and waiting time penalties under Oregon law.[3]

**B.      Procedural Background**

On August 27, 2013, the Court granted Plaintiffs' Motion for Conditional Certification of a Collective Action, and it conditionally certified the following class:

> [A]ll persons who performed crowdsourced work in the United States and its territories in response to any online request by CrowdFlower for crowdsourced work, or any online notification by CrowdFlower that crowdsourced work was available at any time from three years prior to the date on which notice is issued to the date on which notice is issued.

ECF No. 167 at 8.

In the same order, the Court approved Plaintiffs' proposed notice and consent form. Id. To facilitate timely notice, the Court ordered Defendants to send to Plaintiffs the IP addresses and any known email addresses, mailing addresses, and phone numbers of all individuals who fall within the class definition within 45 days of the order's issuance. Id. at 9. The Court further

---

Christopher Otey and Mary Greth "to make all decisions on [her] behalf concerning the method and manner of conducting the case including settlement[.]" Id.

[3] Plaintiffs bring the second and third claims, both of which arise out of Oregon law, as class action claims under Rule 23. Id. ¶¶ 76-83.

2

ordered Plaintiffs to send the approved notice and consent form to the class members via email within 30 days of receiving the class members' contact information from Defendants. Id. The Court also ordered Defendants to post the proposed notice on their website and on the ten websites through which CrowdFlower obtains the most crowdsourced work within 30 days after Defendants sent the class members' information to Plaintiffs. Id. at 8. The class members were given 90 days to opt into the action from the date on which notice was issued to them. Id. at 10.

Two months after conditional approval, on October 18, 2013, the parties mediated their claims before "a well-respected and nationally known FLSA mediator." Mot., ECF No. 187 at 4. That mediation led to a "tentative settlement, subject to later agreement to a few key terms." Id. Over the next month, the parties resolved the remaining settlement issues. Id.

On March 6, 2014, the parties filed a Combined Motion for Approval of FLSA Collective Action Settlement, Final Collective Action Certification for Settlement Purposes Only, and Authorization for the Parties to Effectuate Their Settlement. ECF No. 187.

### C.     Overview of the Settlement Agreement

On November 21, 2013, the parties executed a Final Settlement Agreement and Complete Waiver/Release ("the settlement agreement"). ECF No. 187. The parties to the settlement agreement are Defendants Crowdflower Inc., Lukas Biewald, Chris Van Pelt, Plaintiffs Christopher Otey and Mary Greth ("Representative Plaintiffs"), opt-in Plaintiff Nancy Miller, and the 100 contributors who earned the "highest dollar value in compensation" for performing tasks posted by Crowdflower on Amazon Mechanical Turk between 2010 and 2013 ("Opt-In Plaintiffs"). Id. at 1-2 ¶¶ 1.1-1.3.

Under the agreement, Defendants have agreed to pay a total of $585,507, to be distributed as follows: (1) Plaintiffs Otey and Greth will receive service awards of $13,700 and $25,000, respectively; (2) the Opt-In Plaintiffs will receive a maximum payment of $111,807; (3) and Plaintiffs' counsel will receive $435,000 in attorney's fees and costs. Id. at 3 ¶¶ 2.1.1-2.1.2. If less than 50% of the $111,807 allocated to the Opt-In Plaintiffs is claimed, then the amount allocated to each class member who submitted a claim form will be increased pro-rata so that at least $55,903.50 is paid to Opt-In Plaintiffs in total. Id. ¶ 2.1.1.3. The parties do not indicate

3

whether any unpaid amounts out of the $111,807 would revert to Defendants.

In addition, Defendants agreed to disable all links that allow for enterprise or platform customer tasks to be posted on AMT within 30 days of the Court's approval of the settlement agreement. Id. at ¶ 2.5. This will remain in effect for 10 years from the date of final approval by the Court, or until AMT makes material changes to its business practices as determined by the Court. Id.

