William T. Payne (SBN 90988)
Ellen M. Doyle (PA Bar #21854)
(admitted *pro hac vice*)
Edward J. Feinstein (PA Bar #29718)
FEINSTEIN DOYLE PAYNE
& KRAVEC, LLC
429 Forbes Avenue, 17th Floor
Pittsburgh, PA 15219
412-281-8400 (T), 412-281-1007 (F)
wpayne@fdpklaw.com
edoyle@fdpklaw.com
efeinstein@fdpklaw.com

Mark A. Potashnick
(admitted *pro hac vice*)
WEINHAUS & POTASHNICK
11500 Olive Blvd., Suite 133
St. Louis, MO 63141
314-997-9150 (T), 314-997-9170 (F)
markp@wp-attorneys.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| CHRISTOPHER OTEY, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CROWDFLOWER, INC., LUKAS BIEWALD and CHRIS VAN PELT,<br><br>Defendant. | Case No. 3:12-cv-055524-JST/MEJ<br><br>**COMBINED NOTICE OF HEARING AND MOTION FOR APPROVAL OF PARTIES *MODIFIED* FLSA COLLECTIVE ACTION SETTLEMENT, FINAL COLLECTIVE ACTION CERTIFICATION FOR SETTLEMENT PURPOSES ONLY, AND AUTHORIZATION FOR THE PARTIES TO EFFECTUATE THEIR SETTLEMENT, AND MEMORANDUM IN SUPPORT THEREOF**<br><br>**Date:**<br>**Time:**<br>**Dept:** Courtroom 9, 19th Floor |

## I. HEARING NOTICE AND RELIEF REQUESTED

Plaintiffs will call for hearing their Motion for Approval of their *Modified* FLSA Collective Action Settlement, Final Collective Action Certification for Settlement Purposes Only, and Authorization for the Parties to Effectuate their Settlement at 2:00 p.m. on October 30, 2014 in

Courtroom 9 of the U.S. District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, 94102, or as soon thereafter as Plaintiffs may be heard.

Plaintiffs request approval of their FLSA collective action settlement, final collective action certification for settlement purposes only, and authorization to effectuate their settlement.

## II. INTRODUCTION AND OVERVIEW OF THE PARTIES' NEW SETTLEMENT

Plaintiffs alleged that Defendants failed to pay minimum wage to their on-line "crowdsourced" workers in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201 *et seq.* Defendants deny that they violated the FLSA, contend among other things that they were under no duty to pay minimum wage to the individuals that performed tasks made available on the internet because those individuals are independent contractors, and, in any event, Defendants contend that they did in fact pay an amount that equals or exceeds the minimum wage to certain contractors depending on the task at issue. The crux of this dispute is whether the workers are actually employees entitled to minimum wage or independent contractors.

On April 15, 2014, this Court denied a previous motion to approve the parties' settlement and expressed various concern about those proposed terms. (Doc. 195). The parties have taken the Court's concerns to heart and have negotiated a new settlement which addresses those concerns:

**Concern 1: Reduced Scope of the Class**

The parties have now negotiated the right to assert claims by all workers who received at least $5.00 cash compensation in exchange for performing tasks on Amazon Mechanical Turk ("AMT") managed by Defendant Crowdflower. The size of that class is estimated at 19,992, which is much larger and comprehensive than the previous settlement class proposed by the parties. The size of the Provisional Settlement Class is reduced from the estimated size of the collective action conditionally certified by the Court, because a large percentage of Crowdflower's on-line workforce failed to perform at least $5.00 worth of tasks. . Reducing the $5.00 threshold for participation would create unduly burdensome and costly administration, and would not be cost effective relative to the majority of recoveries likely to be disbursed. Thus, the new class size is both reasonable and practical. Notably, the new class size of 19,992 dwarfs the previously-negotiated 100-worker class size.

**Concern 2: Notice to the Class**

On August 27, 2013, this Court conditionally certified Plaintiffs' FLSA claim to proceed as a collective action, ordered Defendants to disclose a class list within 45 days, and ordered Plaintiffs to disseminate notice within 30 days of receiving that class list. Doc. 167, at 9-10. On September 26, 2013, the parties sought a continuance of litigation activities, other than production of the class list, pending the parties' settlement efforts including a mediation scheduled for October 18, 2013. Docs. 176 & 177. The parties mediated on October 18, 2013, culminating in execution of a term sheet. On October 22, 2013, the parties again sought a continuance of all litigation activities to complete the settlement documents. Docs. 179 & 180.

