UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER OTEY, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>CROWDFLOWER, INC., et al.,<br><br>    Defendants. | Case No. 12-cv-05524-JST<br><br>**ORDER DENYING MOTION FOR APPROVAL OF PARTIES' MODIFIED FLSA COLLECTIVE ACTION SETTLEMENT WITHOUT PREJUDICE**<br><br>Re: ECF No. 207 |

In this conditionally certified action for violations of the Fair Labor Standards Act ("FLSA"), Plaintiffs move for approval of their modified settlement agreement, final collective action certification for settlement purposes, and authorization to effect their settlement agreement. ECF No. 207 at 1-2. Defendants have filed a statement of nonopposition pursuant to Civil Local Rule 7-3(b). ECF No. 208. For the reasons set forth below, the motion is DENIED WITHOUT PREJUDICE.

## I. BACKGROUND

### A. The Parties and Claims

Defendant CrowdFlower, Inc. is an internet-based company that uses technology to distribute small and simple repetitive tasks to individuals in exchange for pay on a per-task basis. Second Am. Compl. ("SAC") ¶¶ 4, 8, 16-20, ECF No. 121. CrowdFlower gets projects from various customers, breaks the projects into pieces, and assigns the pieces to contributors. ECF No. 46, Ex. 1. The tasks that CrowdFlower assigns typically take a few minutes to complete and do not require any special skill. SAC ¶ 22; ECF No. 46, Ex. 5 at 2. The most common type of task is verifying business listings. ECF No. 46, Ex. 3 at 11. This distribution of small tasks to individuals is commonly referred to as "crowdsourcing." SAC ¶ 16. Defendants Lukas Biewald and Chris Van Pelt are the Chief Executive Officer and Chief Technology Officer of

CrowdFlower, respectively. Id. ¶¶ 9-10.

Named Plaintiffs Christopher Otey and Mary Greth performed tasks for CrowdFlower through a website called Amazon Mechanical Turk ("AMT"). ECF No. 208-2 ¶¶ 6-8. The gravamen of their Complaint is that CrowdFlower pays its contributors, whom it classifies as independent contractors, less than the minimum wage under FLSA, 29 U.S.C. § 206(a), and Oregon law, ORS §§ 653.025 and 652.150. SAC ¶¶ 5, 36. Plaintiffs bring their Oregon law claims as class action claims under Rule 23. Id. ¶¶ 76-83.

### B. Procedural Background

On August 27, 2013, the Court granted Plaintiffs' Motion for Conditional Certification of a Collective Action, and conditionally certified the following class:

> All persons who performed crowdsourced work in the United States and its territories in response to any online request by CrowdFlower for crowdsourced work, or any online notification by CrowdFlower that crowdsourced work was available at any time from three years prior to the date on which notice is issued to the date on which notice is issued.

ECF No. 167 at 8. In the same order, the Court approved Plaintiffs' proposed notice and consent form and ordered that notice should be emailed to the class members and posted online. Id. at 9-10.

On January 24, 2014, the Plaintiffs filed a Motion for Approval of FLSA Collective Action Settlement, Final Collective Action Certification for Settlement Purposes Only, and Authorization for the Parties to Effectuate Their Settlement. ECF No. 187. The Court denied the Motion on April 15, 2014, identifying several deficiencies in the settlement agreement that precluded approval at that stage. ECF No. 195. With respect to both the FLSA collective action claims and the Rule 23 class action claims, the Court articulated concerns related to the reduced scope of the settlement class, the proposed monetary and injunctive relief for class members, the scope of the releases, the amount of attorneys' fees and costs, and the proposed incentive payments for Plaintiffs Otey and Greth. Id. at 7-16, 17. In addition, the Court found that it could not approve the settlement of the Plaintiffs' Rule 23 claims because Plaintiffs had failed to address the Rule 23 class action certification requirements in either their motion or the settlement agreement. Id. at 17.

On September 2, 2014, Plaintiffs filed a new Motion for Approval of Parties' Modified FLSA Collective Action Settlement, Final Collective Action Certification for Settlement Purposes Only, and Authorization for the Parties to Effectuate Their Settlement. ECF No. 207.

