William T. Payne (SBN 90988)
Ellen M. Doyle (PA Bar #21854)
(admitted *pro hac vice*)
Edward J. Feinstein (PA Bar #29718)
FEINSTEIN DOYLE PAYNE
& KRAVEC, LLC
429 Forbes Avenue, 17th Floor
Pittsburgh, PA  15219
412-281-8400 (T), 412-281-1007 (F)
wpayne@fdpklaw.com
edoyle@fdpklaw.com
efeinstein@fdpklaw.com

Mark A. Potashnick
(admitted *pro hac vice*)
WEINHAUS & POTASHNICK
11500 Olive Blvd., Suite 133
St. Louis, MO 63141
314-997-9150 (T), 314-997-9170 (F)
markp@wp-attorneys.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| CHRISTOPHER OTEY, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CROWDFLOWER, INC., LUKAS BIEWALD and CHRIS VAN PELT,<br><br>Defendant. | Case No.  3:12-cv-05524-JST/MEJ<br><br>**COMBINED NOTICE OF HEARING AND MOTION FOR APPROVAL OF PARTIES *SECOND MODIFIED* FLSA COLLECTIVE ACTION SETTLEMENT, FINAL COLLECTIVE ACTION CERTIFICATION FOR SETTLEMENT PURPOSES ONLY, AUTHORIZATION FOR THE PARTIES TO EFFECTUATE THEIR SETTLEMENT, AND REQUEST FOR TOLLING, AND PLAINTIFFS' MEMORANDUM IN SUPPORT THEREOF**<br><br>Date:     May 28, 2015<br>Time:    2:00 p.m.<br>Dept:    Courtroom 9, 19th Floor |

## __I.     HEARING NOTICE AND RELIEF REQUESTED

Plaintiffs will call for hearing their Motion for Approval of the Parties' *Second Modified* FLSA Collective Action Settlement, Final Collective Action Certification for Settlement Purposes Only, and Authorization for the Parties to Effectuate their Settlement at 2:00 p.m. on May 28, 2015

in Courtroom 9 of the U.S. District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, 94102, or as soon thereafter as Plaintiffs may be heard.

Plaintiffs request approval of the Parties' FLSA second modified collective action settlement, final collective action certification for settlement purposes only, and authorization to effectuate their settlement.

## II. INTRODUCTION AND OVERVIEW OF THE PARTIES' NEW SETTLEMENT

Plaintiffs alleged that Defendants failed to pay minimum wage to their on-line "crowdsourced" workers in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201 *et seq*. Defendants deny that they violated the FLSA, and contend that they were under no duty to pay minimum wage to the "crowdsourced" individuals that performed tasks made available on the internet because those individuals are independent contractors, and that, in any event, individuals are not owed additional wages because, depending on the task at issue, the time spent completing such tasks was "de minimis." The crux of this dispute is whether, under the FLSA, the workers are independent contractors, as Defendants assert, or as Plaintiffs claim, actually employees, and therefore entitled to minimum wage.

This Court denied a previous motion to approve the Parties' settlement on December 16, 2014, and expressed various concerns about those proposed terms. (Doc. 210). The Parties have taken the Court's concerns to heart and have negotiated a new settlement which addresses those concerns.

## III. THE KEY SETTLEMENT TERMS

The key terms of the Parties' settlement, all of course subject to Court approval, are:

A. The Gross Settlement Amount[1] is $585,507.00. (Ex. 1, §§ I(27), III(A) & V(A)).

B. The Net Settlement Amount available for claims of Provisional Class Members is estimated to be $297,672.66. The Net Settlement Amount shall equal the Gross

---

[1] As used herein, capitalized terms have the same meaning as set forth in the parties Settlement Agreement.

2

Settlement Amount less Claims Administration Expenses, Class Representative Service Awards, the AMT Subpoena Costs, Attorney's Fees and Litigation Costs. (*Id.*, §§ I(29) & I(39)).

