UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER OTEY, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>CROWDFLOWER, INC., et al.,<br><br>    Defendants. | Case No.  12-cv-05524-JST<br><br>**ORDER GRANTING MOTION FOR APPROVAL OF PARTIES' SECOND MODIFIED FLSA COLLECTIVE ACTION SETTLEMENT, FINAL COLLECTIVE ACTION CERTIFICATION FOR SETTLEMENT PURPOSES ONLY, AND AUTHORIZATION FOR THE PARTIES TO EFFECTUATE THEIR SETTLEMENT, AND DENYING REQUEST FOR TOLLING**<br><br>Re: ECF No. 218 |

In this conditionally certified action for violations of the Fair Labor Standards Act ("FLSA"), Plaintiffs move for approval of the parties' second modified settlement agreement, final collective action certification for settlement purposes, authorization for the parties to effectuate their settlement agreement, and equitable tolling. ECF No. 218. Defendants have filed a statement in support of Plaintiffs' motion for approval pursuant to Civil Local Rule 7-3(b). ECF No. 219. For the reasons set forth below, the Court will approve the second modified settlement agreement, certify the collective action for settlement purposes, and authorize the parties to effectuate their settlement, but will deny the request for equitable tolling.

I.   **BACKGROUND**

   A.   **The Parties and Claims**

Defendant CrowdFlower, Inc. ("CrowdFlower") is an internet-based company that distributes small and simple repetitive tasks to individuals in exchange for pay on a per-task basis. Second Am. Compl. ("SAC") ¶¶ 4, 8, 16-20, ECF No. 121. CrowdFlower gets projects from

various customers, breaks the projects into pieces, and assigns the pieces to contributors. ECF No. 46, Ex. 1. The tasks that CrowdFlower assigns typically take a few minutes to complete and do not require any special skill. SAC ¶ 22; ECF No. 46, Ex. 5 at 2. The most common type of task is verifying business listings. ECF No. 46, Ex. 3 at 11. This distribution of small tasks to individuals is commonly referred to as "crowdsourcing." SAC ¶ 16. Defendants Lukas Biewald and Chris Van Pelt are the Chief Executive Officer and Chief Technology Officer of CrowdFlower, respectively. Id. ¶¶ 9-10.

Named Plaintiffs Christopher Otey and Mary Greth performed tasks for CrowdFlower through a website called Amazon Mechanical Turk ("AMT"). ECF No. 219-1 ¶ 7. The gravamen of their Complaint is that CrowdFlower pays its contributors, whom it classifies as independent contractors, less than the minimum wage under FLSA, 29 U.S.C. § 206(a), and Oregon law, ORS §§ 653.025 and 652.150. SAC ¶¶ 5, 36. Plaintiffs bring their Oregon law claims as class action claims under Rule 23. Id. ¶¶ 76-83.

**B.    Procedural Background**

On August 27, 2013, the Court granted Plaintiffs' Motion for Conditional Certification of a Collective Action, and conditionally certified the following class:

> All persons who performed crowdsourced work in the United States and its territories in response to any online request by CrowdFlower for crowdsourced work, or any online notification by CrowdFlower that crowdsourced work was available at any time from three years prior to the date on which notice is issued to the date on which notice is issued.

ECF No. 167 at 8. In the same order, the Court approved Plaintiffs' proposed notice and consent form and ordered that notice should be emailed to the class members and posted online. Id. at 9-10.

On January 24, 2014, Plaintiffs filed a Motion for Approval of FLSA Collective Action Settlement, Final Collective Action Certification for Settlement Purposes Only, and Authorization for the Parties to Effectuate Their Settlement, which the Court denied on April 15, 2014. ECF Nos. 187, 195. On December 16, 2015, the Court denied Plaintiffs' motion for approval of a

modified settlement agreement, identifying several remaining deficiencies that precluded approval at that stage. ECF Nos. 207, 210. First, the Court found that the parties had not adequately explained why the proposed settlement class included only workers who completed tasks through AMT, excluding workers who completed tasks through other platforms. ECF No. 210 at 8-9. Second, the Court sought an explanation of the statement that the settlement would provide "immediate protection" to crowdsourced workers, as the proposed settlement did not include an injunctive relief component. Id. at 9. Third, the Court ordered the parties to support their claims about CrowdFlower's financial situation with admissible evidence in any renewed motion for approval. Id. Fourth, the Court concluded that the settlement was not fair and reasonable because it contained a reversion clause. Id. Fifth, the Court expressed concern about the scope of the releases for opt-in class members and Plaintiffs Otey and Greth. Id. at 10-11. Finally, the Court declined to approve the proposed expenses award because it exceeded the actual costs reported. Id. at 13.

