UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER OTEY, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>CROWDFLOWER, INC., et al.,<br><br>    Defendants. | Case No.  12-cv-05524-JST<br><br>**ORDER DENYING MOTION TO MODIFY COURT'S ORDER APPROVING PARTIES' SECOND MODIFIED FLSA COLLECTIVE ACTION SETTLEMENT WITHOUT PREJUDICE**<br><br>Re: ECF No. 227 |

The parties have jointly moved for the Court's approval of several changes to their Second Modified FLSA Collective Action Settlement. ECF No. 227. The Court had previously approved the agreement on July 2, 2015. ECF No. 226. For the reasons set forth below, the parties' motion to modify the Court's July 2 order and to approve the suggested modifications to the settlement agreement is denied without prejudice.

**I.   BACKGROUND**

    **A.   The Parties and Claims**

Defendant CrowdFlower, Inc. ("CrowdFlower") is an internet-based company that distributes small and simple repetitive tasks to individuals in exchange for pay on a per-task basis. Second Am. Compl. ("SAC") ¶¶ 4, 8, 16-20, ECF No. 121. Defendants Lukas Biewald and Chris Van Pelt are the Chief Executive Officer and Chief Technology Officer of CrowdFlower, respectively. Id. ¶¶ 9-10. CrowdFlower gets projects from various customers, breaks the projects into pieces, and assigns the pieces to contributors. ECF No. 46, Ex. 1. The tasks that CrowdFlower assigns typically take a few minutes to complete and do not require any special skill. SAC ¶ 22; ECF No. 46, Ex. 5 at 2. The most common type of task is verifying business listings. ECF No. 46, Ex. 3 at 11. This distribution of small tasks to individuals is commonly

referred to as "crowdsourcing." SAC ¶ 16.

Named Plaintiffs Christopher Otey and Mary Greth performed tasks for CrowdFlower through a website called Amazon Mechanical Turk ("AMT"). ECF No. 219-1 ¶ 7. The gravamen of their Complaint is that CrowdFlower pays its contributors, whom it classifies as independent contractors, less than the minimum wage under FLSA, 29 U.S.C. § 206(a), and Oregon law, ORS §§ 653.025 and 652.150. SAC ¶¶ 5, 36. Plaintiffs brought their Oregon law claims as class action claims under Rule 23. Id. ¶¶ 76-83.

### B. Procedural Background

On August 27, 2013, the Court granted Plaintiffs' Motion for Conditional Certification of a Collective Action, and conditionally certified the following class:

> All persons who performed crowdsourced work in the United States and its territories in response to any online request by CrowdFlower for crowdsourced work, or any online notification by CrowdFlower that crowdsourced work was available at any time from three years prior to the date on which notice is issued to the date on which notice is issued.

ECF No. 167 at 8. In the same order, the Court approved Plaintiffs' proposed notice and consent form and ordered that notice should be emailed to the class members and posted online. Id. at 9-10.

On January 24, 2014, Plaintiffs filed a Motion for Approval of FLSA Collective Action Settlement, Final Collective Action Certification for Settlement Purposes Only, and Authorization for the Parties to Effectuate Their Settlement, which the Court denied on April 15, 2014. ECF Nos. 187, 195. On December 16, 2015, the Court denied Plaintiffs' motion for approval of a modified settlement agreement, identifying several remaining deficiencies that precluded approval at that stage. ECF Nos. 207, 210. On April 8, 2015, Plaintiffs filed a new Motion for Approval of Parties' Second Modified FLSA Collective Action Settlement, Final Collective Action Certification for Settlement Purposes Only, Authorization for the Parties to Effectuate their Settlement, and Request for Tolling. ECF No. 218. On July 2, 2015, the Court granted approval of the second modified settlement agreement, authorized the parties to effectuate their settlement, and denied the request for tolling. ECF No. 226. On September 8, 2015, the parties filed a Joint

1  Motion to Modify the Court's July 2, 2015 Order Granting Motion for Approval of Parties'
2  Second Modified FLSA Collective Action Settlement ("Motion to Modify"). ECF No. 227

### C. Overview of the Settlement Agreement

The elements of the Second Modified Stipulation of Settlement of Collective Action ("Settlement"), ECF No. 218-1, are only briefly summarized here.  A more thorough description of the Settlement can be found in this Court's prior order approving the agreement.  See ECF No. 226 at 3-5.

