UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER OTEY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CROWDFLOWER, INC., et al., <br><br> Defendants. | Case No. 12-cv-05524-JST <br><br> **ORDER GRANTING AMENDED MOTION TO MODIFY COURT'S ORDER APPROVING PARTIES' SECOND MODIFIED FLSA COLLECTIVE ACTION SETTLEMENT** <br><br> Re: ECF No. 230 |

Before the Court is the parties' Amended Motion to Modify the Court's July 2, 2015 order granting approval of the parties' FLSA collective action settlement. ECF No. 230. The parties previously filed a motion to modify, ECF No. 227, which the Court denied on October 16, 2015, ECF No. 229. For the reasons stated below, this amended motion to modify is granted.

I.  **BACKGROUND**

   A.  **The Parties and Claims**

Defendant CrowdFlower, Inc. ("CrowdFlower") is an internet-based company that distributes small and simple repetitive tasks to individuals in exchange for pay on a per-task basis. Second Am. Compl. ("SAC") ¶¶ 4, 8, 16-20, ECF No. 121. Defendants Lukas Biewald and Chris Van Pelt are the Chief Executive Officer and Chief Technology Officer of CrowdFlower, respectively. Id. ¶¶ 9-10. CrowdFlower gets projects from various customers, breaks the projects into pieces, and assigns the pieces to contributors. ECF No. 46, Ex. 1. The tasks that CrowdFlower assigns typically take a few minutes to complete and do not require any special skill. SAC ¶ 22; ECF No. 46, Ex. 5 at 2. The most common type of task is verifying business listings. ECF No. 46, Ex. 3 at 11. This distribution of small tasks to individuals is commonly referred to as "crowdsourcing." SAC ¶ 16.

Named Plaintiffs Christopher Otey and Mary Greth performed tasks for CrowdFlower through a website called Amazon Mechanical Turk ("AMT").  ECF No. 219-1 ¶ 7.  The gravamen of their Complaint is that CrowdFlower pays its contributors, whom it classifies as independent contractors, less than the minimum wage under FLSA, 29 U.S.C. § 206(a), and Oregon law, ORS §§ 653.025 and 652.150.  SAC ¶¶ 5, 36.  Plaintiffs brought their Oregon law claims as class action claims under Rule 23.  Id. ¶¶ 76-83.

### B. Procedural Background

On August 27, 2013, the Court granted Plaintiffs' Motion for Conditional Certification of a Collective Action, and conditionally certified the following class:

> All persons who performed crowdsourced work in the United States and its territories in response to any online request by CrowdFlower for crowdsourced work, or any online notification by CrowdFlower that crowdsourced work was available at any time from three years prior to the date on which notice is issued to the date on which notice is issued.

ECF No. 167 at 8.  In the same order, the Court approved Plaintiffs' proposed notice and consent form and ordered that notice should be emailed to the class members and posted online.  Id. at 9-10.

On January 24, 2014, Plaintiffs filed a Motion for Approval of FLSA Collective Action Settlement, Final Collective Action Certification for Settlement Purposes Only, and Authorization for the Parties to Effectuate Their Settlement, which the Court denied on April 15, 2014.  ECF Nos. 187, 195.  On December 16, 2015, the Court denied Plaintiffs' motion for approval of a modified settlement agreement, identifying several remaining deficiencies that precluded approval at that stage.  ECF Nos. 207, 210.  On April 8, 2015, Plaintiffs filed a new Motion for Approval of Parties' Second Modified FLSA Collective Action Settlement, Final Collective Action Certification for Settlement Purposes Only, Authorization for the Parties to Effectuate their Settlement, and Request for Tolling.  ECF No. 218.  On July 2, 2015, the Court granted approval of the second modified settlement agreement, authorized the parties to effectuate their settlement, and denied the request for tolling.  ECF No. 226.  On September 8, 2015, the parties filed a Joint Motion to Modify the Court's July 2, 2015 Order Granting Motion for Approval of Parties'

Second Modified FLSA Collective Action Settlement ("Motion to Modify"). ECF No. 227. The Court denied that motion on October 16, 2015, identifying deficiencies in two suggested modifications that will be discussed further below. ECF No. 229. The parties have now filed this Amended Motion to Modify Court's July 2, 2015 Order Granting Motion for Approval of Parties' Second Modified FLSA Collective Action Settlement ("Amended Motion to Modify"). ECF No. 230.