In exchange, Plaintiffs agree to release any and all wage-related claims under federal or state law that were or could have been raised in this action. Id. at ¶ 5.1.1. In addition, Representative Plaintiffs explicitly waive the right to pursue any claims arising out of or connected with employment, known or unknown, including but not limited to all matters in law, in equity, in contract, or in tort, or pursuant to statute. Id. at 5-6 ¶ 6.1. The only exception to this release is any claim or right that cannot be waived by law or that arises after the effective date of the agreement. Id. ¶¶ 5.2, 6.1.1.

### D. Jurisdiction

The Court has jurisdiction over this action under 28 U.S.C. § 1331.

## II. LEGAL STANDARD

### A. Approval of a Collective Action Settlement

The FLSA was enacted for the purpose of protecting workers from substandard wages and oppressive working hours. Barrentine v. Arkansas-Best Freight System, 450 U.S. 728, 739 (1981). Therefore, an employee's right to fair payment cannot be "abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." Id. Accordingly, FLSA settlements require the supervision of the Secretary of Labor or the district court. See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352-53 (11th Cir. 1982). The FLSA also requires that a settlement agreement include an award of reasonable fees. See 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action").

The Ninth Circuit has not established the criteria that a district court must consider in

determining whether an FLSA settlement warrants approval. Most courts in this circuit, however, first consider whether the named plaintiffs are "similarly situated" to the putative class members within the meaning of 29 U.S.C. § 216(b) (providing that aggrieved employee may bring a collective action under the FLSA on behalf of himself and "other employees similarly situated").[4]

If the collective action members are similarly situated, most courts then evaluate the settlement under the standard established by the Eleventh Circuit, which requires the settlement to constitute "a fair and reasonable resolution of a bona fide dispute."[5] Lynn's Food Stores, 679 F.2d at 1355.

### B. Approval of a Class Action Settlement

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). The settlement of a certified class action must be fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2). But, where the "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the

---

[4] Neither the FLSA nor the Ninth Circuit has defined "similarly situated." Outside of the context of settlement, most courts in this circuit follow a two-stage process for determining whether putative class members are similarly situated. Lewis v. Wells Fargo & Co., 669 F. Supp. 2d 1124, 1127 (N.D. Cal. 2009). In the first stage, which is referred to as the "notice stage," the court considers whether the plaintiff has submitted sufficient evidence to justify the conditional certification of the class and the sending of notice of the action to potential class members. Id. "The standard for certification at this stage is a lenient one that typically results in certification." Id. (citation omitted). In the second stage, the court reevaluates the collective action under a stricter standard after discovery is completed and usually on a motion for decertification by the defendant. Id. (citation omitted). At this point, the court considers several factors, including "the disparate factual and employment settings of the individual plaintiffs, the various defenses available to the defendant with respect to each plaintiff, fairness and procedural considerations, and whether the plaintiffs made any required filings before instituting suit." Id. (citation omitted).

[5] See, e.g., McKeen-Chaplin v. Franklin American Mortg. Co., Case No. 10-cv-5243 SBA, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012); Yue Zhou v. Wang's Rest., Case No. 05-cv-0279 PVT, 2007 WL 2298046, at *1 (N.D. Cal. Aug.8, 2007); Trinh v. JPMorgan Chase & Co., Case No. 07-cv–01666, 2009 WL 532556, at *1 (S.D. Cal. Mar.3, 2009); Thornton v. Solutionone Cleaning Concepts, Inc., Case No. 06-cv-1455 AWI SMS, 2007 WL 210586, at *3 (E.D. Cal. Jan.26, 2007); Goudie v. Cable Commc'ns, Inc., Case No. 08-cv-507–AC, 2009 WL 88336, at *1 (D. Or. Jan.12, 2009); Hand v. Dionex Corp., Case No. 06-cv-1318–PHX–JAT, 2007 WL 3383601, at *1 (D. Ariz. Nov.13, 2007).

settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). In these situations, settlement approval "requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." Dennis v. Kellogg Co., 697 F.3d 858, 864 (9th Cir. 2012) (citation and internal quotation marks omitted).