**Concern 3: Relief to the Class**

The new settlement provides recovery between $.47 and $.75 per each $1.00 received from Defendants. Because Defendants paid about half of the minimum wage on an hourly basis, Plaintiffs believe that a recovery of $1.00 for each $1.00 earned from Defendants would approximately provide relief for all unpaid minimum wages. However, substantial reduction of such relief sought is reasonable considering the merits and risks of the various claims and defenses. The parties' settlement provides the opportunity for meaningful relief *now* for numerous low-wage earning workers, rather than the mere possibility of unknown relief at some uncertain future date. Also, Defendants' greatly impacts to size of the overall recovery.

The Court should consider that (1) the named Plaintiffs and their counsel substantially compromised their fees and incentive awards in an effort to provide far more recovery for the class and (2) the much larger class size means that the recovery must be divided into more shares.

**Concern 4: Scope of Releases**

The release is now limited to only FLSA claims "arising out of or related to any of the claims or allegations asserted, or which could have been asserted, in the Action." Only Provisional Class Members who file claims enter into any waiver or release. Persons who desire to file their own

claims and / or retain their rights need not file a claim for recovery in this action. If they choose not to file any such claim, then they waive and release nothing.

Further, the two named Plaintiffs, Christopher Otey and Mary Greth, will sign general releases in exchange for their service awards. As part of his general release of claims, Plaintiff Otey will waive his *individual* claims under Oregon law.[1]

**Concern 5: Amount of Attorneys' Fees**

Attorneys' fees are have been substantially reduced to equate to exactly 25% of the Gross Settlement Amount. Plaintiffs' law firms, Feinstein, Doyle, Payne & Kravec and Weinhaus & Potashnick, herewith submit detailed time records.

**Concern 6: Amount of Incentive Payments**

The named Plaintiffs' service awards have been substantially reduced to $6,000.00 for Plaintiff Otey and $5,000.00 for Plaintiff Greth. The extra $1,000.00 to Plaintiff Otey is paid in consideration of his waiver of his *individual* Oregon wage claims. As stated above, the parties' project that Class Members' recoveries will range from a possible low of $2.35 to a possible high of $5,796.77. Ms. Greth's recovery as a member of the Settlement Class is estimated to be between $939.23 and $1,500.06, depending on the amount of redistributed unclaimed funds. Mr. Otey's recovery as a member of the Settlement Class is estimated to be between $11.01 and $17.58, depending on the amount of that redistribution.

Based on these changes, Plaintiffs now respectfully move the court to approve their new settlement.

Where, as here, plaintiffs pursue private enforcement of the FLSA, the standard for approval is straightforward: "if the settlement reflects 'a fair and reasonable resolution of a *bona fide* dispute,' the court may approve it." *Deane v. Fastenal Co.*, 2013 U.S. Dist. LEXIS 163330, *7 (N.D. Cal. Nov. 14, 2013) (quoting *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354-55 (11th Cir. 1982)). Because the parties' new settlement clearly meets the applicable judicial standard for

---

[1] There is no need for Rule 23 analysis because no Rule 23 class claims under Oregon law are settled. Rather, such claims are dismissed without prejudice (except for Otey, who will release his individual wage claims with prejudice).

4

cases brought under the FLSA, and because it addresses the Court's concerns expressed in its prior Order, Plaintiffs respectfully request that this Court approve the Settlement Agreement, thereby initiating the process by which Class Members may participate in the benefits conferred by this settlement.

The material terms of the settlement are memorialized in a written settlement agreement, which is contemporaneously filed as "Exhibit 1" hereto. The parties proposed class notice and claim form are attached to the proposed settlement agreement as "Exhibit 4" and "Exhibit 3," respectively. A proposed Order is attached hereto as "Exhibit 2."

### III. PROCEDURAL HISTORY

Plaintiff Otey filed his Complaint on October 26, 2012 (Doc. 1), filed his First Amended Complaint on December 20, 2012 (Doc. 27), and, together with Plaintiff Mary Greth, filed their Second Amended Complaint on June 17, 2013 (Doc. 121). Plaintiffs alleged on behalf of themselves and a class of all individuals in the US and its territories that had performed CrowdFlower tasks that Defendants violated the minimum wage provision of the FLSA (*Id.,* Count I) and Plaintiff Otey alleged that Defendants violated Oregon's minimum wage law (*Id.,* Count II) and violated Oregon's wage payment law (*Id.,* Count III). Defendants answered each Complaint filed denying the material allegations.