### C.     Overview of the Settlement Agreement

On September 2, 2014, the parties signed a new Stipulation of Settlement of Collective Action. ECF No. 207 Ex. 1. The parties to the agreement are Defendants Crowdflower, Inc., Lukas Biewald, and Chris Van Pelt, and Named Plaintiffs Christopher Otey and Mary Greth, on behalf of all settlement class members. ECF No. 207, Ex 1. Settlement class members are provisional class members who submit a qualified claim. Id. § I ¶ 43. The agreement defines provisional class members to include:

> all contributors who performed CrowdFlower managed tasks on behalf of customers posted on AMT at any time from October 26, 2009, through the Approval Date, who accessed said tasks from an IP address located in the United States or any of its territories (specifically, American Samoa, Guam, U.S. Virgin Islands, Puerto Rico, and the Northern Mariana Islands), and whose cumulative earnings from performing said tasks during this period are equal to or greater than $5.00 (Five Dollars).

Id. § I ¶ 36.

Under the agreement, Defendants have agreed to pay a total of $585,507.00, to be allocated as follows: (1) claims administration expenses not to exceed $29,437.00; (2) class representative service awards not to exceed $5,000.00 for Plaintiff Greth and $6,000.00 for Plaintiff Otey; (3) reasonable costs incurred in obtaining a response to a subpoena issued to AMT; (4) attorneys' fees not to exceed $146,377.00; (5) costs in an amount not to exceed $52,000.00; and (6) a net settlement amount available for class members' claims estimated at $336,693.00. Id. §§ I ¶¶ 2, 7, 11, 31, 32, 33, III(F).

For the purpose of settlement, the parties have stipulated to the decertification of the conditionally certified class and the certification of the provisional class defined above. Id. § III(J). Defendants estimate that there are approximately 19,992 members in the provisional settlement class. Id. § I ¶ 36. The settlement award for each class member will be calculated as follows:

3

> i. The Net Settlement Amount shall be divided by the aggregate AMT Earnings received by all Provisional Settlement Class Members;
>
> ii. The resulting ratio from subsection (i) shall be multiplied by the AMT Earnings of the Settlement Class Member to arrive at each particular Settlement Class Member's Settlement Award.

Id. § I ¶ 45. Any unclaimed funds will be redistributed on a pro-rata basis to settlement class members, provided that no settlement class member receives a settlement award of more than $0.75 per dollar of AMT earnings. Id. § V(E). Any amounts remaining after this redistribution will revert to CrowdFlower. Id. The parties estimate that at a 100% participation rate, the range of settlement awards would be from $2.36 to $3,653.96, or approximately $0.47 per dollar of AMT earnings. ECF No. 207 at 7. The maximum range of settlement awards, including redistributed funds, would be $3.75 to $5,809.32. Id.

In exchange, Plaintiffs agree to release:

> any and all federal law claims, obligations, demands, actions, rights, causes of action and liabilities, of whatever kind, nature, character and description, whether known or unknown, whether anticipated or unanticipated, that arose or accrued at any time during the period from October 26, 2009, through the Release Date, for any type of wages, premium pay, damages, statutory damages, unpaid costs, statutory penalties, civil penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, arising out of or related to any of the claims asserted, or which could have been asserted, in the Action, under the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.*("FLSA"), by Settlement Class Members.

ECF No. 207 Ex. 1 § I(39). The settlement agreement no longer encompasses the Oregon state law claims. Id. § I(30). Those clams are expressly excluded from the released claims and will be dismissed without prejudice. Id.

### D. Jurisdiction

This Court has jurisdiction over this action under 28 U.S.C. § 1331.

## II. LEGAL STANDARD

The FLSA was enacted for the purpose of protecting workers from substandard wages and oppressive working hours. Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 739 (1981). An employee's right to fair payment "cannot be abridged by contract or otherwise waived

4

because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." Id. at 740 (internal quotation marks omitted). Accordingly, FLSA collective action settlements require the supervision of either the Secretary of Labor or the district court. See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352-53 (11th Cir. 1982). The FLSA provides for such agreements to include an award of reasonable fees. See 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action").