   C. Plaintiffs will subpoena the names and contact information of Provisional Class Members from AMT. Provided that in the event either Party believes that any costs incurred in obtaining a response to the subpoena which are over $10,000.00 are unreasonable or excessive, that Party may notify the other Party that it seeks to terminate this Stipulation of Settlement. Upon such notification, the Parties agree to negotiate in good faith regarding whether the costs are unreasonable or excessive such that the Stipulation of Settlement should be terminated. If after ten (10) business days such negotiations prove unsuccessful, the Party seeking termination may apply to the Court for an order terminating the Settlement. (*Id.*, §§ I(29), III(F) & IX(E)).

   D. The Parties estimate that at a 100% participation rate by Provisional Settlement Class Members, the estimated range of Settlement Awards is $2.09 - $3,230.49. The formula used to determine each Settlement Class Member's award is:

    i. The Net Settlement Amount shall be divided by the aggregate AMT Earnings received by all Provisional Settlement Class Members;

    ii. The resulting ratio from subsection (i) shall be multiplied by the AMT Earnings of the Settlement Class Member to arrive at each particular Settlement Class Member's Settlement Award.

Further, any unclaimed funds will be redistributed to claimants using the same pro-rata formula up to a maximum of $1.00 per each dollar of their AMT Earnings. (*Id.*, §§ I(39), I(41) & V(E)). The Parties will re-approach the Court regarding disposition of any remaining funds after three years of attempts to locate class members and distribute to them their shares of the settlement proceeds. (*Id.,* §§ VI(E) & VII(I)). The Parties agree that there will be no reversion of any funds to CrowdFlower.

   E. The Released Claims encompass only "any and all claims asserted, or which could have been asserted, in the Action, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.,* including all obligations, demands, actions, rights, causes of action and liabilities, of whatever kind, nature, character and description, whether known or unknown, whether anticipated or unanticipated, that arose or accrued at any time during the period from October 26, 2009, through

1 the Release Date, for any type of wages, premium pay, damages, statutory damages, unpaid costs, statutory penalties, civil penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief." (*Id.,* § I(34)).

      F.      Class members who do not negotiate their settlement checks will not be bound by the settlement and will not waive or release any claims. (*Id.*, § VI(E)).

      G.      Defendants will not oppose Plaintiffs' requests for Class Representative Service Awards in an amount not to exceed $5,000.00 for Named Plaintiff Greth and $6,000.00 for Named Plaintiff Otey in recognition of their time and efforts incurred in this litigation and in exchange for general releases. (*Id.*, §§ I(17) & V(G)).

      H.      Defendants will not oppose Plaintiffs' request for Attorneys' Fees in an amount not to exceed $146,377.00. This amount represents 25% of the Gross Settlement Amount. (*Id.*, §§ I(2) & V(F)).

      I.      Defendants will not oppose Plaintiffs' request for Litigation Costs in an amount not to exceed $50,457.34. (*Id.*, §§ I(28) & V(F)).

      J.      Solely for the purpose of effectuating this Settlement, and subject to Court approval, the Parties have stipulated to the decertification of the Conditionally Certified Collective Action and the certification of a Provisional Settlement Class comprised of all contributors who performed CrowdFlower managed tasks on behalf of customers posted on AMT at any time from October 26, 2009, through the Approval Date, who accessed said tasks from an IP address located in the United States or any of its territories (specifically, American Samoa, Guam, U.S. Virgin Islands, Puerto Rico, and the Northern Mariana Islands), and whose cumulative earnings from performing said tasks during this period are equal to or greater than $5.00 (Five Dollars). Defendants estimate that there are approximately 19,992 members in the Provisional Settlement Class. (*Id.*, § I(32)).