On April 8, 2015, Plaintiffs filed a new Motion for Approval of Parties' Second Modified FLSA Collective Action Settlement, Final Collective Action Certification for Settlement Purposes Only, Authorization for the Parties to Effectuate their Settlement, and Request for Tolling. ECF No. 218.

### C.     Overview of the Settlement Agreement

The parties to the second modified settlement agreement are Defendants CrowdFlower, Inc., Lukas Biewald, and Chris Van Pelt, and Named Plaintiffs Christopher Otey and Mary Greth, on behalf of all settlement class members. Second Modified Stipulation of Settlement of Collective Action ("Settlement"), ECF No. 218-1. Under the agreement, Defendants will pay a total of $585,507.00, to be allocated as follows: (1) a net settlement amount available for class member's claims estimated at $297,672.66; (2) claims administration expenses not to exceed $70,000.00;[1] (3) class representative service awards not to exceed $5,000.00 for Plaintiff Greth

---

[1] These settlement administration expenses greatly exceed the $29,437.00 estimate proposed in the parties' prior settlement agreement. This increase is reasonable, however, in light of the significantly revised claims procedure, which is designed to ensure that as many provisional class

1  and $6,000.00 for Plaintiff Otey; (4) reasonable costs incurred in obtaining a response to a

2  subpoena issued to AMT; (5) attorneys' fees in an amount not to exceed $146,377.00; and (6)

3  costs in an amount not to exceed $50,457.34. Id. §§ I(29), III(A)-(F).

4  For the purpose of settlement, the parties have stipulated to the decertification of the

5  conditionally certified class and the certification of a provisional settlement class of

> all contributors who performed CrowdFlower managed tasks on behalf of customers posted on AMT at any time from October 26, 2009, through the Approval Date, who accessed said tasks from an IP address located in the United States or any of its territories (specifically, American Samoa, Guam, U.S. Virgin Islands, Puerto Rico, and the Northern Mariana Islands), and whose cumulative earnings from performing said tasks during this period are equal to or greater than $5.00 (Five Dollars).

Id. §§ I ¶ 32, III(J). Plaintiffs will subpoena the names and contact information of provisional class members from AMT. Id. §§ I(6), VI(A). If either party believes that any costs incurred in obtaining a response to the subpoena that exceed $10,000.00 are unreasonable or excessive, that party may notify the other that it seeks to terminate the stipulation of settlement. Id. § III(F). Defendants estimate that there are approximately 19,992 members in the provisional settlement class. Id. § I(32).

Claims administrator Simpluris Inc. will mail class notice and settlement award checks to all members of the provisional settlement class at their last known or updated address. Id. §§ I(12), VI(E). The settlement award for each provisional class member will be calculated as follows:

> i. The Net Settlement Amount shall be divided by the aggregate AMT Earnings received by all Provisional Settlement Class Members;
>
> ii. The resulting ratio from subsection (i) shall be multiplied by the AMT Earnings of the Settlement Class Member to arrive

---

members as possible receive and cash their awards. Rather than managing an online claims process and issuing one set of payment checks, the claims administrator will now be required to mail class notices and settlement award checks to every provisional class member, send multiple reminder and reissue postcards, and reissue settlement award checks for a period of three years. See ECF No. 218 at 15; ECF No. 219 at 12-13; Settlement Agreement § VI.

1 at each particular Settlement Class Member's Settlement Award.

2 Id. § I(41). Provisional class members must negotiate the settlement award check to opt in to the settlement and release their claims. Id. §§ VI(E), VIII. The checks will therefore contain the following language: "I have received and read the Class Notice in Otey v. CrowdFlower, Inc.. By negotiating this check, I consent to join the FLSA collective action in Otey v. CrowdFlower, Inc., elect to participate in the Settlement, and agree to release my claims covered by the Settlement." Id. § VI(E).

The parties' notice plan provides that Simpluris will promptly resend any returned class notice and settlement check after reasonable efforts to determine a correct address; issue reminder postcards; re-issue settlement award checks for a period of up to three years after initial mailing; and undertake reasonable efforts to contact provisional class members who have not yet negotiated their settlement checks every 180 days until the expiration of the three-year period. Id. § VI(F)-(G). Any unclaimed funds remaining will then be distributed to claimants on a pro-rata basis, up to a maximum of $1.00 per each dollar of their AMT earnings. Id. § V(E). If any funds remain after this redistribution, the parties will meet and confer, and then seek the Court's guidance regarding the distribution of the funds. Id. No part of the settlement amount shall revert to Defendants. Id. The parties estimate that at a 100% participation rate, the range of settlement awards will be $2.09 to $3,230.49. Id. § I(39).