The Settlement called for Defendants to pay a total of $585,507.00, to be allocated as follows: (1) a net settlement amount available for class member's claims estimated at $297,672.66; (2) claims administration expenses not to exceed $70,000.00; (3) class representative service awards not to exceed $5,000.00 for Plaintiff Greth and $6,000.00 for Plaintiff Otey; (4) reasonable costs incurred in obtaining a response to a subpoena issued to AMT; (5) attorneys' fees in an amount not to exceed $146,377.00; and (6) costs in an amount not to exceed $50,457.34.  Id. §§ I(29), III(A)-(F).

For the purpose of settlement, the parties stipulated to the decertification of the conditionally certified class and the certification of a provisional settlement class of

> all contributors who performed CrowdFlower managed tasks on behalf of customers posted on AMT at any time from October 26, 2009, through the Approval Date, who accessed said tasks from an IP address located in the United States or any of its territories (specifically, American Samoa, Guam, U.S. Virgin Islands, Puerto Rico, and the Northern Mariana Islands), and whose cumulative earnings from performing said tasks during this period are equal to or greater than $5.00 (Five Dollars).

Id. §§ I ¶ 32, III(J).  Defendants estimated that there are approximately 19,992 members in the provisional settlement class.  Id. § I(32).

Claims administrator Simpluris Inc. will mail class notice and settlement award checks to all members of the provisional settlement class at their last known or updated address.  Id. §§ I(12), VI(E).  The settlement award for each provisional class member will be calculated as follows:

> i. The Net Settlement Amount shall be divided by the aggregate AMT Earnings received by all Provisional Settlement Class Members;
>
> ii. The resulting ratio from subsection (i) shall be multiplied by the AMT Earnings of the Settlement Class Member to arrive at each particular Settlement Class Member's Settlement Award.

Id. § I(41). Provisional class members must negotiate the settlement award check to opt in to the settlement and to release their claims. Id. §§ VI(E), VIII.

Simpluris will promptly resend any returned class notice and settlement check after reasonable efforts to determine a correct address; issue reminder postcards; re-issue settlement award checks for a period of up to three years after initial mailing; and undertake reasonable efforts to contact provisional class members who have not yet negotiated their settlement checks every 180 days until the expiration of the three-year period. Id. § VI(F)-(G). Any unclaimed funds remaining will then be distributed to claimants on a pro-rata basis, up to a maximum of $1.00 per each dollar of their AMT earnings. Id. § V(E). If any funds remain after this redistribution, the parties will meet and confer, and then seek the Court's guidance regarding the distribution of the funds. Id. No part of the settlement amount shall revert to Defendants. Id. The parties estimate that at a 100% participation rate, settlement awards will range in amount from $2.09 to $3,230.49. Id. § I(39).

Plaintiffs agree to release:

> Any and all claims asserted, or which could have been asserted, in the Action, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, including all obligations, demands, actions, rights, causes of action and liabilities, of whatever kind, nature, character and description, whether known or unknown, whether anticipated or unanticipated, that arose or accrued at any time during the period from October 26, 2009, through the Release Date, for any type of wages, premium pay, damages, statutory damages, unpaid costs, statutory penalties, civil penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief.

Id. § I(34). The Oregon state law claims are expressly excluded. Id. § I(26).