**C. Overview of the Settlement Agreement**

The elements of the Second Modified Stipulation of Settlement of Collective Action ("Settlement"), ECF No. 218-1, are only briefly summarized here. A more thorough description of the Settlement can be found in this Court's prior order approving the agreement. See ECF No. 226 at 3-5.

The Settlement calls for Defendants to pay a total of $585,507.00, to be allocated as follows: (1) a net settlement amount available for class member's claims estimated at $297,672.66; (2) claims administration expenses not to exceed $70,000.00; (3) class representative service awards not to exceed $5,000.00 for Plaintiff Greth and $6,000.00 for Plaintiff Otey; (4) reasonable costs incurred in obtaining a response to a subpoena issued to AMT; (5) attorneys' fees in an amount not to exceed $146,377.00; and (6) costs in an amount not to exceed $50,457.34. Id. §§ I(29), III(A)-(F).

For the purpose of settlement, the parties stipulated to the decertification of the conditionally certified class and the certification of a provisional settlement class of

> all contributors who performed CrowdFlower managed tasks on behalf of customers posted on AMT at any time from October 26, 2009, through the Approval Date, who accessed said tasks from an IP address located in the United States or any of its territories (specifically, American Samoa, Guam, U.S. Virgin Islands, Puerto Rico, and the Northern Mariana Islands), and whose cumulative earnings from performing said tasks during this period are equal to or greater than $5.00 (Five Dollars).

Id. §§ I ¶ 32, III(J). Defendants estimated that there are approximately 19,992 members in the provisional settlement class. Id. § I(32).

Claims administrator Simpluris Inc. will mail class notice and settlement award checks to

all members of the provisional settlement class at their last known or updated address. Id. §§ I(12), VI(E). The settlement award for each provisional class member will be calculated as follows:

> i. The Net Settlement Amount shall be divided by the aggregate AMT Earnings received by all Provisional Settlement Class Members;
>
> ii. The resulting ratio from subsection (i) shall be multiplied by the AMT Earnings of the Settlement Class Member to arrive at each particular Settlement Class Member's Settlement Award.

Id. § I(41). Provisional class members must negotiate the settlement award check to opt in to the settlement and to release their claims. Id. §§ VI(E), VIII.

      Simpluris will promptly resend any returned class notice and settlement check after reasonable efforts to determine a correct address; issue reminder postcards; re-issue settlement award checks for a period of up to three years after initial mailing; and undertake reasonable efforts to contact provisional class members who have not yet negotiated their settlement checks every 180 days until the expiration of the three-year period. Id. § VI(F)-(G). Any unclaimed funds remaining will then be distributed to claimants on a pro-rata basis, up to a maximum of $1.00 per each dollar of their AMT earnings. Id. § V(E). If any funds remain after this redistribution, the parties will meet and confer, and then seek the Court's guidance regarding the distribution of the funds. Id. No part of the settlement amount shall revert to Defendants. Id. The parties estimate that at a 100% participation rate, settlement awards will range in amount from $2.09 to $3,230.49. Id. § I(39).

      Plaintiffs agree to release:

> Any and all claims asserted, or which could have been asserted, in the Action, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, including all obligations, demands, actions, rights, causes of action and liabilities, of whatever kind, nature, character and description, whether known or unknown, whether anticipated or unanticipated, that arose or accrued at any time during the period from October 26, 2009, through the Release Date, for any type of wages, premium pay, damages, statutory damages, unpaid costs, statutory penalties, civil penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief.

Id. § I(34).  The Oregon state law claims are expressly excluded.  Id. § I(26).

## D. Jurisdiction

This Court has jurisdiction over this action under 28 U.S.C. § 1331.