## III. DISCUSSION

### A. Collective Action Claims

#### 1. Certification

Before the parties reached a settlement agreement, the Court granted conditional certification to a broad class, which included "all persons who performed crowdsourced work in the United States and its territories in response to any online request by CrowdFlower." ECF No. 167 at 8. Earlier in the litigation, Plaintiffs represented that the total number of individuals who would fall within this definition would be in the millions. In their settlement agreement, the parties now seek certification of a substantially narrower class, which includes only "the 100 AMT contributors that received the most compensation and . . . opt-in Plaintiff Nancy Miller." ECF No. 187 at 5.

Because this new class is composed entirely of members of the already conditionally certified class, the Court finds that the 100 contributors at issue are likewise "similarly situated" and that no further certification analysis is necessary. See ECF No. 167 at 8.

#### 2. Fair and Reasonable

In determining whether a settlement is fair and reasonable, district courts implicitly or explicitly consider the factors that are used to evaluate Rule 23 class action settlements, which include:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir.1998) (citations omitted).

Here, Plaintiffs argue that their proposed settlement is "fair and reasonable" based on the

complexity and expense of litigation, the risk that the Plaintiffs would lose at trial, the risk that Plaintiffs would be unable to recover even if they prevailed in this action as a result of Defendants' lack of assets to satisfy a judgment, and the attractiveness of the settlement amount for the class members who will be able to recover under the settlement.  ECF No 187 at 8-9. Additionally, the parties emphasize the value of Defendants' agreement to cease offering work through AMT, which they contend will "protect[] minimum wage rights . . . for workers now, rather than merely persist with the possibility of obtaining some protection at an unknown time in the future."  Id. at 9.

These factors offer some support for a finding that the settlement is fair and reasonable. Nevertheless, the Court has identified several deficiencies that preclude the approval of the settlement at this stage.

### a. The Reduced Scope of the Class

As discussed above, the original size of the collective action was in the millions.  The settlement agreement, however, permits only 100 class members to recover in addition to the Representative Plaintiffs.

Based on the scant information contained in Plaintiffs' motion, the Court cannot conclude that this reduction in the scope of the class is fair and reasonable.

First, Plaintiffs do not explain whether they sent notice to the class members as the Court required them to do after it granted their motion for conditional certification.  At least one district court has denied approval of a proposed settlement on the ground that the plaintiffs failed to send notice to the class members after certification and after notice to the class was approved by the court.  See Parrilla v. Allcom Const. & Installation Servs., LLC, 688 F. Supp. 2d 1347, 1351 (M.D. Fla. 2010).  The Parrilla court reasoned that certification "triggers the court's duty to ensure that accurate and timely notice is given to similarly situated employees so that they may make an informed decision about whether to join the case," and that the named plaintiffs' failure to send notice to many class members in an effort to increase the chances of settlement was suspect, because by doing so, "the named Plaintiffs [stood] to keep a bigger piece of the pie for themselves and [could] avoid what may have otherwise turned out to be a Pyrrhic victory."  Id. at 1350-51.

7

Here, Plaintiffs' potential willingness to exclude class members from the settlement who may not ever have been notified of their right to participate in this litigation suggests that the interests of some class members are possibly being compromised at the expense of the recovery of the attorneys and the remaining similarly situated plaintiffs.

Second, in the proposed settlement, the parties contend that the reduction in scope is appropriate because of "these are the only putative class members that Defendants believe can be reasonably identified, hold claims that are not de minimus and/or that could possibly have a colorable claim to be an employee of CrowdFlower based on their level of task performance utilizing the AMT website." Id., Ex. 1 ¶ 1.3.

As to the identification of the class members, Plaintiffs previously noted that the class members could be reached by posting notice on www.crowdflower.com and on the ten websites through which CrowdFlower obtains the most crowdsourced work.  Mot. at 14, ECF No. 46; Supp. Mot. at 2, ECF No. 149.  They also contended that Defendants have the ability and contractual right to obtain contact information of CrowdFlower workers from the websites with which CrowdFlower does business.  Reply at 17, ECF No. 143.  Plaintiffs do not explain the causes for the material change in their perceived ability to reach the class members.