Following the parties' Rule 26(f) conference, both sides propounded and responded to extensive written discovery requests including interrogatories, requests for production and requests for admissions. Both sides deposed the key witnesses, including Christopher Otey, Mary Greth and Lukas Biewald, CrowdFlower's CEO and a named defendant. Additionally, both sides extensively investigated this case, which for Plaintiffs included examination, analysis and cataloging of substantial publicly available information regarding Defendants' business.

The docket sheet clearly shows that, since inception, both sides vigorously litigated this case and they have contested nearly every conceivable issue.

### IV. THE KEY SETTLEMENT TERMS

The key terms of the parties' settlement, all of course subject to Court approval, are:

5

    A.  The Gross Settlement Amount[2] is $585,507.00.  (Ex. 1, § I(31)).

    B.  The Net Settlement Amount available for claims of Provisional Class Members is estimated to be $336,693.00.  The Net Settlement Amount shall equal the Gross Settlement Amount less Claim Administration Expenses; Class Representative Service Awards, the AMT Subpoena Cost, Attorney's Fees and Litigation Costs. The parties estimate that the Net Settlement Amount will be $336,693.00.  (*Id.*, § I(33)).

    C.  Dahl Administration will serve as the Claims Administrator in this case. Based on an estimate of the anticipated number of Provisional Settlement Class members who are likely to submit Qualified Claims, the Claims Administration Expenses will not exceed $29,437.00. (*Id.*, § I(11)).

    D.  Defendants will not oppose Plaintiffs' requests for Class Representative Service Awards in an amount not to exceed $5,000.00 for Named Plaintiff Greth and $6,000.00 for Named Plaintiff Otey in recognition of their time and efforts incurred in this litigation and in exchange for general releases.  (*Id.*, § (20)).

    E.  The parties will subpoena the names and contact information of Provisional Class Members from AMT.  Provided that in the event either Party believes that any costs incurred in obtaining a response to the subpoena which are over $10,000.00 are unreasonable or excessive, that Party may notify the other Party that it seeks to terminate this Stipulation of Settlement.  Upon such notification, the Parties agree to negotiate in good faith regarding whether the costs are unreasonable or excessive such that the Stipulation of Settlement should be terminated.  If after ten (10) business days such negotiations prove unsuccessful, the Party seeking termination may apply to the Court for an order terminating the Settlement.  (*Id.*, § III(F)).

    F.  Defendants will not oppose Plaintiffs' request for Attorneys' Fees in an amount not to exceed $146,377.00.  This amount represents 25% of the Gross Settlement Amount. (*Id.*, § I(2)).

---

[2] As used herein, capitalized terms have the same meaning as set forth in the parties Settlement Agreement.

1	  G. Defendants will not oppose Plaintiffs' request for Litigation Costs in an
2	amount not to exceed $52,000.00. (*Id.*, § I(32)).
3	  H. Solely for the purpose of effectuating this Settlement, and subject to Court
4	approval, the Parties have stipulated to the decertification of the Conditionally Certified Collective
5	Action and the certification of a Provisional Settlement Class comprised of all contributors who
6	performed CrowdFlower managed tasks on behalf of customers posted on AMT at any time from
7	October 26, 2009, through the Approval Date, who accessed said tasks from an IP address located in
8	the United States or any of its territories (specifically, American Samoa, Guam, U.S. Virgin Islands,
9	Puerto Rico, and the Northern Mariana Islands), and whose cumulative earnings from performing
10	said tasks during this period are equal to or greater than $5.00 (Five Dollars). Defendants estimate
11	that there are approximately 19,992 members in the Provisional Settlement Class. (*Id.*, § I(36)).
12	  I. The parties estimate that at a 100% participation rate by Provisional
13	Settlement Class Members, the estimated range of Settlement Awards is $2.36 to $3,653.96, which
14	is the equivalent of approximately $.47 recovery for each dollar of their AMT Earnings. The
15	formula used to determine each Settlement Class Member's award is:
16	   i. The Net Settlement Amount shall be divided by the aggregate AMT
17	    Earnings received by all Provisional Settlement Class Members;
18	   ii. The resulting ratio from subsection (i) shall be multiplied by the AMT
19	    Earnings of the Settlement Class Member to arrive at each particular
20	    Settlement Class Member's Settlement Award.
21	Further, any unclaimed funds will be redistributed to claimants using the same pro-rata formula so
22	that they receive up to a maximum of $.75 per dollar of their AMT Earnings. Based on the maximum
23	amount of redistributed funds, the estimated range of Settlement Awards is $3.75 to $5,809.32 of
24	their AMT Earnings. (*Id.*, §§ I(45) & V(E)).
25	  J. Any amounts remaining after such redistribution shall revert to CrowdFlower.
26	(*Id.*, § V(E)).
27	  K. The Released Claims encompass any and all federal law claims, obligations,
28	demands, actions, rights, causes of action and liabilities, of whatever kind, nature, character and