The Ninth Circuit has not established the criteria that a district court must consider in determining whether an FLSA settlement warrants approval. Most courts in this circuit, however, first consider whether the named plaintiffs are "similarly situated" to the putative class members within the meaning of 29 U.S.C. § 216(b) (providing that an aggrieved employee may bring a collective action under the FLSA on behalf of himself and "other employees similarly situated").[1] If the collective action members are similarly situated, most courts then evaluate the settlement under the standard established by the Eleventh Circuit, which requires the settlement to constitute "a fair and reasonable resolution of a bona fide dispute over FLSA provisions."[2] Lynn's Food

---

[1] Neither the FLSA nor Ninth Circuit case law defines "similarly situated." Outside the context of settlement, most courts in this circuit follow a two-stage process to determine whether putative class members are similarly situated. Lewis v. Wells Fargo & Co., 669 F. Supp. 2d 1124, 1127 (N.D. Cal. 2009). In the first stage, which is referred to as the "notice stage," the court considers whether the plaintiff has submitted sufficient evidence to justify the conditional certification of the class and the sending of notice of the action to potential class members. Id. "The standard for certification at this stage is a lenient one that typically results in certification." Id. In the second stage, the court reevaluates the collective action under a stricter standard after discovery is completed and usually on a motion for decertification by the defendant. Id. At this point, the court considers several factors, including "the disparate factual and employment settings of the individual plaintiffs; the various defenses available to the defendant which appear to be individual to each plaintiff; fairness and procedural considerations; and whether the plaintiffs made any required filings before instituting suit." Id.

[2] See, e.g., McKeen-Chaplin v. Franklin American Mortg. Co., No. 10-cv-5243-SBA, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012); Yue Zhou v. Wang's Rest., No. 05-cv-0279-PVT, 2007 WL 2298046, at *1 (N.D. Cal. Aug. 8, 2007); Trinh v. JPMorgan Chase & Co., No. 07-cv–01666, 2009 WL 532556, at *1 (S.D. Cal. Mar. 3, 2009); Thornton v. Solutionone Cleaning Concepts, Inc., No. 06-cv-1455-AWI SMS, 2007 WL 210586, at *3 (E.D. Cal. Jan. 26, 2007); Goudie v. Cable Commc'ns, Inc., No. 08-cv-507–AC, 2009 WL 88336, at *1 (D. Or. Jan. 12, 2009); Hand v. Dionex Corp., No. 06-cv-1318–PHX–JAT, 2007 WL 3383601, at *1 (D. Ariz. Nov.13, 2007).

Stores, 679 F.2d at 1355. "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues . . . that are actually in dispute," the district court may "approve the settlement in order to promote the policy of encouraging settlement of litigation." Id. at 1354.

### III. DISCUSSION

#### A. Certification

Before the parties reached a settlement agreement, the Court granted conditional certification to a broad class, which included "[a]ll persons who performed crowdsourced work in the United States and its territories in response to any online request by CrowdFlower." ECF No. 167 at 8. Earlier in the litigation, Plaintiffs represented that "millions" of individuals would fall within this class. See ECF No. 121 ¶ 16; ECF No. 44-1 ¶ 3; ECF No. 195 at 6. In their settlement agreement, the parties now seek certification of a substantially narrower class comprising approximately 19,992 members. ECF No. 207 Ex. 1 § I ¶ 36. Because this new class is composed entirely of members of the already conditionally certified class, the Court finds that these contributors are likewise "similarly situated" and that no further certification analysis is necessary. See ECF No. 167 at 8; ECF No. 195 at 6.

#### B. Bona Fide Dispute

Plaintiffs argue that "[t]here is no question that the proposed settlement is the product of contested litigation." ECF No. 207 at 9. The Court agrees that the settlement agreement resolves a "bona fide dispute" concerning potential liability under the FLSA. Lynn's Food Stores, 679 F.2d at 1355. As illustrated in the briefing on the various motions submitted to the Court in the course of this litigation, the case involves genuinely disputed issues, including, for example, the application of factors for determining whether a person is an employee or an independent contractor, see Donovan v. Sureway Cleaners, 656 F.2d 1368, 1370 (9th Cir. 1981), in the context of work distributed and monitored over the internet. See ECF No. 207 at 9.