      K.      The claims by Plaintiff Otey asserted under Oregon law will be dismissed without prejudice. (*Id.*, § I(26)).

   L. Simpluris Class Action Settlement Administration ("Simpluris") will serve as the Claims Administrator in this case. The Parties have obtained a "will not exceed" estimate of $70,000.00 from Simpluris.[2]

   M. The administrative process will be:

    Step 1: After receiving the requisite contact information from AMT via subpoena, the Claims Administrator shall undertake all reasonable efforts to update this contact information, including running the data through the Postal Service's National Change of Address Database. (*Id.,* § VI(C)).

    Step 2: The Claims Administrator will mail out Settlement Award Checks to all members of the Provisional Settlement Class at their last known or updated address. The Settlement Award Checks will remain negotiable for 180 days. On negotiating a Settlement Award Check, i.e., chasing, depositing, or endorsing the Settlement Award Check over to another person, a member of the Provisional Settlement Class will be deemed to have released his or her claims. Other courts have approved such a process under the FLSA. *See Lazarin v. Pro Unlimited Inc.*, Case No. 11-cv-03609, 2013 WL 3541217 (N.D. Cal. July 11, 2013) (approving FLSA settlement pursuant to which members "opted-in" and released their claims by cashing their settlement checks).[3] (*Id.*, §§ VI(C) - VI(F)).

    Step 3: To the extent that Settlement Award Checks are returned with a forwarding address, the Claims Administrator will promptly resend

---

[2] The increase settlement administration costs are explained *infra.*

[3] The Class Notice accompanying the Settlement Award Checks and the Settlement Award Check itself will include a prominent message that notifies Settlement Class Members that by cashing the check, they will be deemed to have "opted-in" to the litigation and released their rights commensurate with the scope of the release. (Ex. 3).

1 the Class Notice and a new Settlement Award Check to the
2 forwarding address provided. Should Settlement Award Checks be
3 returned without a forwarding address, the Claims Administrator
4 will use all reasonable efforts to locate contact information for that
5 member of the Provisional Settlement Class and promptly resend
6 the Class Notice and Settlement Award Check to any other address
7 that is located. Members of the Provisional Settlement Class will
8 be provided an additional 180 days to negotiate their check from
9 the date the Settlement Award Check is reissued. (*Id.*, §§ VI(F) –
10 VI(G)).

Step 4: Within 120 calendar days after the initial mailing of the Class Notices and Settlement Award Checks, the Claims Administrator will mail a Reminder Postcard to those individuals who have not yet negotiated their checks, reminding them of the 180-day deadline to do so. Should a member of the Provisional Settlement Class lose his/her Settlement Award Check, or otherwise need to have a new one issued, the Stipulation of Settlement authorizes them to contact the Claims Administrator. Additional time will be allotted for them to cash any reissued Settlement Award Check. (*Id.*).

Step 5: After the expiration of the initial 180-day period within which to negotiate Settlement Award Checks, the Stipulation of Settlement authorizes the Claims Administrator to reissue Settlement Award Checks for a period of up to three years after the initial mailing of the Class Notice and Settlement Award Checks. Every 180 calendar days thereafter, until the expiration of the three-year period, the Claims Administrator shall undertake reasonable efforts to locate and contact members of the Provisional Settlement Class

6

Memorandum in Support of Motion to Approve Settlement

|   |   |   |   |
|---|---|---|---|
| 1 | | | who have not negotiated Settlement Award Checks, by emailing |
| 2 | | | and mailing out Reissue Postcards, notifying them that they are a |
| 3 | | | member of the Provisional Settlement Class, that they are entitled |
| 4 | | | to a Settlement Award Check, and that they should contact the |
| 5 | | | Claims Administrator to have a check reissued.  (*Id.*). |
| 6 | | Step 6: | To ensure that a minimum amount of the Net Settlement Amount |
| 7 | | | is paid out to Settlement Class Members, any unclaimed funds |
| 8 | | | from the Net Settlement Amount following the expiration of this 3- |
| 9 | | | year period shall be redistributed, on a pro-rata basis, to Settlement |
| 10 | | | Class Members; provided, however, that under no circumstances |
| 11 | | | will any Settlement Class Member receive a Settlement Award of |
| 12 | | | more than $1.00 (One Dollar) per dollar of their AMT Earnings. |
| 13 | | | (*Id.*, § V(E)). |
| 14 | | Step 7: | If any funds still remain, the Parties will confer regarding |
| 15 | | | distribution of such funds and will seek the Court's guidance |
| 16 | | | regarding distributing such funds.  (*Id.,* §§ V(E) & VII(I)). |