Plaintiffs agree to release:

> Any and all claims asserted, or which could have been asserted, in the Action, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, including all obligations, demands, actions, rights, causes of action and liabilities, of whatever kind, nature, character and description, whether known or unknown, whether anticipated or unanticipated, that arose or accrued at any time during the period from October 26, 2009, through the Release Date, for any type of wages, premium pay, damages, statutory damages, unpaid costs, statutory penalties, civil penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief.

Id. § I(34). The Oregon state law claims are expressly excluded from the released claims and will be dismissed without prejudice. Id. § I(26).

### D. Jurisdiction

This Court has jurisdiction over this action under 28 U.S.C. § 1331.

## II. LEGAL STANDARD

The FLSA was enacted for the purpose of protecting workers from substandard wages and oppressive working hours. Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 739 (1981). An employee's right to fair payment "cannot be abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." Id. at 740 (internal quotation marks omitted). Accordingly, FLSA collective action settlements require the supervision of either the Secretary of Labor or the district court. See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352-53 (11th Cir. 1982). The FLSA provides for such agreements to include an award of reasonable fees. See 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action").

The Ninth Circuit has not established the criteria that a district court must consider in determining whether an FLSA settlement warrants approval. Most courts in this circuit, however, first consider whether the named plaintiffs are "similarly situated" to the putative class members within the meaning of 29 U.S.C. § 216(b) (providing that an aggrieved employee may bring a collective action under the FLSA on behalf of himself and "other employees similarly situated").[2] If the collective action members are similarly situated, most courts then evaluate the settlement

---

[2] Neither the FLSA nor Ninth Circuit case law defines "similarly situated." Outside the context of settlement, most courts in this circuit follow a two-stage process to determine whether putative class members are similarly situated. Lewis v. Wells Fargo & Co., 669 F. Supp. 2d 1124, 1127 (N.D. Cal. 2009). In the first stage, which is referred to as the "notice stage," the court considers whether the plaintiff has submitted sufficient evidence to justify the conditional certification of the class and the sending of notice of the action to potential class members. Id. "The standard for certification at this stage is a lenient one that typically results in certification." Id. In the second stage, the court reevaluates the collective action under a stricter standard after discovery is completed and usually on a motion for decertification by the defendant. Id. At this point, the court considers several factors, including "the disparate factual and employment settings of the individual plaintiffs; the various defenses available to the defendant which appear to be individual to each plaintiff; fairness and procedural considerations; and whether the plaintiffs made any required filings before instituting suit." Id.

under the standard established by the Eleventh Circuit, which requires the settlement to constitute "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." Lynn's Food Stores, 679 F.2d at 1355; see ECF No. 210 at 5 n.2 (collecting cases). "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues . . . that are actually in dispute," the district court may "approve the settlement in order to promote the policy of encouraging settlement of litigation." Lynn's Food Stores, 679 F.2d at 1354.

## III.  DISCUSSION

### A.  Certification

The Court has previously determined that because the new class is composed entirely of members of the already conditionally certified class, these contributors are likewise similarly situated, and that no further certification analysis is necessary. See ECF No. 10 at 6.

### B.  Bona Fide Dispute

Similarly, the Court has determined that this case arises from a "bona fide dispute" concerning potential liability under the FLSA. Id.

### C.  Fair and Reasonable Settlement Agreement

In evaluating a proposed FLSA settlement, a district court must determine whether the settlement reflects "a fair and reasonable resolution of a bona fide dispute." Lynn's Food Stores, 679 F.2d at 1355. To determine whether a settlement is fair and reasonable, district courts implicitly or explicitly consider the factors that are used to evaluate Rule 23 class action settlements, which include:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).