### D. The Parties' Proposed Modifications

The parties explain in their Motion to Modify that they encountered a number of

4

administrative problems upon receiving the subpoenaed data from AMT containing the personal contact information for the provisional class members. ECF No. 227 at 5. They jointly propose the following modifications.

     i) The claims administrator identified 3,234 provisional class members who did not appear to provide their full legal names, but instead provided only a first or last name, a screenname or e-mail address, or a business name. Id. at 3. The parties also believe there are an unidentifiable number of individuals who may have used pseudonyms. Id. They propose two modifications. First, they propose a form e-mail to be sent to the 3,234 individuals, informing them that they are members of the class and instructing them to contact the claims administrator and to provide their full name in order to receive their checks. It will also inform them that they may be asked to provide a form of identification, such as a driver's license or a passport. ECF No. 227, Ex. 1 at 1. Second, the parties have proposed modifying the class notice to advise all provisional class members that should they have any issue negotiating their settlement check because it is not made out to their legal name, they may contact the claims administrator to have the check reissued. ECF No. 227 at 8. These individuals may also need to provide identification to obtain a reissued check. ECF No. 227, Ex. 2 at 6.

     ii) 65 provisional class members were identified as having multiple accounts with identical or nearly identical names and mailing addresses. ECF No. 227 at 8. For these members, the parties propose sending only one check to the shared name and address, with the combined amounts from all matching records. Id. at 9. An additional 134 provisional class members appear to have multiple accounts with the same name. Id. at 8. For these members, the parties propose sending a separate check to each address, as it is possible that these records belong to different people with the same name. Id.

     iii) The claims administrator also identified 73 people who had incomplete mailing addresses. Id. The parties propose they will first run these records through the National Change of Address database to attempt to obtain a complete address. Id. If that is unsuccessful, the parties propose sending a form e-mail similar to the one sent to individuals who did not provide a full name, instructing the recipients to contact the claims administrator with their full mailing

1   addresses in order to receive their checks. ECF No. 227, Ex. 3. It also instructs them that some
2   form of identification may be required. Id.

3       iv) 636 records contained mailing addresses outside of the United States. ECF No. 227 at
4   10. The parties acknowledge that the Settlement originally called for limiting the provisional class
5   to those individuals who accessed Crowdflower through an IP address within the United States.
6   Id. at 10. However, they suggest that the use of an IP address within the United States does not
7   guarantee that the provisional class members reside within the country, since they could be
8   accessing Crowdflower through a proxy. Id. Therefore, they propose excluding individuals
9   without a United States mailing address from the provisional class. Id. at 11.

10      v) The claims administrator identified 300 provisional class members who had earned less
11  than $5.00 in the aggregate through Crowdflower. ECF No. 227 at 11. The provisional class was
12  originally defined as including only those individuals who had earned more than $5.00, but this
13  did not account for the fact that AMT collects a premium from the amounts paid out by
14  Crowdflower. Id. Therefore, they propose excluding the 300 class members who did not
15  personally earn over $5.00 after subtracting AMT's premiums. Id.

16      vi) To account for these changes, the parties propose increasing the allotted expenses for
17  claims administration from $70,000 to $98,898. Id. at 12.

18      vii) Finally, the parties propose a modified timeline to account for an ambiguity in the
19  previous agreement. Id. at 13.

20  **D.      Jurisdiction**

21      This Court has jurisdiction over this action under 28 U.S.C. § 1331.

22  **II.     LEGAL STANDARD**

23      The FLSA was enacted for the purpose of protecting workers from substandard wages and
24  oppressive working hours. Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 739
25  (1981). An employee's right to fair payment "cannot be abridged by contract or otherwise waived
26  because this would nullify the purposes of the statute and thwart the legislative policies it was
27  designed to effectuate." Id. at 740 (internal quotation marks omitted). Accordingly, FLSA
28  collective action settlements require the supervision of either the Secretary of Labor or the district

court. See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352-53 (11th Cir. 1982). The FLSA provides for such agreements to include an award of reasonable fees. See 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action").