## II. LEGAL STANDARD

The FLSA was enacted for the purpose of protecting workers from substandard wages and oppressive working hours.  Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 739 (1981).  An employee's right to fair payment "cannot be abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate."  Id. at 740 (internal quotation marks omitted).  Accordingly, FLSA collective action settlements require the supervision of either the Secretary of Labor or the district court.  See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352-53 (11th Cir. 1982).  The FLSA provides for such agreements to include an award of reasonable fees.  See 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action").

The Ninth Circuit has not established the criteria that a district court must consider in determining whether an FLSA settlement warrants approval.  Most courts in this circuit, however, first consider whether the named plaintiffs are "similarly situated" to the putative class members within the meaning of 29 U.S.C. § 216(b) (providing that an aggrieved employee may bring a collective action under the FLSA on behalf of himself and "other employees similarly situated").  If the collective action members are similarly situated, most courts then evaluate the settlement under the standard established by the Eleventh Circuit, which requires the settlement to constitute "a fair and reasonable resolution of a bona fide dispute over FLSA provisions."  Lynn's Food Stores, 679 F.2d at 1355; see ECF No. 210 at 5 n.2 (collecting cases).  "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues . . . that are actually in dispute," the district court may "approve the settlement in order to promote the policy of encouraging settlement of litigation."  Lynn's Food Stores, 679 F.2d at 1354.

## III. DISCUSSION

The Court has previously determined that the provisional class members are similarly

situated, and that this case arises from a "bona fide dispute." See ECF No. 226 at 7. The Court also previously found that the Settlement, as previously conceived, was a "fair and reasonable resolution" of the dispute. See id. at 7-8. In its October 16, 2015 order denying the parties' previous Motion to Modify, the Court found that two proposed modifications were not fair and reasonable: a requirement of proof of identification for certain provisional class members, and exclusion of certain other class members outside of the United States. ECF No. 229 at 7-9. The parties now inform the Court that they have agreed to remove these two modifications, and do not indicate that any other proposed modifications have been altered. Amended Motion to Modify at 3-4. The Court therefore approves the remaining modifications.

### A. Provisional Class Members Who Did Not Provide Full Names

The Motion to Modify notes that the claims administrator identified 3,234 provisional class members who did not appear to provide their full legal names, but instead provided only a first or last name, a screenname or e-mail address, or a business name. Motion to Modify at 3. The parties also believe there are an unidentifiable number of individuals who may have used pseudonyms. Id. They propose two modifications. First, they propose a form e-mail to be sent to the 3,234 individuals, informing them that they are members of the class and instructing them to contact the claims administrator and to provide their full name in order to receive their checks. ECF No. 227, Ex. 1 at 1. Second, the parties have proposed modifying the class notice to advise all provisional class members that if they have any issues negotiating their settlement check because it is not made out to their legal name, they may contact the claims administrator to have the check reissued. ECF No. 227, Ex. 2 at 6.

As noted above, the Court did not approve these modifications because both proposed notices indicated that the recipients may be required to provide a form of identification, such as a driver's license or a passport, before they could provide their full names and receive their checks. ECF No. 229 at 7. However, the parties did not explain why such a process was needed when the rest of the provisional class will receive their checks without any such requirement. Id. at 8.

The parties have subsequently agreed to remove the identification requirement and submit as exhibits their modified notices with the identification requirement removed. See ECF Nos. 231,

332.  Accordingly, the Court concludes that these modifications are fair and reasonable.

### B. Provisional Class Members with Multiple Accounts

The Motion to Modify notes that 65 provisional class members were identified as having multiple accounts with identical or nearly identical names and mailing addresses.  Motion to Modify at 8.  For these members, the parties propose sending only one check to the shared name and address, with the combined amounts from all matching records.  Id. at 9.  An additional 134 provisional class members appear to have multiple accounts with the same name, but not the same address.  Id. at 8.  For these members, the parties propose sending a separate check to each address, as it is possible that these records belong to different people with the same name.  Id.

The parties do not indicate any changes to this proposal in their Amended Motion to Modify.  Accordingly, the Court finds that these modifications appropriately respond to the problem of multiple accounts, and is fair and reasonable.