As to the de minimus and "colorable claim" defenses raised by Defendants, Plaintiffs do not explain why the claims of the class members who are not included in the new class definition are de minimus or not colorable.

The Court recognizes that "[a]s a general rule, employees cannot recover for otherwise compensable time if it is *de minimis*."  Lindow v. United States, 738 F. 2d 1057, 1062 (9th Cir. 1984).  Nevertheless, "[t]he *de minimis* rule is concerned with the practical administrative difficulty of recording small amounts of time for payroll purposes" and that employers "must compensate employees for even small amounts of daily time unless that time is so miniscule that it cannot, as an administrative matter, be recorded for payroll purposes."  Id. at 1062-1063.  Moreover, courts consider "the size of the aggregate claim" in determining whether a claim is *de minimis*.  Given the cursory treatment of this issue in the motion, the Court cannot determine whether claims beyond the top 100 earners sink to the level of *de minimis*.

8

The Court also seeks further elaboration on the parties' contention that those individuals whose earnings fell below the top 100 earners did not have "a colorable claim to be an employee of CrowdFlower based on their level of performance." ECF No. 187, Ex. 1 ¶ 1.3. The likelihood that an individual would be considered an employee certainly bears on the likelihood of recovery at trial, and in turn the suitability of settlement. See Hanlon, 150 F.3d at 1026. However, without more information the Court cannot determine why this designation is appropriate for the top 100 earners to the exclusion of, for example, the 101st earner or, for that matter, the 100,001st. The parties must provide more information about why the top 100 earners state a colorable claim to be considered an employee whereas others do not. The parties also must provide information as to the amounts that each of the top earners is expected to receive.

Third, the potential efficiencies and conservation of resources that could be achieved by approving a settlement are compromised if the settlement excludes potential litigants who may bring subsequent suits. Additionally, the exclusion of the vast majority of the class members from the settlement creates the risk that the excluded class members ultimately will be unable to recover because the statute of limitations may run out or because they might be unable to find counsel to represent them. The latter concern is especially relevant where, as here, the class members with the highest potential recovery have settled, leaving behind a class with a lower recovery potential.

### b.     Monetary and Injunctive Relief

Plaintiffs contend that the settlement agreement is fair because it would enable each of the settlement class members to recover about 50% of the unpaid federal minimum wages they earned over the recovery period. ECF No. 187 at 6. Plaintiffs support this contention with the following calculation: "($2.50 estimated average wage rate/$4.75 estimated average minimum wage deficiency per hour ($7.25 federal minimum wage-$2.50 estimated average wages per hour) = 52.6%)." Id. The Court interprets this to mean that the parties believe that $2.50 represents the average hourly pay of the top 100 CrowdFlower earners on AMT, and that the settlement will compensate each of those workers with an additional $2.50/hour, which is the equivalent of slightly more than half of the worker's minimum wage deficit. Though this range of recovery may be fair and reasonable, the parties do not explain how the parties arrived at this estimate of hourly

9

wages or potential recovery. See Lee v. Timberland Co., Case No. 07-cv-2367, 2008 WL 2492295, at *2 JF (N.D. Cal. June 19, 2008) (finding that 70% of back wages was a fair and reasonable settlement where there were multiple uncertain legal issues and difficulty in proving precise numbers of overtime hours worked).

Additionally, Plaintiffs contend that the agreed upon injunctive relief is an "incredibly valuable step in protecting minimum wage rights." ECF No. 187 at 9. The Court is not persuaded by this contention, however. AMT is one of a host of websites through which CrowdFlower offers work. Conspicuously absent from this settlement is an agreement that CrowdFlower will cease offering work on other websites, or an agreement that CrowdFlower will pay minimum wage to its workers going forward. Also, the parties' proposed "incredibly valuable step" seems just as likely to result in CrowdFlower offering more tasks through other websites not covered by the Agreement as it does to result in a reduction of below-minimum-wage work. The Court places no weight on this agreed-upon injunction.