description, whether known or unknown, whether anticipated or unanticipated, that arose or accrued at any time during the period from October 26, 2009, through the Release Date, for any type of wages, premium pay, damages, statutory damages, unpaid costs, statutory penalties, civil penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, arising out of or related to any of the claims or allegations asserted, or which could have been asserted, in the Action, under the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.* ("FLSA"), by Settlement Class Members. (*Id.*, I(39)).

        L.    The claims asserted under Oregon law will be dismissed without prejudice. (*Id.*, § I(30)).

## V. ARGUMENT

Unlike settlements under Fed. R. Civ. P. 23, FLSA settlements are not subject to a two-stage process of preliminary approval followed by final approval, and no final fairness hearing is required. *See, e.g., Beasely v. GC Servs., LP.*, Case No. 4:09CV1748 (CDP) (E.D. Mo. Oct. 4, 2011) (finally approving FLSA settlement based on motion to approve filed only 6 days earlier on September 28, 2011 (Doc. 193)). However, Court approval of this collective action settlement is necessary to effectuate a valid and enforceable release of Class Members' FLSA claims. *See, e.g., Deane*, 2013 U.S. Dist. LEXIS at *6-7 (observing that "the Eleventh Circuit and numerous district courts within the Ninth Circuit have determined that settlement of an action under the FLSA must either be supervised by the Secretary of Labor or approved by a district court, based upon the legislative purposes underpinning the FLSA.") (citing *Lynn's Food Stores*, 679 F.2d at 1353; *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, 2012 U.S. Dist. LEXIS 179635, *6 n.3 (N.D. Cal. Dec. 19, 2012) (collecting cases)).

Where, as here, the litigation arises from a private enforcement action under Section 216(b) of the FLSA, 29 U.S.C. § 216(b), the standard for approval is straightforward: "if the settlement reflects 'a fair and reasonable resolution of a *bona fide* dispute,' the court may approve it." *Deane*, at *7 (quoting *Lynn's Food Stores*, 679 F.2d at 1354-55). The parties' proposed settlement should be approved as it reflects a reasonable compromise of the parties' claims and defenses, considering all of the risks and the limited assets available to satisfy a settlement or judgment.

8

### A. The Parties Had a *Bona Fide* Dispute

There is no question that the proposed settlement is the product of contested litigation. Plaintiffs pled detailed factual allegations describing Defendants' allegedly unlawful pay practices, and produced evidence to support their claims. Defendants denied practically all of Plaintiffs' material factual allegations, asserted an array of affirmative defenses that they argued would bar Plaintiffs' claims in whole or in part, and presented evidence contradicting Plaintiffs' allegations and supporting their defenses.

As explained above, the parties conducted extensive factual investigations, propounded thorough written discovery, deposed key witnesses, and reviewed document productions. Additionally, both sides scoured the internet for evidence to support their respective positions. Further, the parties performed considerable legal analysis of the various issues implicated in this suit, including fully analyzing and extensively briefing the issues pertaining to collective action certification. Notably, the crux of this litigation entailed application of employee / independent contractor factors (*Donovan v. Sureway Cleaners,* 656 F.2d 1368, 1370 (9th Cir. 1981)) to a new model for distributing and monitoring work over the internet. As the Court is aware, both sides aggressively pursued a variety of motions.

The settlement of this lawsuit resulted only after prolonged mediation, direct follow-up negotiations between the parties over the next month, consideration of this Court's concerns regarding the parties' original settlement, and negotiation of a new settlement which addresses each of those concerns. Prior to the settlement, the Parties had a full opportunity to analyze the pertinent factual and legal issues and assess the strengths and weaknesses of the claims and defenses at issue, and Defendants' ability to pay a settlement. Accordingly, the Court should readily conclude that the proposed settlement was the product of a *bona fide* dispute and vigorously-contested litigation.