#### C. Fair and Reasonable Settlement Agreement

In evaluating a proposed FLSA settlement, a district court must determine whether the settlement reflects "a fair and reasonable resolution of a bona fide dispute." Lynn's Food Stores, 679 F.2d at 1355. To determine whether a settlement is fair and reasonable, district courts

implicitly or explicitly consider the factors that are used to evaluate Rule 23 class action settlements, which include:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).

Plaintiffs argue that the settlement is fair and reasonable given the risk of no recovery if Plaintiffs lost at trial or won an uncollectable judgment; the substantial relief provided to those who performed the most work during the recovery period; the conservation of resources through the avoidance of further costly litigation; and the advantage of obtaining immediate results and protection for online crowdsourced workers, rather than waiting, possibly years, for an uncertain result. ECF No. 207 at 10-11. Plaintiffs urge the Court to give weight to their attorneys' assessment that the settlement is fair, reasonable, and adequate. Id. at 11.

These factors offer some support for a finding that the settlement is fair and reasonable. Nevertheless, the Court continues to find several deficiencies that preclude the approval of the modified settlement agreement at this stage.

### 1. The Reduced Scope of the Class

As explained above, this collective action originally involved millions of individual workers. The parties' first settlement agreement proposed a settlement class of only one hundred class members. ECF No. 195 at 7. In its April 15, 2014 Order denying the motion for approval of this prior settlement agreement, the Court stated that it could not conclude that the reduction in the scope of the class was fair and reasonable because Plaintiffs had failed to explain their contention that the proposed settlement class comprised "the only putative class members that Defendants believe can be reasonably identified, hold claims that are not de minimus and/or that could possibly have a colorable claim to be an employee of CrowdFlower based on their level of task performance utilizing the AMT website." Id. at 7-9. The Court further observed:

> the potential efficiencies and conservation of resources that could be achieved by approving a settlement are compromised if the settlement excludes potential litigants who may bring subsequent suits. Additionally, the exclusion of the vast majority of the class members from the settlement creates the risk that the excluded class members ultimately will be unable to recover because the statute of limitations may run out or because they might be unable to find counsel to represent them.

Id. at 9.[3]

The parties now propose a settlement class of approximately 19,992 members, including all workers who received at least $5.00 cash compensation in exchange for performing tasks on AMT managed by Defendant CrowdFlower. ECF No. 207 at 2. Plaintiffs explain that the size of the provisional settlement class is reduced from the estimated size of the conditionally certified class because a large percentage of CrowdFlower's online workforce performed less than $5.00 worth of tasks, and reducing the participation threshold below $5.00 "would create unduly burdensome and costly administration, and would not be cost effective." Id.

Although Plaintiffs have adequately explained the $5.00 participation threshold, they do not explain why the proposed settlement class includes only workers who completed tasks through AMT, excluding workers who completed tasks through other platforms. Defendants contend that limiting the proposed class to persons who performed CrowdFlower-managed tasks through AMT is appropriate because the named plaintiffs completed CrowdFlower-managed tasks only through AMT and because the relationship between CrowdFlower and AMT is distinguishable from CrowdFlower's relationships with other channels. ECF No. 208 at 3. Neither party addresses the Court's concerns that the settlement may exclude potential litigants who may bring subsequent suits and may create the risk that the excluded class members ultimately may be unable to recover. See ECF No. 195 at 9. The Court seeks further explanation of the fairness of excluding from the provisional settlement class members of the conditionally certified class who performed more than

---

[3] The Court also noted that Plaintiffs did not explain whether they sent notice to the class members as the Court required after it granted their motion for conditional certification. ECF No. 195 at 7. Plaintiffs now explain that before they were required to send notice to the class members, they sought a continuance of litigation activities, other than production of the class list, pending the parties' settlement efforts. ECF No. 207 at 3; ECF No. 176. The Court granted this continuance on September 27, 2013, and a second continuance on October 22, 2013. ECF Nos. 177, 180. See also ECF No. 208 at 4-5.