17  N.  So that the Parties distribute as much of the Net Settlement Amount to class
18 members as soon as possible, Simpluris shall prepare and mail the initial round of Court-approved
19 notices and settlement checks, issuance of semi-annual reminder and re-issue postcards, locating
20 class members' addresses, re-issuing settlement checks, and corresponding with class members.
21 (*Id.*, §§ VI(F) – VI(G)).

22  O.  No part of the Gross Settlement Amount shall revert to Defendants. (*Id.,* §§
23 VI(E) & VI(F) – VI(G)).

### IV.  SETTLEMENT APPROVAL IS WARRANTED

25  Court approval of this collective action settlement is necessary to effectuate a valid and
26 enforceable release of Class Members' FLSA claims.  *See, e.g., Deane v. Fastenal Co.*, 2013 U.S.
27 Dist. LEXIS 163330, *6-7 (N.D. Cal. Nov. 14, 2013) (observing that "the Eleventh Circuit and
28 numerous district courts within the Ninth Circuit have determined that settlement of an action under

7

the FLSA must either be supervised by the Secretary of Labor or approved by a district court, based upon the legislative purposes underpinning the FLSA") (citing *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982); *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, 2012 U.S. Dist. LEXIS 179635, *6 n.3 (N.D. Cal. Dec. 19, 2012) (noting that "[w]hile the Ninth Circuit has not specifically addressed the question of whether FLSA claims may only be settled and resolved in two ways, district courts in the Ninth Circuit have followed *Lynn's Food Stores*", and collecting cases)). Where, as here, the litigation arises from a private enforcement action under Section 216(b) of the FLSA, 29 U.S.C. § 216(b), the standard for approval is straightforward: "if the settlement reflects 'a fair and reasonable resolution of a *bona fide* dispute,' the court may approve it." *Deane*, at *7 (quoting *Lynn's Food Stores*, 679 F.2d at 1354-55).

The Parties' proposed settlement should be approved as it reflects a reasonable compromise of the Parties' claims and defenses, considering all of the risks and the limited assets available to satisfy a settlement or judgment. As discussed below, the concerns raised in the December 16, 2014 order have been fully addressed and no longer stand in the way of Court approval.

### A. The Parties Have a *Bona Fide* Dispute

The Court previously determined that the settlement arises from a *bona fide* dispute. Doc. 201, at 6.

### B. The Settlement is Fair and Reasonable

If a settlement of an FLSA suit reflects a reasonable compromise over issues such as FLSA coverage or back wages, the district court may approve the settlement in order to promote the policy of encouraging settlement of litigation. *See, e.g., Nen Thio v. Genji, LLC*, 14 F.Supp.3d 1324, 1333 (N.D. Cal. 2014) (citing *Lynn's Food Stores*, 679 F.2d at 1355). As this Court previously noted, a determination of whether a settlement is fair and reasonable will be guided by the following factors: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members

to the proposed settlement." (Doc. 210 at p.7) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

These factors support a finding that the settlement is fair and reasonable. Plaintiffs allege that Defendants failed to pay minimum wage to their on-line workers because those workers are "employees" within the scope and meaning of the FLSA.  Defendants adamantly deny that allegation While Plaintiffs obviously believed in the strength of their case, given the factual complexity of the case and the vigorous nature of Defendants' litigation defense, they faced significant risks at several stages of the case (including Rule 23 class certification of the Oregon claims, FLSA class decertification, dispositive motions, trial and appeals) that ensured that a victory on the merits was far from certain.