The Court concludes that the second modified settlement agreement is a fair and reasonable

settlement of the parties' dispute. As Plaintiffs acknowledge, they faced significant risks at several stages of the case, including Rule 23 class certification of the Oregon state claims, FLSA class decertification, dispositive motions, trial, and any appeal. ECF No. 218 at 9. This settlement provides immediate relief to class members, and avoids the substantial risk of continued litigation on the merits, which may take several years. Id. Furthermore, Plaintiffs state that "[d]uring this highly-contested litigation, Plaintiffs' counsel have gained a comprehensive knowledge of the facts, legal issues and risks relating to the respective claims and defenses and have acquired ample evidence on which to assess the proposed settlement." Id. at 9-10; see also Settlement § II(G)-(H). The Court also recognizes the significance of the change from the prior claims procedure to a process in which payments are made directly to all provisional class members when notice is provided, which is designed to maximize provisional class members' participation in the settlement. See ECF No. 218 at 15; ECF No. 219 at 13.

In addition, Plaintiffs' motion for approval of the parties' second modified settlement and Defendants' statement in support of the motion address each concern voiced by the Court in its December 16, 2014, order.

### 1.  Scope of the Class

Both parties have provided further information concerning the scope of the settlement class, which includes only workers who performed tasks through AMT. Plaintiffs explain that the limitation of the settlement to AMT workers is "a matter of administrative necessity," because the only individuals who can reasonably be identified as performing at least $5.00 worth of work are individuals who performed work through AMT, rather than other channels. ECF No. 218 at 10-11. In addition, Plaintiffs state that no non-AMT worker has filed a claim for unpaid wages against Defendants or opted in to this litigation. Id. at 11-12. Finally, Plaintiffs argue that because this is an opt-in FLSA collective action settlement, the claims of non-AMT workers will not be compromised. Id. at 12.

Defendants agree that the scope of the class should not preclude settlement. They argue, inter alia, that because no notice has been issued to the members of the conditionally certified

class, there is little concern that non-AMT workers are refraining from filing suit in reliance on the pendency of this action. ECF No. 219 at 4. Defendants note that although the case has been pending since October 2012, only one claimant other than the named Plaintiffs has opted in, and no similar or related actions have been filed. Id. at 5-6. Defendants reiterate Plaintiffs' arguments that only AMT workers can reasonably be identified, and that there is no harm to non-AMT workers because only the claims of individuals who affirmatively opt in can be compromised in an FLSA collective action. Id. at 2-5; see also ECF No. 219-1 ¶¶ 3-6. In addition, Defendants contend that, absent settlement, there was a significant likelihood that the collective action would be decertified at the second stage of the certification process, because "they have substantial evidence of key differences among the collective action members," including differences related to task requirements, task performance, and compensation arrangements. ECF No. 219 at 7-8.

Both parties suggest that the Court's concern with respect to the statute of limitations should be allayed because the Ninth Circuit has adopted and read into the FLSA the doctrine of equitable tolling. See Adams v. Inter-Con Sec. Sys., Inc., 242 F.R.D. 530, 543 (N.D. Cal. 2007) (citing Partlow v. Jewish Orphans' Home of S. Cal., Inc., 645 F.2d 757, 760 (9th Cir. 1981), abrogated on other grounds by Hoffmann-La Roche v. Sperling, 493 U.S. 165 (1989)); ECF No. 218 at 11-12; ECF No. 219 at 5. Plaintiffs request equitable tolling of the claims of workers who performed Defendants' tasks through channels other than AMT from the date of conditional certification, August 27, 2013, through the date of the Court's settlement approval order. ECF No. 218 at 11. Defendants do not oppose this request. ECF No. 219 at 5. This request must be denied, however, because Plaintiffs, each of whom completed CrowdFlower tasks through AMT, do not have standing to seek such relief on behalf of non-AMT workers excluded from this settlement agreement. Any request for equitable tolling will need to be made by a non-AMT CrowdFlower worker if and when she attempts to pursue her claims. Nevertheless, the potential availability of equitable tolling in any future action on behalf of non-AMT workers warrants consideration.

### 2. Protection to Crowdsourced Workers

With respect to the Court's inquiry about Plaintiffs' representation that their previous

9

settlement agreement would provide immediate protection to online crowdsourced workers, Plaintiffs explain that the statement was inadvertently included in their prior motion due to a clerical error. ECF No. 218 at 12. The statement does not appear in the instant motion.

### 3. CrowdFlower's Financial Situation

In its December 16, 2014, order, the Court directed the parties to submit admissible evidence concerning Defendants' financial situation in support of any renewed argument that the settlement agreement is fair and reasonable in part because "a significant adverse judgment would likely be uncollectable" and pushing for greater recovery "would have forced Defendants out of business either through a judgment or crippling debt." ECF No. 210 at 9. Defendants have filed under seal a declaration signed by J. Duross O'Bryan, a certified public accountant, attesting to CrowdFlower's financial position based on his review of its financial documents. ECF No. 220-2. The Court has reviewed this declaration and concludes that it provides the necessary evidentiary support for the parties' arguments concerning Defendants' financial situation.