The Ninth Circuit has not established the criteria that a district court must consider in determining whether an FLSA settlement warrants approval. Most courts in this circuit, however, first consider whether the named plaintiffs are "similarly situated" to the putative class members within the meaning of 29 U.S.C. § 216(b) (providing that an aggrieved employee may bring a collective action under the FLSA on behalf of himself and "other employees similarly situated"). If the collective action members are similarly situated, most courts then evaluate the settlement under the standard established by the Eleventh Circuit, which requires the settlement to constitute "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." Lynn's Food Stores, 679 F.2d at 1355; see ECF No. 210 at 5 n.2 (collecting cases). "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues . . . that are actually in dispute," the district court may "approve the settlement in order to promote the policy of encouraging settlement of litigation." Lynn's Food Stores, 679 F.2d at 1354.

## III. DISCUSSION

The Court has previously determined that the provisional class members are similarly situated, and that this case arises from a "bona fide dispute." See ECF No. 226 at 7. The Court also previously found that the Settlement, as previously conceived, was a "fair and reasonable resolution" of the dispute. See id. at 7-8. The Court acknowledges that many of the proposed changes in the Motion to Modify are attempts to eliminate administrative problems while preserving the elements of the Settlement. However, the following two deficiencies prevent the Court from finding that the proposed modified settlement is fair and reasonable.

### A. Requirement for Proof of Identification to Receive Re-Issued Check

As explained above, the parties have proposed changes to their notification procedures to account for those provisional class members who may not have provided a full legal name or valid mailing address. These changes include two form e-mails to those members who did not provide

7

full names or addresses, and an addition to the class notice informing all class members that they may get their checks re-issued to a different name.

Significantly, however, the two form e-mails and the class notice revision inform the provisional class members that they may be required to provide identification, such as a driver's license or passport, to obtain their checks. See ECF No. 227, Ex. 1; Ex. 2 at 6; Ex. 3. While the parties acknowledge this addition, they fail to discuss why such a process is needed when the rest of the provisional class will automatically receive their checks without an identity verification requirement. Why make it harder for some class members than others to be compensated? Once a class member has provided her full name, the parties have the same information for her as they do for other class members. The Court therefore seeks an explanation from the parties as to why these particular class members may be asked to verify their identities, and how the claims administrator will determine when to ask for proof of identity.

### B. Exclusion of Class Members Without United States Mailing Addresses

The Motion to Modify also proposes to exclude all individuals who did not provide mailing addresses within the United States. The parties' reasoning for this proposal is that a United States IP address is an insufficient indicator of whether the individual using that IP address is in fact within the United States. In essence, then, the parties appear to propose re-defining the class to limit its members by mailing address rather than by IP address.

The parties' reasoning is unconvincing. The Court notes that prior to settlement, it conditionally certified a class of all persons who "*performed crowdsourced work in the United States and its territories* in response to any online request by CrowdFlower." ECF No. 167 at 8 (emphasis added). There are many reasons why an individual who performed crowdsourced work within the United States may nevertheless have a foreign mailing address. The provided address may be an old one that is no longer used, a permanent address for a transient person such as a student, or the home address for an individual who is currently residing and working away from home in the United States.

Moreover, if the provisional class is re-defined to exclude the 636 individuals who used a U.S. IP address but not a U.S. mailing address, it follows that it should also be re-defined to add

8

those individuals in the reverse situation ─ namely, those who have a U.S. mailing address but did not access Crowdflower through a U.S. IP address. No one suggests such a change, and so the proposed modification acts as a one-way ratchet. The Court concludes that the parties have not sufficiently explained why the proposed re-definition of the class is fair and reasonable.

## IV.     CONCLUSION

The joint motion to modify the Court's approval of the Settlement is denied without prejudice. The parties may file a new motion that addresses the deficiencies identified in this order within 60 days of the date this order is filed.

To provide for further management of the case in the event that a new motion is not forthcoming, the Court hereby sets a case management conference on January 13, 2016 at 2:00 p.m. A Joint Case Management Statement must be filed at least ten court days beforehand. If a new motion for approval of modifications is filed within 60 days of the date of this order, the parties may request that the Court vacate the case management conference.

**IT IS SO ORDERED.**

Dated:  October 15, 2015

_____
JON S. TIGAR
United States District Judge