### C. Provisional Class Members with Incomplete Mailing Addresses

The claims administrator also identified 73 people who had incomplete mailing addresses.  Id.  The parties propose first running these records through the National Change of Address database, and if that is unsuccessful, sending a form e-mail similar to the one sent to individuals who did not provide a full name, instructing the recipients to contact the claims administrator with their full mailing addresses in order to receive their checks.  ECF No. 227, Ex. 3.

As with the proposed e-mails to be sent to individuals who did not provide a full name, this proposed e-mail also mentioned an identification requirement, and for this reason the Court previously did not approve the modification.  ECF No. 229 at 7.  The parties have agreed to remove the identification requirement and submit a new proposed e-mail with the requirement removed.  See ECF No. 233.  Accordingly, the Court concludes this modification is fair and reasonable.

### D. Provisional Class Members with Mailing Addresses Outside the United States

The Motion to Modify also notes that 636 records were found to contain mailing addresses outside of the United States.  Motion to Modify at 10.  They proposed excluding those individuals from the provisional class by using a mailing address within the United States, rather than an IP

address within the United States, to define the scope of the class. Id.

As the Court explained in its October 16, 2015 order, this modification is not fair and reasonable because it could exclude individuals who performed crowdsourced work for Crowdflower within the United States but nevertheless have a foreign mailing address for any number of reasons. ECF No. 229 at 8. Moreover, while they proposed excluding individuals with addresses outside the United States, the parties did not also propose to include individuals with IP addresses outside the United States, and so their modification "acts as a one-way ratchet." ECF No. 229 at 9.

The parties have informed the Court that they have agreed to allow individuals with mailing addresses outside of the United States to remain in the provisional class. Amended Motion to Modify at 3. Thus, there is no proposed modification to the approved collective action settlement in relation to these individuals.

### E. Provisional Class Members Who Have Earned Less Than $5.00

The claims administrator identified 300 provisional class members who had earned less than $5.00 in the aggregate through Crowdflower. Motion to Modify at 11. The provisional class was originally defined as including only those individuals who had earned more than $5.00, but this did not account for the fact that AMT collects a premium from the amounts paid out by Crowdflower. Id. Therefore, they propose excluding the 300 class members who did not personally earn over $5.00 after subtracting AMT's premiums. Id.

The Court concludes that this is an appropriate modification. As the parties note, the provisional settlement class was intended to be limited in scope to those individuals whose cumulative earnings from working for Crowdflower were at least $5.00. This modification properly accounts for the previously unacknowledged premium collected by AMT.

### F. Increase in Administration Expenses

The parties renew their request in their Amended Motion to Modify to increase the allotted expenses for claims administration from $70,000 to $98,898 due to the costs of sending the additional proposed notices, staffing calls from provisional class members who need to provide their full name, and settlement checks that may need to be re-sent or re-issued. Amended Motion

to Modify at 4. In light of the proposed administrative changes, this increase is appropriate. The Court therefore approves an increase of allocated expenses for claims administration from $70,000 to $98,898.

### G. Modified Timeline

Finally, the parties renew their request for a modified timeline for payment of the Gross Settlement Amount by Defendants, to account for an ambiguity in the previous agreement. Amended Motion to Modify at 3-4. The motion states that the previous Settlement made it impossible to comply with the timeline for payment because the Gross Settlement Amount was due within 5 days after the "Effective Date," but the Effective Date was defined such that it could not occur until after the Gross Settlement Amount was paid. Id. The parties therefore propose, as a modified timeline, that "the Gross Settlement Amount be provided to the Claims Administrator within 60 calendar days of the Court's approval of the new email notices, the revised Class Notice, and the modified notice process proposed by the Parties, with the Class Notice to be sent within 14 business days of payment of the Gross Settlement Amount." Id. at 3.

This modification is approved. Defendants shall provide the Gross Settlement Amount to the Claims Administrator within 60 calendar days of the date of the issuance of this order. Notice to the provisional class must be sent within 14 business days of the payment of the Gross Settlement Amount.

## CONCLUSION

For the forgoing reasons, the Amended Motion to Modify is granted.

**IT IS SO ORDERED.**

Dated: January 26, 2016

_____
JON S. TIGAR
United States District Judge