### c. Releases

The parties contend that the release applicable to the proposed opt-in class is "limited, not general," which supports the conclusion that it represents "an exceptional result in favor of class members." ECF No. 187 at 14 (quoting Ramah Navajo Chapter v. Babbitt, 50 F. Supp. 2d 1091, 1103-04 (D.N.M. 1998). The release provides in pertinent part:

> Any and all claims for wage payment . . . that were raised or that could have been raised . . . including but not limited to all wage-related claims such as any claims under federal or state law for unpaid overtime, improperly calculated wages, untimely payment of wages, related penalties, fines, interest, liquidated damages, employment record-keeping violations, breach of employment contract for wages, failure to furnish wage records, other wage-related claims, claims of wage law retaliation and any other claims of any kind that are based on Defendants' alleged failure to pay Plaintiff Class through the Effective Date of this Agreement: and . . . [a]ll claims . . . that individuals in the Plaintiff Class are or were misclassified as independent contractors and/or were similarly situated to each other or any other current or former employee of Defendant . . . for the purposes of any class or collective action for wage related claims.

ECF No. 194, Ex. 1 ¶¶ 5.1.1-5.1.2.

This release provision is far from "limited." The release goes beyond the scope of the present litigation to include "any and all claims for wage payments" that either "were raised or that could have been raised," and it further states that the claims itemized in the release are illustrative but not exhaustive. Id. The exceptional breadth of the release provision directly contradicts the notion that the release of claims is limited.

The release provision that applies to the Representative Plaintiffs is even broader. It encompasses claims that go beyond the scope of the allegations in this litigation to include "all matters in law, in equity, in contract, or in tort, or pursuant to statute." Id. ¶ 6.1. The unlimited scope of the release provision is "improper." See In Mckeen-Chaplin v. Franklin Am. Mortgage Co., Case No. 10-cv-5243 SBA, 2012 WL 6629608, at *3 (N.D. Cal. Dec. 19, 2012) (rejecting an FLSA settlement agreement release with similar terms holding that "overly broad release provisions, which release a Defendant from all claims . . . including claims that are unrelated to the claims asserted in the complaint, are improper in FLSA and class action settlements"); see also Kakani v. Oracle Corp., Case No. 06-cv-06493, 2007 WL 1793774, at *2–3 (N.D. Cal. 2007) (rejecting a settlement in part because of the "draconian scope" of the proposed release, which, among other things, released the defendant from any and all claims that were asserted or could have been asserted in the complaint whether known or unknown).

Finally, the Agreement purports to "resolve all claims under Oregon wage statutes in addition to claims under the FLSA." Ex. 1 at 1. As will be discussed in more detail in section III.B., the release of these claims, which are brought under Rule 23, requires a showing that the requirements of Rule 23 are satisfied for settlement purposes, yet Plaintiffs do not make any such showing or explain how these class claims can be released without complying with the requirements of Rule 23.

### d.    Attorney's Fees and Costs

The FLSA requires that a settlement agreement include an award of reasonable fees and costs. 29 U.S.C. § 216(b) ("The court in such action *shall,* in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action")). The "case law construing what is a reasonable fee applies uniformly" to all federal

11

fee-shifting statutes.  Haworth v. State of Nev., 56 F.3d 1048, 1051 (9th Cir. 1995) (internal quotation marks omitted).

In determining what constitutes a reasonable fee, courts may consider twelve factors set forth in Kerr v. Screen Extras Guild, Inc., 526 F. 2d 67, 69-70 (9th Cir. 1975): "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases."

### i. Methods of Fee Determination

"[T]he district court has discretion . . . to choose either the percentage-of-the-fund or the lodestar method" to determine what constitutes a reasonable fee. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002).