### B. The Settlement is Fair and Reasonable

The second issue involves a review of the fairness and reasonableness of the proposed settlement.

Plaintiffs allege that Defendants failed to pay minimum wage to their on-line workers because those workers are "employees" within the scope and meaning of the FLSA. Defendants adamantly deny that allegation. In any event, if Plaintiffs prove their allegations, then Defendants would be faced with the prospect of a significant monetary verdict in Plaintiffs' favor, plus the duty to pay both sides' attorney fees and costs. If Defendants are correct, then Plaintiffs faced a potential dismissal of their claims and no recovery.

Significantly, Plaintiffs faced the real probability of no recovery even if they prevailed at trial and upon appeal due to availability of assets to satisfy a judgment or settlement. Due consideration was given to the fact that CrowdFlower is a start-up company, and like any other start-up company a significant adverse judgment would likely be uncollectable. It is the opinion of Plaintiffs' counsel that the settlement value and payment plan is a reasonable result given the risk that too high of a dollar burden could prevent workers from obtaining any remedy whatsoever. Had Plaintiffs pushed for greater recovery, they likely would have forced Defendants out of business either through a judgment or crippling debt.

Meanwhile, the proposed settlement has the salutary effect of providing substantial relief to class members and eliminating the inherent risks both sides may bear if this complex litigation continued to resolution on the merits. The settlement also provides reasonable compensation to the workers who performed the most work during the recovery period.

The familiar adage that "public policy favors settlements" is particularly true in complex cases, such as this, where substantial resources can be conserved by avoiding the time, cost and rigor of protracted litigation. *See Jacobs & Crumplar v. Davey Jones Archaeology, Ltd.*, 1995 U.S. App. LEXIS 37168, *5 n.2 (9th Cir. 1995) ("Public policy favor settlement of cases whenever possible.) (citing *Decanay v. Mendoza*, 573 F.2d 1075, 1078 (9th Cir. 1978)); *Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (recognizing policy of encouraging settlement of FLSA litigation). There can be no doubt that substantial time and money, both for this Court as well as the Parties, has been conserved in fairly settling now as opposed to continuing litigation.

As outlined above, the parties adamantly disagree about the merits of Plaintiffs' claims and the viability of the various defenses. Plaintiffs faced risk at several stages including Rule 23 class certification of the Oregon claims, FLSA class decertification, dispositive motions, trial and appeals. Even if successful, Plaintiffs faced the risk of no recovery or modification of business practices. Although the range of potential recovery at trial may have been greater than obtained through this settlement, it is equally possible that such recovery would have been less, or nothing at all. As well, a large award would likely have been uncollectable. Continuing litigation would have been extremely time-consuming and expensive for both sides. Consequently, this settlement provides a certain result and value now, and immediate protection of on-line "crowdsourced" workers, as opposed to a speculative result that may occur years from now. These substantial benefits weigh heavily in favor of the Court's approval of the parties' settlement.

During this highly-contested litigation, Plaintiffs' counsel have gained a comprehensive knowledge of the facts, legal issues and risks relating to the respective claims and defenses and have acquired ample evidence on which to assess the proposed settlement. Based on their knowledge of the facts and the applicable law, as well as their extensive experience in FLSA actions and other class litigation, Plaintiffs' attorneys believe the settlement is fair, reasonable, and adequate. "Courts give weight to counsels' opinions regarding the fairness of a settlement, when it is negotiated by experienced counsel." *Clesceri v. Beach City Investigations & Protective Servs., Inc.*, 2011 U.S. Dist. LEXIS 11676, *28-29 (C.D. Cal. Jan. 27, 2011); *In re Wash. Pub Power Supply Sys. Sec. Litig.*, 720 F.Supp. 1379, 1387 (D. Ariz. 1989) ("Counsel's opinions warrant great weight both because of their considerable familiarity with this litigation and because of their extensive experience in similar actions."). Additionally, named Plaintiffs Otey and Greth have executed the Settlement Agreement indicating their approval of the agreement. Accordingly, this Court should conclude that the proposed settlement reflects a fair and reasonable resolution of a *bona fide* dispute over FLSA coverage and approve the settlement.