1 $5.00 worth of work through platforms other than AMT.

2 The Court also seeks an explanation of Plaintiffs' contention that the settlement provides "immediate protection of on-line 'crowdsourced' workers." ECF No. 207 at 11. The modified settlement agreement includes potential monetary relief for approximately 19,992 class members, but does not include an injunctive relief component. It is therefore unclear what kind of "protection" online workers will gain from the settlement agreement.

### 2. Monetary Relief

The settlement agreement provides for recovery between $0.47 and $0.75 for each $1.00 received from Defendants. ECF No. 207 at 3. Plaintiffs believe that a recovery of $1.00 per $1.00 earned would approximately provide relief for all unpaid minimum wages, but argue that substantial reduction of this relief is reasonable considering the merits and risks of the various claims and defenses. Id. Plaintiffs also contend that they "faced the real probability of no recovery even if they prevailed" because CrowdFlower is a start-up company and "a significant adverse judgment would likely be uncollectable." Id. at 10. Plaintiffs state that "[h]ad [they] pushed for greater recovery, they likely would have forced Defendants out of business either through a judgment or crippling debt." Id.

The parties ask the Court to take the assertion that a greater recovery would force CrowdFlower out of business at face value, but they provide no evidentiary support for this claim. In the event that Plaintiffs submit a renewed motion for approval of their settlement agreement, the parties are therefore ordered to submit sufficient admissible evidence from which the Court can conclude that Defendants' financial situation is as the parties claim. The parties may request to file these materials under seal, if appropriate.

Furthermore, the Court cannot conclude that the formula proposed to calculate class members' individual settlement awards is fair and reasonable because it includes a reversion clause. ECF No. 207 Ex. 1 § V(E). The Court has previously expressed its concern about such clauses, because there is a risk that Defendant will retain funds that correspond to the injury suffered by a class member. See, e.g., Dyer v. Wells Fargo Bank, N.A., No. 13-cv-02858-JST, 2014 WL 5369395, at *1 n.1 (N.D. Cal. Oct. 22, 2014); Cordy v. USS-Posco Indus., No. 12-cv-

9

00553-JST, 2013 WL 4028627, at *4 (N.D. Cal. July 31, 2013).

### 3. Releases

In its April 15, 2014 Order, the Court noted the "exceptional breadth" of the release provision included in the parties' original settlement agreement. ECF No. 195 at 11. Under the new settlement agreement, opt-in class members will release:

> any and all federal law claims, obligations, demands, actions, rights, causes of action and liabilities, of whatever kind, nature, character and description, whether known or unknown, whether anticipated or unanticipated, that arose or accrued at any time during the period from October 26, 2009, through the Release Date, for any type of wages, premium pay, damages, statutory damages, unpaid costs, statutory penalties, civil penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, arising out of or related to any of the claims asserted, or which could have been asserted, in the Action, under the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.*("FLSA"), by Settlement Class Members.

ECF No. 207 Ex. 1 § I(39). The parties describe this new release as "limited to only FLSA claims" and represent that "[n]o other state or federal claims are released." ECF No. 207 at 3; ECF No. 208, at 6. Although it is clear from the language of the release and from the express exclusion of any and all Oregon state law claims from the released claims, ECF No. 207 Ex. 1 § I(30), that opt-in class members will not release state law claims, the release still appears to include "any and all federal law claims . . . arising out of or related to any of the claims asserted, or which could have been asserted . . . under the [FLSA]." In other words, class members will release not only the FLSA claims they actually brought, but also any federal law claim related to their FLSA or potential FLSA claims. The Court seeks further explanation of the apparent discrepancy between the parties' intention to release only FLSA claims and the final language of the release.