The policy of encouraging settlement in litigation is particularly suited to complex cases, such as this, where substantial resources can be conserved by avoiding the time, cost and rigor of protracted litigation.  *See Jacobs & Crumplar v. Davey Jones Archaeology, Ltd.*, 1995 U.S. App. LEXIS 37168, *5 n.2 (9th Cir. 1995) ("Public policy favors settlement of cases whenever possible.") (citing *Decanay v. Mendoza*, 573 F.2d 1075, 1078 (9th Cir. 1978)); *Lynn's Food Stores*, 679 F.2d at 1354 (recognizing policy of encouraging settlement of FLSA litigation).  Thus the proposed settlement should be approved because it will provide immediate and substantial relief to class members (the estimated range of Settlement Awards is $2.09 - $3,230.49) and eliminate the substantial risks Plaintiffs will bear if this complex litigation continued to a resolution on the merits, a process likely to take several more years. *See, e.g., Hopson v. Hanesbrands Inc.*, 2008 WL 3385452 (N.D. Cal. Aug. 8, 2008) (reviewing *Hanlon* factors and noting that where defendants would contest class certification and liability and that plaintiffs bear a risk of not prevailing, settlement should be approved).

The settlement also meets the approval of the Named Plaintiffs and their Counsel, a factor which weighs in favor of approval. During this highly-contested litigation, Plaintiffs' counsel have gained a comprehensive knowledge of the facts, legal issues and risks relating to the respective

claims and defenses and have acquired ample evidence on which to assess the proposed settlement. Based on their knowledge of the facts and the applicable law, as well as their extensive experience in FLSA actions and other class litigation, Plaintiffs' attorneys believe the settlement is fair, reasonable, and adequate, particularly given the risk that too high of a dollar burden could prevent workers from obtaining any remedy whatsoever.  "Courts give weight to counsels' opinions regarding the fairness of a settlement, when it is negotiated by experienced counsel." *Clesceri v. Beach City Investigations & Protective Servs., Inc.*, 2011 U.S. Dist. LEXIS 11676, *28-29 (C.D. Cal. Jan. 27, 2011); *In re Wash. Pub Power Supply Sys. Sec. Litig.*, 720 F.Supp. 1379, 1387 (D. Ariz. 1989) ("Counsel's opinions warrant great weight both because of their considerable familiarity with this litigation and because of their extensive experience in similar actions.").  Additionally, named Plaintiffs Otey and Greth have executed the Settlement Agreement indicating their approval of the agreement.

Finally, each of the Court's concerns listed in the December 16, 2014 Order have been directly addressed, as discussed below.  Accordingly, this Court should conclude that the proposed settlement reflects a fair and reasonable resolution of a *bona fide* dispute over FLSA coverage and approve the settlement.

**Concern 1:  Scope of the Class**

In its December 16, 2014 Order, the Court acknowledged that the Parties "have adequately explained the $5.00 participation threshold," but requested further explanation of including only workers who performed tasks through Amazon Mechanical Turk ("AMT").  The Court expressed concern that "the settlement may exclude potential litigants who may bring subsequent suits and may create the risk that the excluded class members may ultimately be unable to recover." Doc. 210 at 8.

As an initial matter, the limitation of the settlement to AMT workers is a matter of administrative necessity. Defendants and their counsel have concluded after researching the issue that the only individuals who can be reasonably identified as performing at least $5.00 worth of work are individuals that performed activities through AMT.  Unlike other websites or "channels"

10

Memorandum in Support of Motion to Approve Settlement

through which CrowdFlower offers work, CrowdFlower pre-funds an account which AMT uses to pay individuals.[4] AMT then informs CrowdFlower of the amount of money paid to each individual. CrowdFlower also has identification numbers for each individual that performed tasks through AMT, as well as information about the IP addresses from which each individual accessed tasks through AMT, allowing CrowdFlower to determine whether the individual accessed said task from an IP address that is located inside or outside of the United States and its territories.