### 4. Reversion

In response to the Court's prior order, the parties have eliminated the reversion clause from the settlement agreement and restructured the claims process so that payments will be made directly to class members at the same time that notice is provided. These changes fully address the Court's concern that as much of the gross settlement amount as is practicable should be distributed to settlement class members.

### 5. Releases

The parties have also revised the releases for opt-in class members, as well as the previously unlimited releases to be signed by named Plaintiffs Greth and Otey. The new release for settlement class members provides for the release of only claims under the FLSA. Settlement Agreement § I(34). Otey and Greth release claims under the FLSA and agree not to perform crowdsourced work for CrowdFlower in the future. ECF Nos. 218-9, 218-10. Otey also releases his Oregon state law claims. ECF No. 218-10. The Court finds these revised releases to be fair and reasonable.

1  In view of the factors discussed above, the Court concludes that the proposed settlement
2  agreement is "a fair and reasonable resolution of a bona fide dispute," and will therefore approve
3  it. See Lynn's Food Stores, 679 F.2d at 1355.

### D. Attorneys' Fees and Expenses

The Court previously found Plaintiff's $146,377.00 proposed attorneys' fee award to be reasonable. ECF No. 210 at 13. It also found that the reported itemized costs, totaling $50,457.34, were reasonable, although it rejected the $52,000.00 proposed award because it exceeded the actual costs reported. Id. Because Plaintiffs' revised proposed expenses award includes only these itemized costs, the Court now approves both the attorneys' fees and expenses awards.

### E. Incentive Payments

The Court previously found that the proposed incentive awards in the amount of $6,000.00 for Plaintiff Otey and $5,000.00 for Plaintiff Greth fairly and reasonably compensate them for their work on behalf of the class and for the reputational risk they have undertaken. ECF No. 210 at 14.

### F. Class Notice

The Court finds that the proposed class notice, ECF No. 218-8, adequately informs the provisional class members of their rights under the settlement, the procedure to opt-in and claim their respective shares under the settlement, and the consequences of both negotiating and choosing not to negotiate their settlement checks. The notice also directs provisional class members to an online version of the settlement agreement and provides contact information for the claims administrator and class counsel. Finally, the notice informs provisional class members that they may review the Court's files at the Clerk's Office located in San Francisco. It does not, however, inform provisional class members that they may access the case docket via PACER. Accordingly, the Court will approve the proposed notice, except that the final sentence of the first paragraph of section "IX. Additional Information," shall be revised as follows:

> The pleadings and other records in this Action, including the Second Modified Stipulation of Settlement of Collective Action, may be

United States District Court
Northern District of California

11

> examined through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, 450 Golden Gate Ave, San Francisco, CA 94102, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

See ECF No. 218-8 at 8.

## CONCLUSION

For the foregoing reasons, the Court hereby orders as follows:

1. The Court grants approval of the parties' second modified collective action settlement.

2. The Court decertifies the conditionally certified collective action, and certifies a provisional settlement class of:

> all contributors who performed CrowdFlower managed tasks on behalf of customers posted on AMT at any time from October 26, 2009, through the Approval Date, who accessed said tasks from an IP address located in the United States or any of its territories (specifically, American Samoa, Guam, U.S. Virgin Islands, Puerto Rico, and the Northern Mariana Islands), and whose cumulative earnings from performing said tasks during this period are equal to or greater than $5.00 (Five Dollars).

3. The Court approves the class notice, subject to the revision ordered above.

4. The Court appoints the law firms of Weinhaus & Potashnick and Feinstein Doyle Payne & Kravec, LLC, as class counsel.

5. The Court approves claims administration expenses in an amount not to exceed $70,000; attorneys' fees in the amount of $146,377.00; costs in the amount of $50,457.34; and representative service awards in the amount of $5,000.00 for Mary Greth and $6,000.00 for Christopher Otey.

6. The Court retains continuing jurisdiction over (a) implementation of the settlement; (b) any further proceedings, if necessary; and (c) the parties and the class members for the purpose of construing, enforcing, and administering the Settlement Agreement.

/ / /

/ / /

7. The Court denies Plaintiffs' request for equitable tolling.

IT IS SO ORDERED.

Dated: July 2, 2015

_____
JON S. TIGAR
United States District Judge