"The 'lodestar method' is appropriate in class actions brought under fee-shifting statutes . . . where the relief sought – and obtained – is often primarily injunctive in nature and thus not easily monetized." In re Bluetooth Headset Prods. Liability Lit., 654 F. 3d 935, 941 (9th Cir. 2011) (citations omitted).  The lodestar figure is calculated by multiplying the number of hours expended by a reasonable hourly rate for the region and the experience of the lawyers.  Id. at 942.  "Though the lodestar figure is presumptively reasonable, the court may adjust it upward or downward" according to the reasonableness factors set out in Kerr.  Id. (citations and internal quotation marks omitted).

On the other hand, courts typically employ the percentage-of-recovery method where the benefit to a class is easily quantified by reference to a common fund.  Id.  25% is the benchmark for a reasonable fee award, though this may be adjusted to account for special circumstances.  Id. (citations and internal quotation marks omitted).  Ultimately, the district court must exercise its discretion to achieve a reasonable result.  Id.

Here, the Court finds that a combination of the lodestar method and the percentage method would be an appropriate method for determining the reasonableness of Plaintiffs' fee, because the goal of the litigation was to secure unpaid wages, as well as injunctive relief.  Accordingly, the Court will consider the proposed lodestar calculation in light of the fairness factors laid out in Kerr, and then will cross-check it against the percentage method.[6]  See Tarlecki v. bebe Stores, Inc., No. C 05-1777 MHP, 2009 WL 3720872 (N.D. Cal. Nov. 3, 2009) (using percentage method and then cross-checking it with lodestar).

### ii.  Lodestar Calculation

The Court first turns to whether the fees are appropriate for the region and the experience, skill and reputation of the lawyers.  See In re Bluetooth, F. 3d 935 at 942.  Weinhaus & Potashnick, Feinstein, Doyle, et al., and Spiro Law Corp. have submitted billing statements, which indicate each lawyer's hours, his or her hourly rate, and total amounts due, reproduced below:

| Firm/Attorney | Hours | Rate | Fees |
|---|---|---|---|
| **Firm: Weinhaus & Potashnick** | | | |
| Mark Potashnick, Attorney | 806.80 | $600.00 | $484,080.00 |
| Iman Ali, Paralegal | 31.4 | $125.00 | $   3,925.00 |
| | | | $488,005.00 |
| | | | |
| **Firm:  Feinstein, Doyle, et al.** | | | |
| William Payne | .90 | $575.00 | $      517.50 |
| Ellen Doyle | 494.37 | $575.00 | $284,262.75 |
| Edward Feinstein | 8.10 | $575.00 | $   4,687.50 |
| Pamina Ewing | 3.25 | $490.00 | $   1,592.50 |
| Joel Hurt | 10.00 | $435.00 | $   4,350.00 |
| Wyatt Lison | 1.25 | $395.00 | $      493.75 |
| Maureen Davidson-Welling | 181.40 | $295.00 | $ 53,513.00 |
| Yitzak Francus | 31.63 | $395.00 | $ 12,493.85 |
| McKean Evans | 0.85 | $260.00 | $      221.00 |
| Gregory Murray | 10.40 | $135.00 | $   1,404.00 |
| Sarah Martin | 2.80 | $135.00 | $      378.0 |
| Bryan Fox | 2.25 | $135.00 | $      303.75 |

---

[6] The Court notes that analysis of the "results obtained" Kerr factor coincides with the purpose of cross checking fees against a percentage fee structure.  Both emphasize the most critical factor in awarding attorney fees, the degree of success obtained. See Hensley v. Eckhart, 461 U.S. 424, 436 (1983).

United States District Court
Northern District of California

| Firm/Attorney | Hours | Rate | Fees |
|---|---|---|---|
| Gail Brown | 79.50 | $135.00 | $ 10,732.50 |
| Michael Georger | 82.70 | $135.00 | $ 11,164.50 |
| Tyson Himes | 13.75 | $135.00 | $  1,856.25 |
| Abel Adoh | 11.33 | $135.00 | $  1,529.55 |
|  |  |  | $389,470.40 |
|  |  |  |  |
| **Firm: Spiro Law Corp** |  |  |  |
| Ira Spiro | 94.9 | $700.00 | $66,430.00 |
| Jennifer Connor | 274.1 | $500.00 | $137,050.00 |
| Justin Marquez | 332.0 | $375.00 | $124,500.00 |
|  |  |  | $327,980.00 |
|  |  |  |  |
| **Total for All Firms:** |  |  | **$1,205,455.40** |

ECF No. 187 at 11-12.