**C.    Incentive Payments Are Appropriate**

"Incentive awards are fairly typical in class action cases." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (citing 4 William B. Rubenstein et al., *Newberg on Class Actions* § 11:38 (4th ed. 2008); Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 U.C.L.A. L. Rev. 1303 (2006)). They "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* Pursuant to the settlement, Plaintiffs seek reasonable incentive awards for the two named Plaintiffs in amount of $6,000.00 for Mr. Otey and $5,000.00 to Ms. Greth.

Such incentive awards suit the Ninth Circuit's recognized purposes for incentive awards. Both Mr. Otey and Ms. Greth provided invaluable assistance in pursuing the claims. They both spent many hours explaining the process of working for Defendants to their counsel in great detail. They both responded to comprehensive written discovery, prepared for depositions, sat for depositions, and participated in a lengthy and trying mediation process.    Mr. Otey also relinquished his laptop computer for several days in order to make it available for forensic examination. Mr. Otey traveled from Oregon to San Francisco three times for his deposition, the FLSA conditional certification hearing, and mediation. Ms. Greth traveled from her home in southern Georgia to Atlanta for her deposition. Moreover, both of the named Plaintiffs rejected individual offers because they were focused on achieving reforms intended to help other individuals that perform tasks made available by CrowdFlower on the internet. Thereby, the named Plaintiffs both demonstrated selflessness for a greater cause. The named Plaintiffs have also risked their reputations, as both have been named in several news stories which are publicly available to prospective employers. Also, Mr. Otey attempted doggedly to secure an attorney willing to represent him and others in this novel matter, until he found the undersigned. These reasons justify the incentive awards sought.

Notably, this District has approved incentive awards of $10,000.00 and higher. *See, e.g., Bolton v. U.S. Nursing Corp.*, 2013 U.S. Dist. LEXIS 150299, *18-19 (N.D. Cal. Oct. 18, 2013) (approving $10,000.00 incentive award); *Harris v. Vector Mktg. Corp.*, 2012 U.S. Dist. LEXIS 13797, *24 (N.D. Cal. Feb. 6, 2012) (approving $12,500.00 incentive award); *Lemus v. H&R Block Enterp., LLC*, 2012 U.S. Dist. LEXIS 11906, *19-21 (N.D. Cal. Aug. 22, 2012) (approving $15,000.00 incentive awards to two named plaintiffs); *Glass v. UBS Fin. Servs., Inc.*, 2007 U.S. Dist. LEXIS 8476, *50-52 (N.D. Cal. 2007) (approving incentive awards of $25,000.00 to each to four plaintiffs).

### D. Attorney Fees and Costs Are Appropriate

From the inception of this suit, Plaintiffs' attorneys assembled an experienced team of lawyers that are responsible for this positive result. This case presents a myriad of legal and factual complexities, not the least of which involves understanding the intricacies and methods of a high-tech venture and applying the employee / independent contractor factors to a relatively new industry and business model. Plaintiffs' counsel were able to obtain a conditionally certified FLSA collective action class, and win myriad legal issues presented to the Court through comprehensive briefing.

The fee recovery sought is only a fraction of the lodestar. Excluding time spent pursuing this matter by the firm of Spiro Law Corp, Plaintiff's attorneys have dedicated considerable time to pursuing this litigation. The total attorney's fees incurred by Plaintiff's counsel to date exceed $1.2 Million:

| Firm: Weinhaus & Potashnick | Hours | Rate | Fees |
|---|---|---|---|
| Mark Potashnick, Attorney | 806.80 | $600.00 | $535,620.00 |
| Iman Ali, Paralegal | 31.4 | $125.00 | $  3,925.00 |
|  |  |  | $539,545.00 |
|  |  |  |  |
| Firm: Feinstein, Doyle, et al. |  |  |  |
| William Payne | .90 | $575.00 | $     517.50 |
| Ellen Doyle | 494.37 | $575.00 | $284,262.75 |
| Edward Feinstein | 8.10 | $575.00 | $  4,687.50 |
| Pamina Ewing | 3.25 | $490.00 | $  1,592.50 |
| Joel Hurt | 10.00 | $435.00 | $  4,350.00 |
| Wyatt Lison | 1.25 | $395.00 | $     493.75 |
| Maureen Davidson-Welling | 181.40 | $295.00 | $ 53,513.00 |
| Yitzak Francus | 31.63 | $395.00 | $ 12,493.85 |
| McKean Evans | 0.85 | $260.00 | $     221.00 |
| Gregory Murray | 10.40 | $135.00 | $  1,404.00 |
| Sarah Martin | 2.80 | $135.00 | $     378.0 |