In its prior Order, the Court also found the unlimited scope of the general release provision applicable to the representative plaintiffs "improper." ECF No. 195 at 11. The parties have not narrowed the scope of the release, which includes:

> any and all claims, causes of action, rights, suits, liens, demands, damages, or liabilities, whether known or unknown, contingent or vested, in law or in equity, which I have, may now have, or have ever had, against Releasees, or any of them, arising from or in any

10

> way connected with my having performed crowd-sourced work in response to any online request by CrowdFlower on behalf of customers . . .

ECF No. 207 Ex. 5 at 1, Ex. 6 at 1. Defendants argue that the scope of this release provision is appropriately broader than the release provision proposed for the class members generally because representative plaintiffs Otey and Greth are each receiving a significant service award. ECF No. 208 at 6. In addition, because Otey and Greth are represented by competent counsel, Defendants argue that both are fully aware of the claims they have agreed to release. Id. at 7. Plaintiffs do not explain the breadth of the release, except to state that Otey and Greth will sign general releases in exchange for their service awards. ECF No. 207 at 4.

In its prior Order, the Court made clear that it found an unlimited release provision "improper" in this case. ECF No. 195 at 11. Because the parties have not revised the unlimited scope of this release provision, the Court continues to find that the provision precludes a finding that the settlement agreement is fair and reasonable.

### 4. Attorneys' Fees and Costs

The FLSA requires that a settlement agreement include an award of reasonable fees and costs. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"). "The case law construing what is a reasonable fee applies uniformly to all federal fee-shifting statutes". Haworth v. Nevada, 56 F.3d 1048, 1051 (9th Cir. 1995) (internal quotation marks omitted).

The district court has discretion to choose either the percentage-of-the-fund or the lodestar method to determine what constitutes a reasonable fee. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002). "The 'lodestar method' is appropriate in class actions brought under fee-shifting statutes . . . where the relief sought—and obtained—is often primarily injunctive in nature and thus not easily monetized." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011) (citations omitted). "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended . . . by a reasonable hourly rate for the region and for the experience of the lawyer. Though the lodestar figure is presumptively

1 reasonable, the court may adjust it upward or downward." Id. (internal citations and quotation
2 marks omitted). On the other hand, "[w]here a settlement produces a common fund for the benefit
3 of the entire class," courts may employ either the lodestar or the percentage-of-recovery method.
4 Id. at 942. Twenty-five percent of the fund is the benchmark for a reasonable fee award, although
5 this may be adjusted to account for special circumstances. Id. Ultimately, the district court must
6 exercise its discretion to reach a reasonable result. Id.

In its April 15, 2014 Order, the Court found that a combination of the lodestar method and the percentage method would be appropriate for determining the reasonableness of Plaintiff's fee, because the goal of the litigation was to secure unpaid wages, as well as injunctive relief. ECF No. 195 at 13. The Court rejected the proposed $435,000.00 fee award, which represented at least 74.3% of the total settlement payment. Id. at 15. The parties now propose an attorneys' fee award not to exceed $146,377.00, which represents 25% of the gross settlement amount and a fraction of the $1,205,455.40 in fees Plaintiffs' counsel represent they that they have incurred. ECF No. 207 at 6, 14. Plaintiffs also seek litigation costs in an amount not exceed $52,000.00. Id. at 7. They report the following costs incurred:

| | |
|---|---|
| Airfare | $8,776.45 |
| Ground Transportation/Parking | $1,319.56 |
| Communications | $847.21 |
| Copying | $2,876.55 |
| Court Fees | $1,320.00 |
| Process Service | $450.00 |
| Depositions/Transcription | $6,839.80 |
| ESI Management & Storage | $8,745.00 |
| Hotel | $5,049.26 |
| Meals | $578.74 |
| Postage/Delivery | $1,155.93 |
| Scanning | $41.10 |

| Computer Research | $6,319.40 |
|---|---|
| Mediation Fee | $5,388.34 |
| Consulting Fees | $750.00 |
| Total | $50,457.34 |

Id. at 14. Plaintiffs stated that counsel would incur additional expenses in attending the settlement approval hearing scheduled for October 30, 2014. Id. This hearing was vacated on October 22, 2014. ECF No. 209.