In contrast to AMT, other "channels" only invoice CrowdFlower based on tasks completed by individuals through that channel. That invoiced amount does not necessarily directly correlate to what these individuals actually receive, as such payment (including the form of payment) is left to the channel to handle   Also unlike AMT, many channels compensate workers through non-monetary means. Such non-monetary means of compensation are difficult to value. Given this, the Parties reasonably believe that any efforts to obtain information about the identities, contact information and earnings of workers who performed tasks through other channels are likely to prove unduly expensive and fruitless, especially considering the aggregate amount of settlement proceeds available for distribution. Thus, the class is reasonably limited to workers who performed work for CrowdFlower through AMT.

Plaintiffs' counsel appreciate the Court's concern over the rights of potential litigants who will be excluded by the settlement. Plaintiffs' counsel have determined that none of the non-AMT workers have filed any claim for unpaid wages against Defendants to date. Moreover, other than the two named Plaintiffs, only one opt-in Plaintiff has joined this litigation. Still, to protect the rights of such workers against the FLSA's ever-running statute of limitations (*e.g., Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 543 (N.D. Cal. 2007)), Plaintiffs respectfully request equitable tolling of the claims of workers who performed Defendants' tasks through "channels" other than AMT from the date of conditional certification, August 27, 2013 (Doc. 167), through the date of the Court's settlement approval order. Defendants have been advised of this request, and express no opposition.

---

[4] As part of Defendants' filings, Defendants will submit the declaration of their co-founder and Chief Technology Officer, Chris Van Pelt, verifying the facts stated in this paragraph and the following paragraph.

11

Memorandum in Support of Motion to Approve Settlement

Such an order would ensure that the rights of any such potential litigants under the FLSA will not be adversely affected by the settlement.

Moreover, in an FLSA collective action, only the claims of individuals who opt in can be compromised. *Adams*, 242 F.R.D. at 543. Here both named Plaintiffs, and the only other opt-in Plaintiff, Nancy Miller, performed all of their work for CrowdFlower through AMT. By agreeing to settle this case on behalf of a more narrowly defined class, the Parties are not compromising the claims of non-AMT workers.

### Concern 2: Prior Statement about Protecting On-Line Workers

Within the same section of the December 16, 2014 Order, the Court also requested explanation of the prior representation that the settlement provides "immediate protection of on-line 'crowdsourced' workers." Doc. 210, at 11. That statement was inadvertently included due to a clerical error involving the "track changes" feature of Microsoft Word. The previously-negotiated injunctive relief was removed from the first modified settlement agreement after this Court "place[d] no weight on th[at] agreed-upon injunction." Doc. 195, at 10.

### Concern 3: Evidence of Defendants' Financial Condition

To address the Court's concern about the lack of evidence regarding CrowdFlower's financial condition, *see* Doc. 210 at 9, Defendants have agreed to file under seal a declaration from J. Duross O'Bryan, a certified public accountant with over 30 years of experience in conducting financial statement audits and performing forensic accounting investigations, attesting to CrowdFlower's financial position, based on his review of its financial statements.

### Concern 4: Reversion

The Court previously expressed concern about a reversion clause in the settlement that could permit Defendants to "retain funds that correspond to the injury suffered by a class member." Doc. 210, at 9. The Parties' second modified settlement does not permit any reversion. (Ex. 1, §§ VI(E) & VI(F) – VI(G)).

12

**Concern 5: Releases**

The Parties have negotiated clear language to replace the previous phrase "federal law claims related to the FLSA or potential FLSA claims." The Parties' new settlement agreement provides for release of only claims under the FLSA:

> any and all claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq. including all* obligations, demands, actions, rights, causes of action and liabilities, of whatever kind, nature, character and description, whether known or unknown, whether anticipated or unanticipated, that arose or accrued at any time during the period from October 26, 2009, through the Release Date, for any type of wages, premium pay, damages, statutory damages, unpaid costs, statutory penalties, civil penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, arising out of or related to any of the claims asserted, or which could have been asserted, in the Action, under the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.* ("FLSA"), by Settlement Class Members.