Determining a reasonable or prevailing rate of compensation is "inherently difficult." Blum v. Stenson, 465 U.S. 886, 895 n. 11 (1984). Typically, attorneys provide statements in support of their hourly rates as well as evidence that the requested rates are in line with those in the community. Blum, 465 U.S. at 895 n. 11. Here, Plaintiffs' counsel do not provide any such supporting documentation, and for that reason, the Court cannot determine whether their rates are reasonable.

The Court is similarly unable to determine whether the hours spent are reasonable, because Plaintiffs' counsel have provided no evidence or itemized records to support the hours they worked. See Hensley v. Eckerhard, 461 U.S. 424, 434 (1983) ("The party seeking an award of fees should submit evidence supporting the hours worked").

### iii.     Kerr Factors

After the Court determines a baseline lodestar figure it must decide whether to enhance or reduce that figure based on the Kerr factors that are not already subsumed by the lodestar assessment. See Wren, 2011 WL 1230826 at *27. Here, the parties assert that a 31.9% recovery of lodestar fees would be appropriate. ECF No. 187 at 13. They do not explain how they arrived at this figure.

The Supreme Court has indicated that the extent of success is "a crucial factor in determining the proper amount of an award of attorney's fees." See Hensley v. Eckhart, 461 U.S.

14

424, 436 (1983). Accordingly, "where the plaintiff achieved only limited success, the court should award only that amount of fees that is reasonable in relation to the results obtained." Id. at 424.

Here, the monetary recovery for the class members represents approximately 50% of the back wages they are owed, but this recovery is limited to 102 out of millions of class members. Id., Ex. 1 ¶ 1.2-1.3. This is a significant limitation on the relief Plaintiffs originally sought, which may warrant a reduction in the fees requested. See Tarlecki, 2009 WL 3720872 at *4 (noting "small recovery of class members relative to potential class recovery" warrants a reduction from the standard rate).

### iv. Percentage of Fund Cross Check

The settlement payment is not presented as a common fund; instead, it is represented as two separate payments, one to the class members, and one to Plaintiffs' attorneys. ECF No. 187 at 5. In evaluating whether the requested fees are reasonable, the Court considers all payments that Defendants will make as coming out of one constructive common fund. See In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation, 55 F. 3d 768, 820-821 (3rd Cir. 1995); see also Johnston v. Comerica Mortg. Corp., 83 F. 3d 241, 246 (8th Cir. 1996).

Here, Defendants' have agreed to a total maximum payment of $585,507 (payment to the class members plus the payment to Plaintiffs' counsel in attorney's fees and costs). ECF No. 187, Ex. 1 ¶ 2.1. 25% of this recovery would be $146,376.75. Plaintiffs' counsel, however, seek $435,000, which is at least 74.3% of the total settlement payment, or 297.2 % of Plaintiffs' maximum potential recovery. ECF No. 187 at 13. The fees requested thus grossly exceed the 25% benchmark.

### e. Incentive Payments

Plaintiffs Otey and Greth seek $13,700 and $25,000 in incentive payments, respectively. ECF No. 187 at 11. They argue that these figures allocate each of them $10,000 in incentive fees, with the rest of the sum going toward their compensatory award. Id.

Courts have discretion to award incentive fees to named class representatives. Rodriguez v. West Publishing Corp., 563 F. 3d 948, 958 (9th Cir. 2009) (citations omitted). These fees "are

intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Id. at 958-959; see also Staton, 327 F. 3d at 977 (in assessing the propriety of an incentive award, courts consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions,…[and] the amount of time the plaintiff expended in pursuing the litigation.").