13

| | | | |
|---|---|---|---|
| Bryan Fox | 2.25 | $135.00 | $ 303.75 |
| Gail Brown | 79.50 | $135.00 | $ 10,732.50 |
| Michael Georger | 82.70 | $135.00 | $ 11,164.50 |
| Tyson Himes | 13.75 | $135.00 | $ 1,856.25 |
| Abel Adoh | 11.33 | $135.00 | $ 1,529.55 |
| | | | $389,470.40 |
| | | | |
| Firm: Spiro Law Corp | | | |
| Ira Spiro | 111.1 | $700.00 | $77,770.00 |
| Jennifer Connor | 300.3 | $500.00 | $150,150.00 |
| Justin Marquez | 332.0 | $375.00 | $124,500.00 |
| | | | $352,420.00 |
| | | | |
| Total for All Firms: | | | $1,205,455.40 |

The time records of all three firms are attached as Exhibits 3 through 5. The total costs

The total costs incurred to date are $50,457.34 as follows:

| | |
|---|---|
| Airfare | $8,776.45 |
| Ground Trans./Parking | $1,319.56 |
| Communications | $847.21 |
| Copying | $2,876.55 |
| Court Fees. | $1,320.00 |
| Process Service | $450.00 |
| Depositions / Transcription | $6,839.80 |
| ESI Mgmt. & Storage | $8,745.00 |
| Hotel | $5,049.26 |
| Meals | $578.74 |
| Postage / Delivery | $1,155.93 |
| Scanning | $41.10 |
| Computer Research | $6,319.40 |
| Med. Fee | $5,388.34 |
| Consulting Fees | $750.00 |
| | $50,457.34 |

Additionally, Plaintiffs' counsel will incur additional expenses in attending the settlement approval hearing scheduled for October 30, 2014. In sum, Class Counsel only seek to recover a small percentage of their fees and costs incurred.

    Notably, at the time of settlement, the substantial risks and uncertainties of continued litigation made it far from certain that an ultimate recovery would be obtained for a class, or that any fees or costs would be recovered. Further, the complexity, risks and novelty of this action plainly support the fee requested. In sum, Plaintiffs' attorneys accepted great risk in pursuing this novel claim.

## VI. CLASS NOTICE AND CLAIM FORM

The attached proposed class notice adequately informs the class members of their rights under the settlement agreement, the procedure to claim their respective shares of the settlement, and the consequences of both filing and declining to file a claim. The proposed notice is written to be easily understood by the class. Moreover, the notice directs class members to contact Plaintiffs' attorneys with any questions or concerns.

## VII. CONCLUSION

The parties' settlement should be approved as it constitutes a fair and reasonable resolution of a *bona fide* dispute between the parties. Plaintiffs believe that such agreement will substantially and immediately protect the minimum wage.

WEINHAUS & POTASHNICK
/s/ Mark A. Potashnick
MARK A. POTASHNICK
Attorneys for Plaintiffs

<h1 style="text-align:center">PROOF OF SERVICE</h1>

STATE OF MISSOURI        )
                         ) ss.:
COUNTY OF ST. LOUIS      )

I am employed in the County of St. Louis, State of Missouri. I am over the age of 18 and am not a party to the within action. My business address is 11500 Olive Blvd., Suite 133, St. Louis, Missouri, 63141.

On September 2, 2014, using the Northern District of California's Electronic Case Filing System with the ECF ID registered to Mark Potashnick, I filed and served the document(s) described as:

**PLAINTIFFS' NOTICE OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AND MOTION TO STRIKE CERTAIN DEFENSES**

[X]  **BY ELECTRONIC TRANSMISSION USING THE COURT'S ECF SYSTEM:**

I caused the above document(s) to be transmitted by electronic mail to those ECF registered parties listed on the Notice of Electronic Filing (NEF) pursuant to Fed. R. Civ. P. 5(d)(1) and by first class mail to those non-ECF registered parties listed on the Notice of Electronic Filing (NEF). *"A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed. R. Civ. P. 5(d)(1). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."*

I declare that I am admitted *pro hac vice* in this action.

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed on September 2, 2014, at St. Louis, Missouri.

                      s/ Mark Potashnick                .
                      Mark Potashnick