The Court concludes that because the settlement agreement no longer includes injunctive relief and the benefit to the class is therefore easily quantified by reference to a common fund, it is appropriate to use the percentage-of-recovery method to determine the reasonableness of the attorney fee award. The Court finds the $146,377.00 proposed award, representing 25% of the gross settlement amount, to be a reasonable attorneys' fee award.[4] The Court concludes that the reported itemized costs are reasonable, but is unable to approve the proposed $52,000.00 award, which exceeds the $50,457.34 in actual costs reported.

### 5.  Incentive Payments

Courts have discretion to award incentive payments to named class representatives. Rodriguez v. West Publishing Corp., 563 F.3d 948, 958 (9th Cir. 2009). These fees are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Id. at 958-59; see also Staton v. Boeing Co., 327

---

[4] Because the proposed settlement does not require the settlement fund to be distributed in its entirety to the class, there is no guarantee, and in fact it seems extremely unlikely, that the attorneys' fees received by Plaintiffs' counsel would be only 25% of the amount actually recovered by class members. Rather, the fees will almost certainly be a much greater percentage of class members' recovery. In this Court's view, divorcing the amount of attorneys' fees from actual recovery by the class is problematic, because "class counsel [have] no particular incentive to negotiate a settlement that [will] ensure substantial benefits [will] actually accrue to the class." Laguna v. Coverall N. Am., Inc., 753 F.3d 918, 937 (9th Cir. 2014) (Chen, J., dissenting), vacated on other grounds, 2014 WL 6601214 (Nov. 20, 2014). Notwithstanding this concern, the Ninth Circuit has sanctioned using the full amount of settlement proceeds theoretically available to the class as a basis for evaluating the reasonableness of a negotiated attorneys' fee award. Williams v. MGM-Path Commc'ns Co., 129 F.3d 1026, 1027 (9th Cir. 1997).

F.3d 938, 977 (9th Cir. 2003) (in assessing the propriety of an incentive award, courts consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time the plaintiff expended in pursuing the litigation").

The parties have substantially reduced Plaintiffs' service awards and have responded to the Court's request for additional information concerning how much money each class member is expected to receive as part of the settlement. ECF No. 195 at 16; ECF No. 207 at 4. Plaintiffs argue that their new requested awards, in the amount of $6,000.00 for Plaintiff Otey and $5,000.00 for Plaintiff Greth, are reasonable because Otey and Greth provided invaluable assistance in pursuing the class claims. ECF No. 207 at 12. Specifically, they spent hours explaining the process of working for Defendants to counsel; responded to comprehensive written discovery; prepared and sat for depositions; participated in mediation; traveled to participate in the case; rejected individual settlement offers; and risked their reputations with prospective employers. Id. Otey also relinquished a laptop computer for forensic examination and doggedly pursued representation in this matter. Id. The parties explain that Otey will receive an additional $1,000.00 in consideration of his waiver of his individual Oregon state law claims. Id. at 4; ECF No. 208 at 6 n.2. The Court notes that Otey's release also includes a paragraph in which he agrees not to knowingly respond to online CrowdFlower requests or knowingly seek to perform crowdsourced work for CrowdFlower. ECF No. 207 Ex. 6 at 2. The Court concludes that the new proposed incentive awards fairly and reasonably compensate Otey and Greth for their work on behalf the class and for the reputational risk they have undertaken. See Rodriguez, 563 F.3d at 958-59.

### IV. CONCLUSION

Plaintiff's motion for approval of the proposed settlement is DENIED WITHOUT PREJUDICE. Plaintiffs may file a new motion that addresses the deficiencies identified in this order within 60 days of the date this order is filed.

To provide for further management of the case in the event that a new motion is not forthcoming, the Court hereby sets a case management conference on March 11, 2015 at 2:00 p.m.

A Joint Case Management Statement must be filed at least ten court days beforehand. If Plaintiffs file a new motion for settlement approval by February 16, 2015, they may also request that the Court vacate the case management conference.

**IT IS SO ORDERED.**

Dated: December 16, 2014

_____
JON S. TIGAR
United States District Judge