((*Id.,* § I(34)). This language replaces and narrows the prior "any and all federal law claims . . ." which the Court found unclear and confusing. Doc. 210, at 10.

In addition, under the Parties' second modified settlement agreement, the named Plaintiffs will not sign the general releases the Court made clear that it found to be "improper." Doc. 210 at 11. Rather, Mr. Otey's new release language states that he releases only claims for unpaid work:

> …from any and all claims asserted, or which could have been asserted, in the Action, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and Oregon's wage and hour laws, including all obligations, demands, actions, rights, causes of action and liabilities, of whatever kind, nature, character and description, whether known or unknown, whether anticipated or unanticipated, that arose or accrued at any time for any type of wages, premium pay, damages, statutory damages, unpaid costs, statutory penalties, civil penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief. I understand that this Release covers all Oregon state statutory, common law, constitutional, and other claims, for unpaid wages or other compensation, and related penalties, interest, costs, attorneys' fees, compensatory damages, punitive damages, or other relief, that were asserted, or could have been asserted, in the Action, including, but not limited to, any claims for failure to pay minimum wage, waiting time penalties, attorneys' fees, and costs under Oregon state law..

(Ex. 5, ¶ 1). The scope of Ms. Greth's new release is similar, but does not mention Oregon law as she worked for Defendants in Georgia, which has no minimum wage law. Ex. 4, ¶ 1. As such, the

release language is acceptable because the claims released are limited to those based upon the facts set forth in Plaintiffs' Second Amended Complaint. *See Nen Thio*, 14 F.Supp.3d at 1334; *see also Hesse v. Sprint Corp.,* 598 F.3d 581, 590 (9th Cir.2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action.").

### Concern 6:  Expense Recovery

The new settlement agreement limits Plaintiff's expense recovery to the amount of $50,457.34, which is the exact amount of their out-of-pocket costs incurred to date and previously itemized for the Court.  (*Id.,* § I(34)).

### Recovery to the Class

The new settlement provides recovery between $.42 and $1.00 per each $1.00 received from Defendants, which equates to recovery of $2.09 to $3,230.49 per class member.   Because Defendants paid up to about half of the minimum wage on an hourly basis, Plaintiffs believe that a recovery of up to $1.00 for each $1.00 earned from Defendants would approximately provide relief for all unpaid minimum wages. However, substantial reduction of such relief sought is reasonable considering the merits and risks of the various claims and defenses.  The Court should consider that (1) the named Plaintiffs and their counsel substantially compromised their fees and incentive awards in an effort to provide far more recovery for the class, (2) the much larger class size means that the recovery must be divided into more shares, and (3) the various risks to Plaintiffs discussed herein such as risk of decertification, risk of loss of the central issue of employee v. independent contractor status, and risk of an uncollectable judgment.  The parties' settlement provides the opportunity for meaningful relief *now* for numerous low-wage earning workers, rather than the mere possibility of unknown relief at some uncertain future date.

### Increased Claims Administration Expenses

There is one new issue that Plaintiffs wish to bring to the Court's attention. Because of the significant revisions to the claims procedures, the costs of administering the settlement will increase.