Plaintiffs argue that their requested awards are justified because they forewent earlier individual settlement offers to pursue this collective action. ECF No. 187 at 11. Those offers were for $2,148.00 to Otey and $15,000 to Greth. Id. These rejected offers represent a financial risk, though an exact calculation of that risk is difficult to undertake given the many factors that enter into such a decision, including the possibility of greater compensation in the event of success at trial or a larger settlement offer. Plaintiffs also contend that they responded to discovery, traveled to and participated in depositions, and participated in mediation. Id. All of these sacrifices benefitted other members of the collective action who did not devote their own time to this suit.

The Court cannot conclude that the requested awards are reasonable, however, because Plaintiffs do not provide any information as to how much money each class member is expected to receive, or what the average recovery for each class member will be. See Bolton v. U.S. Nursing Corp., Case No. 12-cv-4466 LB, 2013 WL 5700403, at *6 (N.D. Cal. Oct. 18, 2013) (awarding sole representative plaintiff $10,000 where the total recovery was $1,700,000, and over 200 class members received in excess of $1,500); Harris v. Vector Mktg. Corp., C 08-5198 EMC, 2012 WL 381202 at *7-8 (N.D. Cal. Feb. 6, 2012) (awarding $12,500 in a $13,000,000 settlement in which representative plaintiff spent more than 100 hours working on the case, and her family and friends were subpoenaed).

### B. Class Action Claims

#### 1. Certification

In addition to releasing their collective action claims under the FLSA, Plaintiffs have agreed to release their Rule 23 class claims under Oregon's labor laws. When an FLSA collective action and a Rule 23 class action are proceeding in the same case, courts require the parties to

show that the certification requirements for a Rule 23 class action are satisfied. Murillo v. Pac. Gas & Elec. Co., 266 F.R.D. 468, 472-74 (E.D. Cal. 2010); see also Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997) (providing that a district court may certify a class action under Federal Rule of Civil Procedure 23 if the parties seeking certification satisfy the four requirements identified in Rule 23(a) as well as one of the three subdivisions of Rule 23(b)).

Here, Plaintiffs do not address the issue of certification with respect to their Rule 23 claims in their motion or in the settlement agreement. Accordingly, the Court cannot conclude that the class claims at issue satisfy the requirements of Rule 23.

### 2. Fair, Adequate, and Reasonable

In examining a pre-certification settlement agreement, a district court "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 947 (9th Cir. 2011). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Hanlon, 150 F.3d at 1026 (citation omitted). A court may not "delete, modify or substitute certain provisions" of the settlement; rather "[t]he settlement must stand or fall in its entirety." Id.

Preliminary approval of a settlement and notice to the proposed class is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval." In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citation omitted).

As discussed in the previous section, the factors that courts consider when evaluating a collective action settlement are essentially the same as those that courts consider when evaluating a Rule 23 settlement. Accordingly, the Court's conclusions with respect to the fairness and reasonableness of the settlement of the collective action claims also apply to the fairness and reasonableness of the settlement of the Rule 23 class claims, and the Court therefore incorporates them here by reference.

1    In addition, the Court finds that the proposed notice is deficient, because it does not give
2 the class members the option to opt out of the settlement to the extent that they do not want to
3 release their Rule 23 class claims.  It also does not instruct the class members as to how to object
4 to the settlement.

## IV.     CONCLUSION

Plaintiffs' motion for approval of the proposed settlement is DENIED WITHOUT PREJUDICE.  Plaintiffs may file a new motion that addresses the deficiencies identified in this order within 90 days of the date this order is filed.

To provide for the further management of the case in the event that a new motion is not forthcoming, the Court hereby sets a case management conference on August 20, 2014 at 2:00 p.m.  A Joint Case Management Statement must be filed at least ten court days beforehand.  If Plaintiffs file a new motion for settlement approval by July 14, 2014, they may also request the Court to vacate the August case management conference.

**IT IS SO ORDERED**.

Dated:  April 15, 2014

_____
JON S. TIGAR
United States District Judge