1  Previously, the Parties stated that the Claims Administration Expenses would not exceed $29,437.00.
2  The Claims Administration Expenses are now estimated not to exceed $70,000.00.
3        The prior Stipulation of Settlement called for the Claims Administrator to simply email a
4  shortened form of notice, notifying Provisional Settlement Class members of their right to participate
5  in the settlement by completing an online Claim Form and directing them to a dedicated website
6  where they could view the Stipulation of Settlement and Class Notice and complete their Claim
7  Form as well as confirm their mailing address. The prior Stipulation of Settlement also
8  contemplated a one-time payment to Settlement Class Members following the conclusion of the
9  claims process.
10       As described above, the revised Stipulation of Settlement calls for the mailing of the Class
11 Notice and Settlement Award Checks to all 19,992 Provisional Settlement Class members. As also
12 explained, the revised Stipulation of Settlement calls for multiple reminder postcards to be sent, and
13 allows Provisional Settlement Class members to have their Settlement Award Checks reissued for a
14 period of up to 3 years after the date the Class Notice is first sent. For these reasons, the costs of
15 administering the settlement have increased.
16       Although the costs of administering the settlement have increased, Plaintiffs believe that
17 these additional costs are justified given all of the new measures put in place that are designed to
18 ensure that as many Provisional Settlement Class members as possible receive and cash their
19 Settlement Awards. It is also worth noting that the estimated range of Settlement Awards is still
20 $2.09 to $3,230.49, which, as Plaintiffs' explain above, is a fair and reasonable recovery given the
21 circumstances of this case. To the extent that funds are left from the Net Settlement Amount, an
22 additional pro rata distribution of up to, at least, $1.00 per dollar of each Settlement Class Members'
23 AMT Earnings will be made, with the possibility of further pro rata distributions.

### C. Incentive Payments Are Appropriate

The Court previously determined that the incentive awards are reasonable. Doc. 210, at 13-14.

15

Memorandum in Support of Motion to Approve Settlement

### D. Attorney Fees and Costs Are Appropriate

The Court previously determined that the attorneys' fees sought are appropriate. *Id.*, at 11-12. The costs requested have been reduced to the actual amount of costs incurred to date, $50,457.34, in accordance with the Court's Order. *Id.*, at 12-13.

## V. REQUEST FOR EQUITABLE TOLLING

As discussed above, to address the Court's concerns about the rights of potential litigants excluded from the settlement, Plaintiffs respectfully request tolling of the claims of workers who performed Defendants' tasks through "channels" other than AMT from the date of conditional certification, August 27, 2013 (Doc. 167), through the date of the Court's settlement approval order. Defendants do not oppose this request.

## VI. CLASS NOTICE AND CLAIM FORM

The attached proposed class notice adequately informs the class members of their rights under the settlement agreement, the procedure to claim their respective shares of the settlement, and the consequences of both filing and declining to file a claim. The proposed notice is written to be easily understood by the class. Moreover, the notice directs class members to contact Plaintiffs' attorneys with any questions or concerns.

## VII. CONCLUSION

The Parties' settlement should be approved as it constitutes a fair and reasonable resolution of a *bona fide* dispute between the Parties. Plaintiffs believe that such agreement will substantially and immediately protect the minimum wage.

WEINHAUS & POTASHNICK
/s/ Mark A. Potashnick
MARK A. POTASHNICK
Attorneys for Plaintiffs

Memorandum in Support of Motion to Approve Settlement

# PROOF OF SERVICE

STATE OF MISSOURI         )
                          ) ss.:
COUNTY OF ST. LOUIS       )

I am employed in the County of St. Louis, State of Missouri. I am over the age of 18 and am not a party to the within action. My business address is 11500 Olive Blvd., Suite 133, St. Louis, Missouri, 63141.

On April 1, 2015, using the Northern District of California's Electronic Case Filing System with the ECF ID registered to Mark Potashnick, I filed and served the document(s) described as:

**PLAINTIFFS' NOTICE OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AND MOTION TO STRIKE CERTAIN DEFENSES**

[X]   **BY ELECTRONIC TRANSMISSION USING THE COURT'S ECF SYSTEM:**

I caused the above document(s) to be transmitted by electronic mail to those ECF registered parties listed on the Notice of Electronic Filing (NEF) pursuant to Fed. R. Civ. P. 5(d)(1) and by first class mail to those non-ECF registered parties listed on the Notice of Electronic Filing (NEF). *"A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed. R. Civ. P. 5(d)(1). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."*

I declare that I am admitted *pro hac vice* in this action.

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed on April 1, 2015, at St. Louis, Missouri.

                           s/ Mark Potashnick          .
                           Mark Potashnick

4820-5889-6675, v. 2